1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  CHERYL ADAMS, State Bar #164194
   Chief Trial Deputy
3  RENÉE E. ROSENBLIT, State Bar #304983
   BRIGGS MATHESON, State Bar #291287
4  Deputy City Attorneys
   Fox Plaza
5  1390 Market Street, Sixth Floor
   San Francisco, California 94102-5408
6  Telephone:      (415) 554-3853 (Rosenblit)
   Telephone:      (415) 554-3919 (Matheson)
7  Facsimile:      (415) 554-3837
   E-Mail:         renee.rosenblit@sfcityatty.org
8  E-Mail:         briggs.matheson@sfcityatty.org

9
   Attorneys for Defendants
10 MILTON BLISS, et al.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14 SCANVINSKI JEROME HYMES,              Case No. 16-cv-04288 JSC

15          Plaintiff,                   **DEFENDANTS' NOTICE OF MOTION AND
                                         MOTION TO CONTINUE TRIAL;
16     vs.                               MEMORANDUM OF POINTS AND
                                         AUTHORITIES**
17 MILTON BLISS, et al.
                                         Hearing Date:    November 15, 2018
18          Defendants.                  Time:            9:00 a.m.
                                         Place:           Courtroom F – 15th Floor
19                                                        450 Golden Gate
                                                          San Francisco, CA 94102
20
                                         Trial Date:      December 3, 2018
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

    I.      INTRODUCTION ......................................................................................2

    II.     BACKGROUND ........................................................................................3

    III.    ARGUMENT ..............................................................................................6

          A.    Legal standards. ............................................................................6

          B.    Defendants will suffer significant hardship and inequity if required to proceed to trial as scheduled. ....................................................7

                 1.    The interests of justice favor continuing the trial in this case to avoid unfair prejudice and hardship to Neu and Jones. ..................7

                 2.    Fundamental fairness requires continuing the trial in this case to avoid unfair prejudice to the other Defendants............................11

          C.    Plaintiff will not suffer any prejudice from the continuance. ...................13

          D.    The orderly course of justice favors postponing the trial. .........................14

    IV.   CONCLUSION.......................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

*Federal Cases*

*Arizona v. Youngblood*
    488 U.S. 51 (1988).............................................................................3, 5

*California v. Trombetta*
    467 U.S. 479 (1984)..........................................................................3, 5

*CMAX, Inc. v. Hall*
    300 F.2d 265 (9th Cir. 1962) ....................................................7, 12, 13, 14

*Estate of Lopez v. Suhr*
    No. 15-CV-01846-HSG, 2016 WL 1639547 (N.D. Cal. Apr. 26, 2016)...................6

*Green v. Cosby*
    177 F. Supp. 3d 673 (D. Mass. 2016) ....................................................8, 9

*In re SK Foods, L.P.*
    Nos. S–10–1492 LKK, 2010 WL 5136189 (E.D. Cal. Dec. 10, 2010), *order clarified*, 2011 WL
    1442332 (E.D. Cal. Apr. 14, 2011)................................................................8

*In re Zinnel*
    No. 2:12-CV-00249-MCE, 2013 WL 1284339 (E.D. Cal. Mar. 28, 2013)................9

*Keating v. Office of Thrift Supervision*
    45 F.3d 322 (9th Cir. 1995) .....................................................................4, 7, 14

*Kotteakos v. United States*
    328 U.S. 750 (1946)................................................................................12

*Landis v. North American Co.*
    299 U.S. 248 (1936)...................................................................6, 7, 11, 13, 14

*Leyva v. Certified Grocers of Cal., Ltd.*
    593 F.2d 857 (9th Cir. 1997) .......................................................................6

*Lockyer v. Mirant Corp.*
    398 F.3d 1098 (9th Cir. 2005) ....................................................................13

*London v. Patterson*
    463 F.2d 95 (9th Cir. 1972) .........................................................................8

*McCormick v. Rexroth*
    No. C 09–4188 JF, 2010 WL 934242 (N.D. Cal. Mar. 15, 2010) ........................4

*McElrath v. Uber Techs., Inc.*
    No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D. Cal. Mar. 30, 2017)................6, 13

*Parker v. Dawson*
    Nos. 06–CV–6191, 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007)........................11

*Paskenta Band of Nomlaki Indians v. Crosby*
  No. 2:15-cv-00538-MCE-CMK, 2017 WL 1408118 (E.D. Cal. Apr. 20, 2017)......................14

*S.E.C. v. Boock*,
  No. 09 CIV. 8261 (DLC), 2010 WL 2398918 (S.D.N.Y. June 15, 2010)...........................8, 10

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*
  886 F. Supp. 1134 (S.D.N.Y. 1995)); .......................................................................9

*U.S. v. Kordel*
  397 U.S. 1 (1970)........................................................................................................6

*United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*
  No. 15-CV-01039-HSG, 2016 WL 1534885 (N.D. Cal. Apr. 15, 2016)................................12

*United States v. Lane*
  883 F.2d 1484 (10th Cir. 1989) ...............................................................................12

*Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*
  152 F.R.D. 36 (S.D.N.Y.1993) ...................................................................................8

*Wehling v. Columbia Broad. Sys.*
  608 F.2d 1084 (5th Cir. 1979) ...................................................................................7

*Zavatsky v. O'Brien*
  902 F. Supp. 2d 135 (D. Mass. 2012) ........................................................................9

**Federal Statutes**
42 U.S.C. section 1983 .................................................................................................3

**State Statutes & Codes**
California Government Code § 825 ...............................................................................11

**Rules**
California Rule of Court 8.104 .......................................................................................5

Federal Rules of Evidence 404(b)................................................................................8, 9

**NOTICE OF MOTION TO CONTINUE TRIAL**

**TO THE COURT AND TO ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 15, 2018, at 9:00 a.m., or as soon thereafter as may be possible in Courtroom F of the U.S. District Court for the Northern District of California, located on the fifteenth floor of 450 Golden Gate, San Francisco, California, 94102, Defendants will and hereby do move for an order continuing the trial in this matter.  As detailed in the accompanying Memorandum of Points and Authorities, good cause exists to continue the trial in this case, to allow pending criminal proceedings against Defendants Scott Neu and Eugene Jones to resolve, thereby avoiding undue prejudice to Neu and Jones, and to their codefendants at the trial in this case.  This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Declarations of Renee Rosenblit, Harry Stern, and Matthew Pavone, and supporting exhibits; all pleadings and papers on file in this action; the argument of counsel at the hearing; and any such further matters as the Court deems appropriate.

Dated:  October 26, 2018

DENNIS J. HERRERA
City Attorney
CHERYL ADAMS
Chief Trial Deputy
RENÉE E. ROSENBLIT
BRIGGS MATHESON
Deputy City Attorney


By: _/s/ Briggs J. Matheson_____
BRIGGS MATHESON

Attorneys for Defendants
MILTON BLISS, et al.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Defendants seek a short trial continuance to allow ongoing criminal proceedings against Defendants Scott Neu ("Neu") and Eugene Jones ("Jones") to resolve, thereby avoiding undue prejudice both to Neu and Jones, and to their co-defendants at the trial in this case, currently scheduled for December 3, 2018.  As explained in Defendants' June 18, 2018 motion to stay discovery—which Defendants filed after Plaintiff served deposition notices for all Defendants—Neu and Jones are facing felony criminal charges for directing excessive force against inmates at San Francisco County Jail No. 4.  (Dkt. No. 52.)  On July 3, 2018, the Court denied Defendants' stay request, noting that it was "not obvious that Defendants would choose to exercise their Fifth Amendment rights when questioned about the incident involved in [this] civil case."  (Dkt. No. 58 at 5.)

Circumstances have changed significantly since the Court issued that order.  Discovery is now closed, and Plaintiff has deposed all of the Defendants.  At their depositions, Neu and Jones invoked their Fifth Amendment rights in response to many of Plaintiff's questions, including questions about the incident at issue in this case, San Francisco Sheriff's Department ("SFSD") policies and practices, and past complaints involving them.  (*See* Declaration of Renee Rosenblit in Support of Motion to Continue ("Rosenblit Decl.") Ex. 1 & 2.)  There is no question at this point that Neu and Jones face a significant burden in this case: having exercised their rights under the Fifth Amendment, they cannot adequately defend themselves at trial, and risk facing an adverse inference from the jury at trial.  *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).[1]  Neu and Jones also face potential liability for punitive damages.

The other codefendants in this case—none of whom has been criminally charged—also face significant prejudice from any negative inference imposed against Neu and Jones.  Because many of Plaintiff's deposition questions to Neu and Jones implicate the other Defendants—including questions about Plaintiff's cell extraction and SFSD practices—these other Defendants will be prejudiced at trial because they will not be able to present all of the evidence supporting their defenses.  In other words,

---

[1] At trial, defendants will oppose any request for an instruction that the jury may draw an "adverse inference" from defendants' invocation of their Fifth Amendment rights.

these codefendants must now proceed to trial with one arm tied behind their backs: they cannot present evidence in the form of testimony from Neu and Jones that support their defenses, and, because this case involves groups of defendants and claims of failure to intervene, any negative inference applied to Neu and Jones will inevitably taint the other Defendants as well.  Like Neu and Jones, these other co-defendants face liability for punitive damages as well.

Furthermore, Neu's and Jones' circumstances have changed in another material respect: they now have a hearing scheduled in their criminal matter for December 14, 2018, to hear a motion to dismiss the criminal charges against them.  This is not a routine, pretrial motion.  Rather, the motion to dismiss is brought under *Arizona v. Youngblood*, 488 U.S. 51 (1988), and *California v. Trombetta*, 467 U.S. 479 (1984), based on allegations of destruction of evidence.  If successful, the motion would result in a full dismissal of the criminal charges against Neu and Jones.

Accordingly, Defendants request a temporary continuance of the trial in this case to allow the criminal motion to be decided and any attendant appeal deadlines to run.[2]  Plaintiff would not suffer any prejudice from the continuance: discovery has closed in this case, expert discovery will close in two weeks, and Plaintiff has opposed Defendants' summary judgment motion.  Pretrial filings will be completed before this motion is heard.  In short, Plaintiff has fully participated in all aspects of the pretrial process.  Fundamental fairness and the orderly course of justice require that the trial be continued to avoid substantial prejudice to all of the Defendants.

## II.    BACKGROUND

On July 28, 2016, Plaintiff filed his complaint *in pro per* in this case against Defendants Bliss, Sanchez, Leonardini, Neu, Jones, Timpano, and Gray.  (Dkt. No. 1.)  Defendants answered the complaint on March 9, 2017.  (Dkt. No. 14.)  Plaintiff subsequently retained counsel and filed an amended complaint on March 8, 2018.  (Dkt. No. 43.)  Plaintiff alleges (i) violation of 42 U.S.C. section 1983 against Defendants Bliss, Neu, Jones, Timpano, and Gray for excessive use of force; and (ii) violation of 42 U.S.C. section 1983 against all Defendants for failure to intervene. (Dkt. No. 43 at

---

[2] A six-month postponement will provide sufficient time for the California Superior Court to adjudicate the criminal motion to dismiss, for any attendant appeals deadlines to run (Cal. R. Ct. 8.104), and for Plaintiff to re-depose Neu and Jones, as necessary, prior to trial.

¶¶ 27-32.)  Plaintiff seeks punitive damages from all Defendants.  (Dkt. No. 43 at 5.)  Plaintiff's claims arise out of a cell extraction operation that took place on July 24, 2014.  The factual background concerning that incident, including Plaintiff's testimony concerning the events, are set forth in Defendants' Motion for Summary Judgment.  (*See* Dkt. No. 82 at 3-8.)

As this Court noted in its July 3, 2018 Order, "Defendants Neu and Jones currently face multiple charges in separate criminal matters stemming from a series of incidents that took place between October 3, 2014 and March 25, 2015, in which they allegedly used excessive force against inmates at the San Francisco County Jail."  (Dkt. No. 58 at 2); *see People v. Neu*, Case No. 16004103 & *People v. Jones*, Case No. 16004106.  On June 18, 2018, the parties submitted a Joint Discovery Letter Brief, in which Defendants requested "a stay of civil discovery due to the pending criminal charges against Defendants Neu and Jones."  (Dkt. No. 52 at 1.)  Defendants brought that motion to stay discovery after Plaintiff served deposition notices for all of the Defendants, including Neu and Jones.  (Dkt. No. 52 at 1-2.)  Defendants argued that continued discovery in this civil matter would place an unfair burden on Neu and Jones by forcing them to choose between either waiving their Fifth Amendment rights or invoking their rights and facing adverse inferences.  (Dkt. No. 52 at 2-3.)  Defendants also noted that "the prejudicial effect of any such adverse inferences will not stop at Jones and Neu; it will extend to the other defendant deputies."  (Dkt. No. 52 at 2-3.)

The Court denied Defendants' request to stay discovery.  (Dkt No. 58.)  In its Order, the Court applied the multi-factor analysis set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-325 (9th Cir. 1995).  Doing so, the Court concluded that Neu's and Jones' Fifth Amendment rights were not strongly implicated, because the allegations of excessive force at issue in their criminal matter "do not implicate the same 'nucleus of facts'" as those at issue in this case.  (Dkt. 58 at 4 (quoting *McCormick v. Rexroth*, No. C 09–4188 JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010)).  The Court reasoned that "[i]n light of these differences, it is not obvious that Defendants would choose to exercise their Fifth Amendment rights when questioned about the incident involved in the civil case."  (Dkt. No. 58 at 5.)  The Court determined that the other *Keating* factors did not, on balance, favor granting a stay.  (Dkt. No. 58 at 5-8.)  Thus, the Court concluded, Defendants had not satisfied their burden to "justify staying civil discovery."  (Dkt. No. 58 at 5.)

1    Discovery in this case proceeded over the following months.  Pursuant to the parties'

2    stipulation and this Court's Order, fact discovery closed as a general matter on July 2, 2018, with

3    depositions of all of the Defendants to take place between July 23, 2018 and August 17, 2018.  (Dkt.

4    60 & 57.)  Plaintiff deposed Jones on August 8, 2018 and Neu the following day, August 9, 2018.

5    (Rosenblit Decl. ¶¶ 4-5.)

6    During his deposition, Jones followed the advice of his criminal defense attorney and invoked

7    his Fifth Amendment privilege against self-incrimination in response to many of Plaintiff's questions.

8    For example, Jones invoked his Fifth Amendment rights in response to: (i) questions about Plaintiff's

9    cell extraction on July 24, 2014 (*see* Rosenblit Decl. Ex. 1 ("Jones Dep.") at 9:13–10:24; 11:8–12:8;

10   13:6–16:23; 17:4–18:14); (ii) questions concerning SFSD policies and practices (*see* Jones Dep. at

11   19:13–21:14; 26:11–28:22); and (iii) questions regarding prior complaints or allegations of misconduct

12   involving Jones (*see, e.g.*, Jones Dep. at 38:11–39:23).  Jones also invoked his Fifth Amendment rights

13   in response to questions about what he observed in terms of the *other* Defendants' actions toward

14   Plaintiff on July 24, 2014.  (*See, e.g.*, Jones Dep. at 21:15–24:2.)  For his part, Defendant Neu invoked

15   his Fifth Amendment rights in response to questions concerning prior complaints or allegations of

16   misconduct (*see, e.g.*, Rosenblit Decl. Ex. 2 ("Neu Dep.") at 7:1-12; 73:2–88:20); questions regarding

17   his training (*see, e.g.*, Neu Dep. at 63:18–64:10); and questions regarding his employment history with

18   the SFSD (*see, e.g.*, Neu Dep. at 70:22–72:1).

19   On or around October 4, 2018, defense counsel was informed that Neu and Jones had reserved

20   a hearing date in their ongoing criminal cases on December 14, 2018 to hear a motion to dismiss the

21   criminal charges against them.  (Rosenblit Decl. ¶ 2.)  Specifically, Neu's and Jones' criminal defense

22   counsel intends to file a motion to dismiss under *Arizona v. Youngblood*, 488 U.S. 51 (1988), and

23   *California v. Trombetta*, 467 U.S. 479 (1984), based on allegations of destruction of evidence.

24   (Declaration of Harry Stern in Support of Motion to Continue ("Stern Decl.") ¶ 5; Declaration of

25   Matthew Pavone in Support of Motion to Continue ("Pavone Decl.") ¶ 5.)  If granted, the motion will

26   result in a full dismissal of the criminal charges against Neu and Jones.  (Stern Decl. ¶ 5; Pavone Decl.

27   ¶ 5.)  If the motion is granted, the prosecutor will then have sixty days to decide whether to seek an

28   appeal.  (*See* Cal. Rule of Court 8.104.)

1    On October 10, 2018, counsel for Defendants contacted Plaintiff's counsel to ask if Plaintiff

2 would be willing to stipulate to a brief trial continuance in light of the upcoming criminal motion to

3 dismiss.  (Rosenblit Decl. ¶ 3.)  Plaintiff's counsel responded on October 15, 2018, stating that they

4 would not stipulate to the continuance.  (Rosenblit Decl. ¶ 3.)

5 **III.    ARGUMENT**

  **A.    Legal standards.**

7    "[T]he power to stay proceedings is incidental to the power inherent in every court to control

8 the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

9 for litigants.  How this can best be done calls for the exercise of judgment, which must weigh

10 competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-

11 255 (1936).  "Using this power, one case may be stayed in favor of another."  *Estate of Lopez v. Suhr*,

12 No. 15-CV-01846-HSG, 2016 WL 1639547, at *3 (N.D. Cal. Apr. 26, 2016); *see also U.S. v. Kordel*,

13 397 U.S. 1, 12 n.27 (1970) (courts may "defer [ ] civil proceedings pending the completion of parallel

14 criminal prosecutions when the interests of justice seem [ ] to require such action"); *Leyva v. Certified*

15 *Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1997) ("A trial court may, with propriety, find it

16 is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it,

17 pending resolution of independent proceedings which bear upon the case.  This rule applies whether

18 the separate proceedings are judicial, administrative, or arbitral in character, and does not require that

19 the issues in such proceedings are necessarily controlling of the action before the court."); *McElrath v.*

20 *Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017)

21 (agreeing that "the *Landis* factors govern where a party seeks a stay pending resolution of a separate

22 court action").

23    Often the decision whether to defer civil proceedings arises in the context of civil discovery

24 when a party moves—as Defendants did previously in this case—to stay civil discovery pending

25 resolution of the criminal proceedings.  In those circumstances, courts consider whether the Fifth

26

27

28

Amendment is implicated, as well as the five factors set forth in *Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995), to decide whether to grant a stay.[3]

Outside of the discovery context, however, the Ninth Circuit has interpreted the U.S. Supreme Court's decision in *Landis* to require a court to consider the following factors in deciding whether to stay an action before it, pending resolution of independent proceedings that bear upon the case: (1) "possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (holding that district court did not abuse discretion in granting motion to postpone trial pending related administrative enforcement proceedings initiated three weeks before trial).

In short, the Court must balance the relative interests of the parties, as well as the Court's interest in the orderly course of justice. *See Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979) (where the decision about how a civil case should proceed stems from one party's invocation of his Fifth Amendment rights, courts should weigh all of the parties' "competing constitutional and procedural rights," and "measure[] the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible").

**B.    Defendants will suffer significant hardship and inequity if required to proceed to trial as scheduled.**

**1.    The interests of justice favor continuing the trial in this case to avoid unfair prejudice and hardship to Neu and Jones.**

As noted above, the Court denied Defendants' request to stay discovery in this case in part because it was not yet clear whether Defendants Jones and Neu "would choose to exercise their Fifth Amendment rights when questioned about the incident involved in the civil case." (Dkt. No. 58 at 5.) As a result, the degree to which Jones' and Neu's Fifth Amendment rights were implicated was not

---

[3] The five *Keating* factors are: "(1) the interest of the plaintiffs in proceeding expeditiously with [the civil] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 324-25 (citation omitted).

known at that point.  Now that Jones and Neu have been deposed and fact discovery is closed, it is clear that both will suffer a significant burden if trial proceeds before they have the opportunity to defeat the criminal charges against them.

A party to a civil action may be subjected to two distinct forms of fundamental unfairness if called to testify in a civil matter while a parallel criminal prosecution is pending:  "First, unlike in a criminal case, an adverse inference may be drawn from the invocation of the privilege. . . . Second, on a more practical level, invoking the Fifth Amendment privilege prevents the defendant 'from adequately defending his position' in the civil case."  *Green v. Cosby*, 177 F. Supp. 3d 673, 679 (D. Mass. 2016) (quoting *Volmar Distribs., Inc. v. N.Y. Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y.1993) (other citations omitted)); *see also London v. Patterson*, 463 F.2d 95, 97-98 (9th Cir. 1972) (affirming defendant's convictions even though his civil deposition answers were read to the jury because he could have taken steps to stay civil discovery until the criminal action terminated); *S.E.C. v. Boock*, No. 09 CIV. 8261 (DLC), 2010 WL 2398918, at *2 (S.D.N.Y. June 15, 2010) (granting motion to stay pending related criminal proceedings and noting that "[e]ven where [testimony in the civil action] would not be direct evidence of wrongdoing with respect to the scheme charged in the criminal case, such testimony may be admissible as Fed.R.Evid. 404(b) evidence in any criminal trial.").

A civil defendant facing related criminal proceedings may be prejudiced even if the civil and criminal proceedings do not arise out of the exact same series of events.  For example, in *In re SK Foods, L.P.*, Civ. Nos. S–10–1492 LKK, S–10–1493 LKK, S–10–1496 LKK, S–10–1497 LKK, S–10–1498 LKK, S–10–1499 LKK, S–10–1500 LKK, 2010 WL 5136189 (E.D. Cal. Dec. 10, 2010), *order clarified*, 2011 WL 1442332 (E.D. Cal. Apr. 14, 2011), the Bankruptcy Court declined to stay adversarial bankruptcy proceedings pending resolution of a related criminal action before the district court.  The Bankruptcy Court "conducted a technical comparison of the specific allegations in the criminal indictment and the adversary proceedings," and "conclude[d] that, with one minor exception, the factual allegations in the adversary proceedings bear no significant relationship to the allegations in the indictment."  *In re SK Foods, L.P.*, 2010 WL 5136189 at *7.

On appeal, the district court concluded that "[w]hile the Bankruptcy Court may be correct that specific allegations of the criminal indictment are, for the most part, distinct from the specific

allegations of the adversary proceedings, ***its conclusion that these distinctions demonstrate that [defendant's] Fifth Amendment rights are not implicated is clearly erroneous***." *Id.* at *7 (emphasis added).  The district court went on to explain that

> [Defendant's] Fifth Amendment rights are implicated ***any time that he testifies*** or responds to discovery requests that are admissible to prove that he engaged in the conduct alleged in the indictment. ***This conduct can exceed the specific allegations of the indictment***. Specifically, under Fed. R. Evid. 404(b), evidence of crimes, wrongs, and acts not alleged in the indictment, may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*Id.* at *7; *see also Green*, 177 F. Supp. 3d at 681 ("[W]hile the specific events directly at issue in this case and in the criminal case do not necessarily overlap, the court nonetheless concludes that, in the absence of a stay of discovery addressed to him, Defendant will face 'the quandary of choosing between waiving [his] Fifth Amendment rights or effectively forfeiting the civil case.'") (quoting *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1140 (S.D.N.Y. 1995)); *Zavatsky v. O'Brien*, 902 F. Supp. 2d 135, 148 (D. Mass. 2012) (explaining that although the defendant's criminal case involved issues "facially unrelated" to those in the civil case, "[t]here is a risk that discovery in this matter will expose [the defendants] to further criminal sanctions which weighs upon their ability to defend this action") (citations omitted); *In re Zinnel*, No. 2:12-CV-00249-MCE, 2013 WL 1284339, at *4 (E.D. Cal. Mar. 28, 2013) (staying bankruptcy proceedings because "although the specific allegations of the indictment and the adversary proceedings may differ, the bankruptcy litigation seriously implicates [petitioner's] Fifth Amendment rights.").

Both Jones and Neu have confronted this impossible choice during deposition, where they each elected to exercise their Fifth Amendment rights in response to certain questions concerning the incident alleged in this case.  Most notably, on the advice of his criminal defense counsel, Jones invoked his Fifth Amendment privilege against self-incrimination in response to questions regarding Plaintiff's cell extraction on July 24, 2014.  (*See, e.g.*, Jones Dep. at 9:13–10:24; 11:8–12:8; 13:6–16:23; 17:4–18:14.)  Although Neu answered many of Plaintiff's deposition questions regarding the events of July 24, 2014, he also followed his criminal defense attorney's advice and invoked his Fifth

1   Amendment rights in response to questions concerning his training and history with the department

2   (*see* Neu Dep. at 63:18–64:10; 70:22–72:1).

3          Jones' and Neu's depositions underscore the degree to which the conduct for which they are

4   being sued by Plaintiff and the conduct for which they are facing criminal charges is sufficiently

5   similar.  Indeed, Plaintiff has made a deliberate effort to place Neu's and Jones' criminal charges at

6   issue in this case by referring to them specifically in his First Amended Complaint (Dkt. No. 43 at

7   ¶ 22) and by asking Neu and Jones about them at deposition.  During Jones' deposition, Plaintiff asked

8   Jones various questions about his history of discipline by the SFSD (*see* Jones Dep. at 38:11–39:23)

9   and about his understanding of the SFSD's use-of-force and other policies (*see* Jones Dep. at 19:13–

10  21:14; 26:11–28:22).  In response, Jones exercised his Fifth Amendment rights.  Plaintiff also asked

11  Jones about his criminal proceedings.  (Jones Dep. at 41:5-6.)  Likewise, Neu invoked his Fifth

12  Amendment rights in response to questions about prior allegations of misconduct, including the

13  conduct for which he is being criminally prosecuted.  (*See* Neu Dep. at 7:1-12; 73:2–88:20.)  Under

14  these circumstances, "[t]here is a sufficient similarity in the civil and criminal cases to create a serious

15  risk of prejudice to the two defendants."  *Boock*, 2010 WL 2398918, at *2. Defendants anticipate that

16  Plaintiff will ask the Court to give an adverse-inference jury instruction, permitting the jury to draw a

17  negative inference from Jones' and Neu's exercise of their constitutional rights.[4]  Such an instruction

18  would severely prejudice Jones' and Neu's ability to defend themselves in this civil case.[5]  For

19  example, Plaintiff testified at his deposition that he believes Jones kicked him during the cell

20  extraction.  (Rosenblit Decl. Ex. 3 ("Ptf. Dep.") at 32:5-15.)  If Jones is asked at trial about his

21  participation in the cell extraction, he will invoke his Fifth Amendment rights.  (*See, e.g.*, Jones Dep.

22  at 9:13–10:24; 11:8–12:8; 13:6–16:23; 17:4–18:14.)  Similarly, if Jones is asked at trial about the role

23  of the other Defendants in the extraction, or his understanding of SFSD's Use of Force policy, he will

24  assert his Fifth Amendment rights.  (*See* Jones Dep. at 19:17–20:9; 21:15–24:2; 37:22–38:5).  If Neu

25  is asked any questions at trial regarding his employment status or history with the SFSD, he will

26  

[4] Defendants will, of course, oppose any request for such an instruction.

27  

[5] As discussed below, such an instruction would also significantly prejudice Jones' codefendants who are not facing any criminal charges.

28

1  invoke his Fifth Amendment rights.  (Neu Dep. at 70:22 – 72:1).   Permitting a negative inference that

2  Jones kicked Plaintiff, or did not understand the Use of Force policy, or that Neu was fired from the

3  SFSD, would severely prejudice these Defendants in the eyes of jurors.  Moreover, Neu will be

4  deprived of favorable testimony from Jones regarding the cell extraction.  Plaintiff alleges that

5  someone—he does not know who—punched him at least 15 times during the cell extraction.  (Ptf.

6  Dep. 31:24-32:13; 32:21-33:8; 34:6-10.)  As one of the four deputies in the cell with Plaintiff during

7  the extraction, Jones could provide favorable testimony that Neu did not punch Plaintiff.  Such

8  prejudice is particularly troubling given that Plaintiff seeks punitive damages from Defendants.  (*See*

9  Dkt. 43 at 5.)  Although Defendants are represented by the City Attorney's Office in this action, the

10  City and County of San Francisco is not responsible for paying any punitive damages that may be

11  awarded against each Defendant.  *See* Cal. Gov't Code § 825.  Under these circumstances, the

12  hardship facing Neu and Jones strongly favors postponing the trial.  *Landis*, 299 U.S. at 255.

13       The prejudice to Neu and Jones is all the more unfair given that it is avoidable.  The criminal

14  court will hear Jones' and Neu's motion to dismiss their criminal charges on December 14, 2018—just

15  eleven days after the current trial date in this case.  (Stern Decl. ¶ 5; Pavone Decl. ¶ 5.)  If successful,

16  that motion will dispose of all of the criminal charges against Neu and Jones.  (Stern Decl. ¶ 5; Pavone

17  Decl. ¶ 5.)  It would serve the interests of justice to temporarily continue the trial in this case by six

18  months, to allow the criminal motion to proceed and any attendant appeal deadlines to run.  *Parker v.*

19  *Dawson*, Nos. 06–CV–6191 (JFB)(WDW), 06–CV–6627 (JFB)(WDW), 07–CV–1268 (JFB)(WDW),

20  2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (noting that a key inquiry in determining the

21  burden to the defendant is "whether the criminal proceedings have substantially progressed beyond the

22  investigatory stage to the filing of formal charges against a particular defendant, so that there is an

23  imminent likelihood that the defendant will be subject to a criminal proceeding, including a trial, in the

24  very near future").

25       **2.**    **Fundamental fairness requires continuing the trial in this case to avoid unfair prejudice to the other Defendants.**

26

27       In determining how this case should proceed, the Court must balance the relative interests and

28  hardships to all parties.  *See, e.g.*, *United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-CV-

Def's Mot. to Continue Trial
Case No. 16-cv-04288 JSC
11
n:\lit\li2016\170570\01313615.docx

01039-HSG, 2016 WL 1534885, at *1 (N.D. Cal. Apr. 15, 2016) (discussing the *Landis* factors and citing *CMAX*, 300 F.2d at 268).  The Court must therefore give due consideration to the significant hardship and prejudice that Neu's and Jones' codefendants will suffer if forced to proceed to trial as scheduled.  That is especially true given that many of the questions that plaintiff asked Jones during his deposition implicate the other Defendants in this case.  For example, plaintiff asked Jones during his deposition whether he observed SFSD deputy Ysip, Defendant Bliss, Defendant Neu, Defendant Leonardini, Defendant Gray, Defendant Timpano, or Defendant Sanchez use force against Plaintiff on July 24, 2014.  (Jones Dep. at 21:7 – 23:19; *see also id.* at 16:4-23 ("Did you observe any sheriff's deputies kick Mr. Hymes on July 24th, 2014?" and "Did you observe any sheriff's deputies punch Mr. Hymes on July 24th, 2014?).)  As noted, Plaintiff seeks punitive damages from all of these Defendants as well.  (Dkt. No. 43 at 5.)

The other Defendants will face significant prejudice if the jury is permitted to draw negative inferences from Jones' and Neu's invocations of their Fifth Amendment rights in response to questions such as these.  In the criminal context, courts have consistently expressed concern that evidence introduced only against some codefendants can "spill over" and may be impermissibly considered against other codefendants, thereby violating the "cardinal rule of our criminal law that '[g]uilt with us remains individual and personal.'"  *United States v. Lane*, 883 F.2d 1484, 1498 (10th Cir. 1989) (quoting *Kotteakos v. United States*, 328 U.S. 750, 772 (1946)).  Although this is a civil case, the same concerns about fundamental fairness—namely, the possibility that jurors may apply negative inferences from Jones' and Neu's testimony to their innocent codefendants—favors a temporary stay here.  It is fundamentally unfair for these other codefendants to suffer prejudice at trial from Jones' and Neu's decision to exercise their constitutional privileges.

Furthermore, it would be especially unfair to these other codefendants—none of whom are facing criminal charges—to proceed to trial on this case without being able to present all of the evidence supporting their defenses.  As noted, according to Plaintiff, Jones participated in the cell extraction on July 24, 2014, and allegedly kicked Plaintiff during the cell extraction.  (Ptf. Dep. at 32:5-15.)  He also alleges that he was punched at least 15 times during the extraction.  (Ptf. Dep. 31:24-32:13; 32:21-33:8; 34:6-10.)  Although Jones was a member of the extraction team in the cell

Def's Mot. to Continue Trial
Case No. 16-cv-04288 JSC
12
n:\lit\li2016\170570\01313615.docx

with Plaintiff, and was therefore in a position to witness whether force was used and the extent of such force, the other Defendants who participated in the extraction (Neu, Deputy Timpano, and Deputy Gray) will be deprived of such testimony.  Jones will not be able to respond to questions about the extraction, and will instead invoke his Fifth Amendment privilege against self-incrimination.  Plaintiff has alleged claims for failure to intervene against all of the Defendants.  Jones' codefendants will therefore be deprived of testimony that could support their defense against plaintiff's claims.

### C.   Plaintiff will not suffer any prejudice from the continuance.

Plaintiff's interest in moving forward with the trial as scheduled is minimal and Plaintiff will not suffer any hardship by the proposed continuance.  *See CMAX*, 300 F.2d at 268 (discussing the first *Landis* factor, which considers "the possible damage which may result from the granting of a stay").  To begin with, Plaintiff's interest in proceeding to trial immediately is not, by itself, sufficient to deny granting the continuance.  Although continuing the trial in this case may delay Plaintiff from obtaining the monetary relief he seeks, "the Ninth Circuit has held monetary recovery cannot serve as the foundation to deny a stay."  *McElrath*, 2017 WL 1175591 at *5 (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)).

Nor would Plaintiff suffer any prejudice from the delay.  In opposing Defendants' prior request to stay discovery, plaintiff argued that "Plaintiff may be prejudiced significantly by a stay because he is currently facing charges in Case No. 3:13-cr-00800-WHO in this Court. If he were to be convicted, the Bureau of Prisons could place him anywhere in the country, making it impossible for him to participate in depositions in his civil rights case and far more difficult and costly for him to meet with counsel in this case."  (Dkt. No. 52 at 4.)  Even if that were true in June 2018, it is not the case now.  Discovery has now been closed for more than three months.  Plaintiff attended the depositions of all of the Defendants except Jones and Neu.  Expert discovery will soon terminate.  Plaintiff has filed his opposition to Defendants' summary judgment motion, which will be heard on November 9, 2018.  (Dkt. No. 96).  The parties' pretrial filings will be completed before the hearing on this motion.  In short, Plaintiff has fully participated in the pretrial process.  He will not suffer any prejudice if the trial in this case is postponed for six months.  If anything, Plaintiff will have additional time to prepare for trial.  *See CMAX*, 300 F.2d at 269 (holding that district court did not abuse discretion in postponing

1    trial pending resolution of related Civil Aeronautics Board enforcement action initiated two weeks

2    before trial, and noting that "all discovery proceedings have been concluded").

3         Further, Plaintiff remains in the custody of the SFSD at County Jail No. 4, where he has been

4    since his most recent arrest on July 21, 2014.  (Rosenblit Decl. ¶ 7.)  It appears that since his arrest and

5    guilty plea to certain charges, he has continuously delayed his sentencing, and may be in the process of

6    attempting to withdraw his guilty plea.  (Rosenblit Decl. ¶ 8).  There is no reason to believe Plaintiff

7    cannot (or will not) continue to delay his state-court proceedings to remain in custody in San Francisco

8    County Jail No. 4 for the foreseeable future.

9         **D.     The orderly course of justice favors postponing the trial.**

10        The third *Landis* factor and the third *Keating* factor are substantively similar—both ask courts

11   to consider the effect of a stay on the "orderly course of justice," including judicial efficiency and

12   convenience.  *Compare CMAX*, 300 F.2d at 268 (describing the third factor as "the orderly course of

13   justice measured in terms of the simplifying or complicating of issues, proof, and questions of law

14   which could be expected to result from a stay"), *with Keating*, 45 F.3d at 25 (describing the third

15   factor as "the convenience of the court in the management of its cases, and the efficient use of judicial

16   resources").  Each of these factors favors continuing the trial in this case.  Resolution of the criminal

17   case may allow the parties to avoid complicated evidentiary issues that will unquestionably arise at

18   trial if Neu and Jones are called to testify, as well as jury-instruction disputes concerning the scope of

19   any adverse inference.[6]  *See Paskenta Band of Nomlaki Indians v. Crosby*, No. 2:15-cv-00538-MCE-

20   CMK, 2017 WL 1408118, at *3 (E.D. Cal. Apr. 20, 2017) (granting stay request and noting the

21   convenience and efficiency gained when civil matters are able to "proceed unobstructed by concerns

22   regarding self-incrimination").  All parties and the court thereby stand to benefit from a continuance of

23   this trial.[7]

---

[6] At the last discovery hearing in this case, Plaintiff's counsel indicated that he had another trial
scheduled for mid-December in this Court before the Hon. Judge Charles Breyer.  While Defendants
are not aware of Plaintiff's counsel's current trial schedule, assuming that conflicting case is still
scheduled to proceed, it would promote court convenience to continue this trial while the other trial
takes place.

[7] To the extent the *Keating* factors are relevant outside of the civil discovery context, the fourth and
fifth *Keating* factors—the interests of nonparties and the public—also support a stay.  The public
interest in the orderly administration of criminal justice dovetails with the paramount interests of the

1

## IV.    CONCLUSION

Weighing the relative interests and potential hardships facing the parties, the interests of justice strongly favor postponing the trial in this matter until Neu's and Jones' criminal proceedings are resolved.  Accordingly, Defendants respectfully request that the Court vacate the trial date of December 3, 2018 in this case, and schedule (i) a Case Management Conference in ninety days to assess the status of Neu's and Jones' criminal proceedings, and (ii) a trial date no earlier than June 2019.


Dated:  October 26, 2018

                                                DENNIS J. HERRERA
                                                City Attorney
                                                CHERYL ADAMS
                                                Chief Trial Deputy
                                                RENÉE E. ROSENBLIT
                                                BRIGGS MATHESON
                                                Deputy City Attorneys


                                    By:____*/s/ Briggs Matheson*_____
                                                BRIGGS MATHESON

                                                Attorneys for Defendants
                                                MILTON BLISS, et al.

---

public and nonparty State of California in ensuring that legal proceedings involving public officers proceed fairly and openly.