# EXHIBIT 1

# In The Matter Of:

*HYMES VS.*

*BLISS*

---

*EUGENE JONES*

*August 8, 2018*

---

*CLARK REPORTING & VIDEO CONFERENCING*

*2140 SHATTUCK AVE. STE. 407*

*BERKELEY, CA  94704*

*WWW.CLARKDEPOS.COM*

Original File JONES.txt

Min-U-Script® with Word Index

**CLARK REPORTING & VIDEO CONFERENCING**

1

1           UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3             SAN FRANCISCO DIVISION

4   SCANVINSKI JEROME HYMES,      )
                                  )
5              Plaintiff,         )
                                  )
6          v.                     )  No. 3:16-cv-04288-JSC
                                  )
7   MILTON BLISS, VICTOR M.       )
    SANCHEZ, JOSEPH A.            )
8   LEONARDINI, SCOTT NEU,        )
    EUGENE A. JONES,              )
9   PAUL TIMPANO, PIERRE A.       )
    GRAY,                         )
10                                )
               Defendants.        )
11  _____)

12

13

14

15

16

17           DEPOSITION OF EUGENE JONES

18           Wednesday, August 8, 2018

19

20       CLARK REPORTING & VIDEO CONFERENCING

21          2140 SHATTUCK AVE. STE. 407

22             BERKELEY, CA  94704

23               510.486.0700

24  Reported by:

25  SHELLI G. ENG, C.S.R. No. 11397

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1                      I N D E X

2    Examination by:                                    Page

3      MR. KATON . . . . . . . . . . . . . . . . . . . . 7

4

5                        ---oOo---

6

7

8

9              I N D E X   O F   E X H I B I T S

10   Exhibit                                            Page

11   1        Policy and procedure documents; 4 pages . . . . 18

12   2        Policy and procedure documents; 4 pages . . . . 19

13   3        Policy and procedure documents; 3 pages . . . . 20

14                        ---oOo---

15

16

17

18

19

20

21

22

23

24

25

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

3

1                        APPEARANCES

2

3

4    For the Plaintiff:

5                      KATON LAW
                 BY:  GLENN KATON, ESQUIRE
6              385 Grand Avenue, Suite 200
               Oakland, California 94610
7                Phone: (510) 463-3350
                  Fax: (510) 463-3349
8                  gkaton@katon.law

9

10         LAW OFFICE OF CAITLIN KELLY HENRY
           BY:  CAITLIN KELLY HENRY, ESQUIRE
11    1201 Martin Luther King Jr. Way, Suite 200
               Oakland, California 94612
12               Phone: (510) 277-2025
               ckh@caitlinkellyhenry.com
13

14

15

16

17   For the Defendants:

18         CITY AND COUNTY OF SAN FRANCISCO
             OFFICE OF THE CITY ATTORNEY
19     BY:  BRIGGS MATHESON, DEPUTY CITY ATTORNEY
        RENEE E. ROSENBLIT, DEPUTY CITY ATTORNEY
20           1390 Market Street, Sixth Floor
             San Francisco, California 94102
21               Phone: (415) 554-3800
                  Fax: (415) 554-3837
22           briggs.matheson@sfcityatty.org
             renee.rosenblit@sfcityatty.org
23

24

25

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

4

```
 1                     APPEARANCES

 2                     (Continued)

 3

 4

 5                     PAVONE LAW
               BY:  MATTHEW B. PAVONE, ESQUIRE
 6               750 Grant Avenue, Suite 250
                 Novato, California 94945
 7               Phone: (415) 209-9610
                   Fax: (415) 892-0337
 8               mpavone@pavonelaw.com

 9

10

11

12   The Videographer:

13                 JOSEPH MOURGOS
               Eureka Street Legal Video
14                 Phone: (415) 215-2041

15

16                 ---oOo---

17

18

19

20

21

22

23

24

25
```

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

9

1  constitutional and statutory privileges from time to

2  time, and I will be advising him accordingly.  Thank

3  you.

4  BY MR. KATON:

5      Q.  Just so the record is clear, are you refusing

6  to answer the question of whether you were a sheriff's

7  deputy on July 24th, 2014?

8          MR. PAVONE:  Yes.

9          THE WITNESS:  Yes.

10         MR. PAVONE:  I'm instructing the witness not

11  to answer that question.

12  BY MR. KATON:

13     Q.  Do you recall an incident involving Scanvinski

14  Jerome Hymes on July 24th, 2014?

15         MR. PAVONE:  Objection.  Violates

16  constitutional privilege.  Instruct the witness not to

17  answer.

18         You should read the invocation that I provided

19  to you, Deputy Jones.

20         Deputy Jones?

21         THE WITNESS:  Yes, sir.

22         MR. PAVONE:  Read the invocation that I

23  provided to you so we can make a proper record.

24         THE WITNESS:  "I respectfully decline to

25  answer that question based upon my rights against

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

10

1   self-incrimination under the United States and

2   California Constitutions and the California Evidence

3   Code."

4              MR. KATON:   If your counsel does not object,

5   we can refer to that invocation so that the witness

6   doesn't have to recite it in full.

7              MR. PAVONE:   Fine.  I appreciate that and I

8   accept that offer.  Thank you.

9   BY MR. KATON:

10      Q.   Have you ever met Scanvinski Jerome Hymes

11   before?

12              MR. PAVONE:   Go ahead.

13              THE WITNESS:   Yes.

14   BY MR. KATON:

15      Q.   Had you ever met him prior to July 24th, 2014?

16      A.   No.

17      Q.   What were -- well, did you meet him on July

18   24th, 2014?

19              MR. PAVONE:   Instruct the witness not to

20   answer based on his constitutional rights.

21   BY MR. KATON:

22      Q.   Are you going to invoke the privilege that you

23   recited earlier?

24      A.   Yes, sir.

25      Q.   Were you part of -- well, let me withdraw

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1   that.

2           Do you know what a S.O.R.T. team is?

3       A.   Yes.

4       Q.   What is a S.O.R.T. team?

5       A.   S.O.R.T. team is a group of individuals put

6   together to remove someone from a cell or their housing

7   location.

8       Q.   And were you part of a S.O.R.T. team on

9   July 24th, 2014?

10           MR. PAVONE:   Instruct the witness not to

11   answer based on his constitutional privilege.

12   BY MR. KATON:

13       Q.   Are you going to invoke the privilege that you

14   recited earlier?

15       A.   Yes.

16       Q.   Are you aware of whether any sheriff's

17   deputies removed Mr. Hymes from his cell on July 24th,

18   2014?

19           MR. PAVONE:   Instruct the witness not to

20   answer based on his constitutional privileges.

21   BY MR. KATON:

22       Q.   Are you going to invoke the privilege that you

23   recited earlier?

24       A.   Yes.

25       Q.   Do you know of any deputies who were involved

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

12

1    in removing Mr. Hymes from his cell on July 24th, 2014?

2              MR. PAVONE:  Instruct the witness not to

3    answer based on his constitutional privileges.

4    BY MR. KATON:

5         Q.   Are you going to invoke the --

6         A.   Yes.

7         Q.   -- privilege that you recited earlier?

8         A.   Yes.

9         Q.   So now, I want to be clear that I'm not asking

10   anything about you or whether you were involved in

11   removing Mr. Hymes from his cell.  I'm asking if you are

12   aware of whether any other deputies were involved in

13   removing Mr. Hymes from his cell on July 24th, 2014.

14             MR. PAVONE:  Instruct the witness not to

15   answer.

16             Deputy, to facilitate things, when I say that,

17   you can then give the response that "I invoke my

18   privilege . . ."

19             THE WITNESS:  Okay.

20             MR. PAVONE:  Just to speed it along.  I'm

21   instructing the witness not to answer that question.

22             THE WITNESS:  I invoke -- or, yes.  I don't

23   know what to say.

24   BY MR. KATON:

25        Q.   If you intend to invoke the privilege that you

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1  recited earlier, you can just say "I am invoking the

2  privilege that I recited earlier."

3        A.    Okay.

4        Q.    And that's what you're doing?

5        A.    Yes.

6        Q.    So did you ever -- well, let me withdraw that.

7              Did you ever observe Scanvinski Jerome Hymes

8  after July 24th, 2014?

9              MR. PAVONE:   Instruct the witness not to

10  answer.

11  BY MR. KATON:

12        Q.    And are you going to invoke the privilege that

13  you recited earlier?

14        A.    Yes.

15        Q.    Did you give any commands to Scanvinski Jerome

16  Hymes on July 24th, 2014?

17              MR. PAVONE:   Instruct the witness not to

18  answer.   Same grounds.

19  BY MR. KATON:

20        Q.    And are you --

21        A.    Yes.

22        Q.    Just so the record is clear, are you invoking

23  the privilege that you recited earlier?

24        A.    Yes, sir.

25              MR. PAVONE:   And for the record, all of my

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

14

1   instructions not to answer are based on his

2   constitutional rights unless otherwise indicated.

3   BY MR. KATON:

4        Q.    Did you use any force on Mr. Hymes on

5   July 24th, 2014?

6              MR. PAVONE:   Instruct the witness not to

7   answer.   Same grounds.

8   BY MR. KATON:

9        Q.    And, Mr. Jones, are you going to invoke the

10   privilege that you recited earlier?

11       A.    Yes, sir.

12       Q.    Did you observe any other sheriff's deputies

13   using force on Mr. Hymes on July 24th, 2014?

14              MR. PAVONE:   Instruct the witness not to

15   answer.   Same grounds.

16   BY MR. KATON:

17       Q.    And are you going to invoke the privilege you

18   recited earlier?

19       A.    Yes, sir.

20       Q.    Do you recall if you prepared an incident

21   report in connection with Scanvinski Jerome Hymes

22   relating to an incident on July 24th, 2014?

23              MR. PAVONE:   Instruct the witness not to

24   answer.   Same grounds.

25   BY MR. KATON:

**CLARK REPORTING & VIDEO CONFERENCING**

15

1      Q.    And are you going to invoke the privilege you

2  recited earlier?

3      A.    Yes.

4      Q.    Did you observe Mr. Hymes hit his head on a

5  toilet on July 24th, 2014?

6           MR. PAVONE:   Instruct the witness not to

7  answer.   Same grounds.

8  BY MR. KATON:

9      Q.    And are you going to invoke the privilege you

10  recited earlier?

11      A.    Yes, sir.

12      Q.    Do you know whether Mr. Hymes sustained any

13  injuries in connection with being removed from his cell

14  on July 24th, 2014?

15           MR. PAVONE:   Instruct the witness not to

16  answer.   Same grounds.

17  BY MR. KATON:

18      Q.    And are you going to invoke the privilege that

19  you recited earlier?

20      A.    Yes.

21      Q.    Do you know how Mr. Hymes might have sustained

22  any injuries on July 24th, 2014?

23           MR. PAVONE:   Objection.   Instruct the witness

24  not to answer.   Same grounds.

25  BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

16

1      Q.   Are you going to invoke the privilege that you

2  recited earlier?

3      A.   Yes.

4      Q.   Did you observe any sheriff's deputies kick

5  Mr. Hymes on July 24th, 2014?

6           MR. PAVONE:   Instruct the witness not to

7  answer.   Same grounds.

8  BY MR. KATON:

9      Q.   And are you going to invoke the privilege that

10  you recited earlier?

11      A.   Yes, sir.

12      Q.   Did you observe any sheriff's deputies punch

13  Mr. Hymes on July 24th, 2014?

14           MR. PAVONE:   Instruct the witness not to

15  answer.

16           THE WITNESS:   Yes, sir.

17           MR. PAVONE:   Well --

18           THE WITNESS:   I respectfully decline to answer

19  that question.

20  BY MR. KATON:

21      Q.   Yes, you meant you're following your

22  attorney's instruction not to answer?

23      A.   Yes, correct.

24      Q.   So just try -- I know you know what I am

25  saying, but just let me finish before you start to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

17

1    answer so the record is clear.

2          A.    Yes, sir.  Sorry about that.

3          Q.    No problem.

4                Do you know any reason why Mr. Hymes may have

5    been removed from his cell on July 24th, 2014?

6                MR. PAVONE:   Instruct the witness not to

7    answer.  Same grounds.

8    BY MR. KATON:

9          Q.    And are you going to invoke the privilege that

10   you recited earlier?

11         A.    Yes, sir.

12         Q.    I may have asked a similar question when we

13   first started this morning, but just -- I would like to

14   make sure that I asked you this.

15               Were you working as a sheriff's deputy for the

16   City and County of San Francisco on July 24th, 2014?

17               MR. PAVONE:   Instruct the witness not to

18   answer.  Same grounds.

19   BY MR. KATON:

20         Q.    And are you going to invoke the privilege that

21   you recited earlier?

22         A.    Yes, sir.

23         Q.    Do you know if Sergeant Bliss assembled a

24   S.O.R.T. team to remove Mr. Hymes from his cell on

25   July 24th, 2014?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

18

1          MR. PAVONE:   Instruct the witness not to
2   answer.   Same grounds.
3   BY MR. KATON:
4       Q.   And are you going to invoke the privilege you
5   recited earlier?
6       A.   Yes.
7       Q.   Did you observe Mr. Hymes resisting any
8   deputies on July 24th, 2014?
9          MR. PAVONE:   Instruct the witness not to
10  answer.   Same grounds.
11  BY MR. KATON:
12      Q.   And are you going to invoke the privilege that
13  you recited earlier?
14      A.   Yes.
15      Q.   I will get the court reporter to mark the
16  first exhibit, please.
17          (Whereupon Plaintiff's Exhibit 1 was marked
18          for identification by the court reporter.)
19  BY MR. KATON:
20      Q.   And if you could look at Exhibit 1 and tell me
21  if you recognize this document.
22          MR. PAVONE:  Go ahead.  You can answer that
23  question.
24          THE WITNESS:  Yes.
25  BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1        Q.    And what is this document?

2        A.    The title is "S.O.R.T. Cell Extraction."

3        Q.    And you've seen this document before?

4        A.    Yes.

5        Q.    And were you familiar with this document as of

6    July 24th, 2014?

7            MR. PAVONE:   Instruct the witness not to

8    answer.   Same grounds.

9    BY MR. KATON:

10       Q.    And are you going to invoke the privilege that

11   you recited earlier?

12       A.    Yes.

13       Q.    I'll ask the court reporter to mark 2, please.

14            (Whereupon Plaintiff's Exhibit 2 was marked

15            for identification by the court reporter.)

16   BY MR. KATON:

17       Q.    And if you could tell me -- take a minute to

18   review it and let me know if you are familiar with the

19   document that is Exhibit 2?

20       A.    Yes, sir.

21       Q.    You are familiar with it?

22       A.    Yes, sir.

23       Q.    And what is that?

24       A.    The use of force policy.

25       Q.    And you've seen this before today?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

20

1          A.    Yes.

2          Q.    And were you familiar with this document as of

3     July 24th, 2014?

4              MR. PAVONE:    Instruct the witness not to

5     answer.   Same grounds.

6     BY MR. KATON:

7          Q.    And are you going to invoke the privilege that

8     you recited earlier?

9          A.    Yes.

10         Q.    I will ask the court reporter to mark 3,

11    please.

12              (Whereupon Plaintiff's Exhibit 3 was marked

13              for identification by the court reporter.)

14    BY MR. KATON:

15         Q.    If you could take a moment to look at what's

16    marked as Exhibit 3, and let me know if you know what

17    that is.

18         A.    Yes, sir.

19         Q.    What is that?

20         A.    That's the incident report policy.

21         Q.    And were you familiar with this document

22    before today?

23         A.    Yes.

24         Q.    And were you familiar with this document as of

25    July 24th, 2014?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

21

1          MR. PAVONE:  Instruct the witness not to

2  answer.  Same grounds.

3  BY MR. KATON:

4      Q.   And are you going to invoke the privilege that

5  you recited earlier?

6      A.   Yes.

7      Q.   Did you observe Sergeant Bliss using any force

8  against Mr. Hymes on July 24th, 2014?

9          MR. PAVONE:  Instruct the witness not to

10  answer.

11  BY MR. KATON:

12      Q.   Are you going to invoke the privilege you

13  recited earlier?

14      A.   Yes.

15      Q.   Did you observe Deputy Timpano using any force

16  against Mr. Hymes on July 24th, 2014?

17          MR. PAVONE:  Instruct the witness not to

18  answer.

19  BY MR. KATON:

20      Q.   Are you going to invoke the privilege you

21  recited earlier?

22      A.   Yes.

23      Q.   Did you observe Deputy Neu use any force

24  against Mr. Hymes on July 24th, 2014?

25          MR. PAVONE:  Instruct the witness not to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

22

1    answer.

2    BY MR. KATON:

3         Q.   Are you going to invoke the privilege you

4    recited earlier?

5         A.   Yes.

6         Q.   If I refer to "the incident," will you

7    understand that I'm referring to the circumstances

8    surrounding the removal of Mr. Hymes from his cell on

9    July 24th, 2014?

10             MR. PAVONE:   You can answer that question.

11             THE WITNESS:   Yes.

12   BY MR. KATON:

13        Q.   Did you observe Deputy Ysip, Y-s-i-p, use any

14   force against Mr. Hymes on the day of the incident?

15             MR. PAVONE:   Instruct the witness not to

16   answer.

17   BY MR. KATON:

18        Q.   Are you going to invoke the privilege you

19   recited earlier?

20        A.   Yes.

21        Q.   Did you observe Deputy Sanchez use any force

22   against Mr. Hymes on the day of the incident?

23             MR. PAVONE:   Instruct the witness not to

24   answer.

25   BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

23

1      Q.    Are you going to invoke the privilege that you

2   recited earlier?

3      A.    Yes.

4      Q.    Did you observe Deputy Gray use any force

5   against Mr. Hymes on the day of the incident?

6         MR. PAVONE:   Instruct the witness not to

7   answer.

8   BY MR. KATON:

9      Q.    Are you going to invoke the privilege you

10   recited earlier?

11      A.    Yes.

12      Q.    Did you observe Deputy Leonardini use any

13   force against Mr. Hymes on the day of the incident?

14         MR. PAVONE:   Instruct the witness not to

15   answer.

16   BY MR. KATON:

17      Q.    And are you going to invoke the privilege you

18   recited earlier?

19      A.    Yes.

20      Q.    And are you aware that on July 24th, 2014, it

21   was not your job to punish Mr. Hymes?

22         MR. PAVONE:   Instruct the witness not to

23   answer.

24   BY MR. KATON:

25      Q.    Are you going to invoke the privilege you

**EUGENE JONES**

1    recited earlier?

2          A.    Yes, sir.

3          Q.    And if you could just take a look at

4    Exhibit 1, if you see on the top of page 2, there's

5    paragraph C, which says, "When possible, employees shall

6    utilize verbal techniques to encourage voluntary

7    compliance from the prisoner."

8                Were you aware of that guidance as of

9    July 24th, 2014?

10               MR. PAVONE:  Instruct the witness not to

11   answer.

12   BY MR. KATON:

13         Q.    Are you going to invoke the privilege you

14   recited earlier?

15         A.    Yes, sir.

16         Q.    In your experience and training, are sheriff's

17   deputies allowed to retaliate against prisoners who are

18   being verbally abusive?

19               MR. PAVONE:  Instruct the witness not to

20   answer.

21   BY MR. KATON:

22         Q.    Are you going to invoke the privilege you

23   recited earlier?

24         A.    Yes.

25         Q.    In your training, are sheriff's deputies

**CLARK REPORTING & VIDEO CONFERENCING**

26

1    BY MR. KATON:

2         Q.   Is there a part of that question that you

3    didn't understand that I can clarify?

4         A.   No.  I understand now, sir.

5         Q.   Okay.  What is your answer to that question

6    subject to Mr. Matheson's objection?

7              THE WITNESS:  Does that mean I answer?

8              MR. PAVONE:  You can answer.

9              THE WITNESS:  No.

10   BY MR. KATON:

11        Q.   Do you agree that sheriff's deputies may only

12   use the force that a reasonable officer would use in

13   similar circumstances?

14             MR. MATHESON:  Same objection.  Calls for a

15   legal conclusions.

16             MR. PAVONE:  And instruct not to answer on

17   constitutional privilege grounds.

18   BY MR. KATON:

19        Q.   Are you going to refuse to answer and invoke

20   the privilege that you recited earlier?

21        A.   Yes.

22        Q.   Do you agree that a sheriff's deputy

23   witnessing another deputy using excessive force is

24   obligated to intervene to stop that from happening?

25             MR. PAVONE:  Instruct the witness not to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1    answer based on constitutional privilege.

2            MR. MATHESON:  Same objections.

3    BY MR. KATON:

4        Q.   Are you going to decline to answer based upon

5    the privileges that you recited earlier?

6        A.   Yes.  Excuse me, yes.

7        Q.   Are you aware of a policy in the San Francisco

8    jail that prohibits prisoners from using vulgar

9    language?

10           MR. PAVONE:  You can answer.

11           THE WITNESS:  Can you repeat the question,

12   sir?

13   BY MR. KATON:

14       Q.   Sure.

15           Are you aware of a policy in the San Francisco

16   jail that prohibits prisoners from using vulgar

17   language?

18       A.   No.

19       Q.   Would you agree that sheriff's deputies who do

20   use excessive force against prisoners should be

21   accountable for their conduct?

22           MR. MATHESON:  Instruct the witness not to

23   answer.

24   BY MR. KATON:

25       Q.   Are you going to refuse to answer based upon

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1    privilege that you recited earlier?

2         A.    Yes, sir.

3         Q.    Do you agree that when dealing with a prisoner

4    who is not following commands of deputies that sheriff's

5    deputies should try to use deescalation before using

6    force when feasible?

7              MR. PAVONE:    Instruct the witness not to

8    answer.

9    BY MR. KATON:

10        Q.    Are you going to decline to answer based upon

11   the privileges that you recited earlier?

12        A.    Yes, sir.

13        Q.    Do you agree that sheriff's deputies should

14   give prisoners a warning before using force to give them

15   the opportunity to comply before the force is used when

16   that's feasible?

17             MR. PAVONE:    Instruct the witness not to

18   answer.

19   BY MR. KATON:

20        Q.    Are you going to decline to answer based upon

21   the privileges that you recited earlier?

22        A.    Yes.

23        Q.    Mr. Jones, are you currently employed?

24             MR. PAVONE:  You can answer.

25             THE WITNESS:  Yes.

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1      Q.    And you did not discuss the incident with any

2  of your fellow deputies at the San Francisco Sheriff's

3  Department?

4      A.    No.

5      Q.    In preparation for this deposition, did you

6  review any incident report?

7      A.    Not that I recall, but I'm not sure.

8      Q.    Did you review any witness statements in

9  preparation for this deposition?

10     A.    No.

11     Q.    Did you review any memoranda in preparing for

12 this deposition?

13          MR. MATHESON:  Objection to the extent the

14 question is seeking information protected by the

15 attorney-client privilege.

16          MR. KATON:  So I will rephrase that.

17     Q.    Did you review any memoranda in preparation

18 for this deposition other than any that may have been

19 provided to you by your attorneys or prepared by your

20 attorney?

21     A.    No.

22     Q.    And have you been investigated by the

23 San Francisco Sheriff's Department for use of force in

24 the past?

25          MR. PAVONE:  Instruct the witness not to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1    answer.   Same grounds.

2    BY MR. KATON:

3          Q.    And are you going to decline to answer based

4    upon the privileges that you recited earlier?

5          A.    Yes.

6                MS. ROSENBLIT:   In addition, we would like to

7    object that the question calls for information protected

8    by the deponent's right to privacy and the official

9    information privilege.

10   BY MR. KATON:

11         Q.    Have you ever been disciplined by the

12   San Francisco Sheriff's Department for use of force

13   before?

14               MR. PAVONE:   Instruct the witness not to

15   answer.

16               MR. MATHESON:   Same objections.

17   BY MR. KATON:

18         Q.    Are you going to decline to answer based upon

19   the privileges that you recited earlier?

20         A.    Yes.

21         Q.    Have you been disciplined for any reason by

22   the San Francisco Sheriff's Department relating to the

23   treatment of prisoners?

24               MR. PAVONE:   Instruct the witness not to

25   answer.

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

39

1              MR. MATHESON:  Same objections.

2    BY MR. KATON:

3         Q.   Are you going to decline not to answer based

4    upon the privileges that you recited earlier?

5         A.   Yes.

6         Q.   Have you ever been disciplined for your

7    conduct in S.O.R.T. operations?

8              MR. PAVONE:  Instruct the witness not to

9    answer.

10             MR. MATHESON:  Same objection.

11   BY MR. KATON:

12        Q.   Are you going to decline to answer based upon

13   the privileges that you recited earlier?

14        A.   Yes.

15        Q.   Have you been disciplined before for failing

16   to prepare incident reports as required?

17             MR. PAVONE:  Instruct the witness not to

18   answer.

19             MR. MATHESON:  Same objections.

20   BY MR. KATON:

21        Q.   Are you going to decline not to answer based

22   upon the privileges you recited earlier?

23        A.   Yes.

24        Q.   Have you been a party to a civil lawsuit apart

25   from the one that we are here about today?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

41

1   C-o-l-v-i-n, that you're aware of?

2        A.   No, sir.

3        Q.   And have you ever been convicted of a crime?

4        A.   No, sir.

5        Q.   And are you currently facing criminal charges?

6        A.   Yes, sir.

7        Q.   And have you faced criminal charges other than

8   those that you're currently facing?

9        A.   No, sir.

10            MR. KATON:  I don't think I have too much

11   more.  Can we take a quick break?

12            MR. MATHESON:  Sure.

13            THE VIDEOGRAPHER:  Going off the record.  The

14   time is 10:44 a.m.

15            (Whereupon recess was taken from 10:44 to

16            10:52.)

17            THE VIDEOGRAPHER:  We are back on the record.

18   The time is 10:52 a.m.

19   BY MR. KATON:

20        Q.   Are you okay to continue, Deputy Jones?

21        A.   Yes, sir.

22        Q.   When you were referring to working earlier

23   today, what are your current duties, if you can

24   summarize them, as far as your responsibilities as a

25   sheriff's deputy?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1   STATE OF CALIFORNIA )

2   COUNTY OF ALAMEDA   )

3           I, Shelli G. Eng, Certified Shorthand Reporter,

4   No. 11397, State of California, do hereby certify:

5           That prior to being examined, the witness named

6   in the foregoing deposition, to wit, EUGENE JONES, was by

7   me duly affirmed to testify the truth, the whole truth

8   and nothing but the truth; that said deposition was taken

9   down by me in shorthand at the time and place therein

10  named and thereafter reduced to typewriting under my

11  direction and supervision; that the witness was given an

12  opportunity to read and correct said deposition and to

13  subscribe the same.  Should the signature of the witness

14  not be affixed to the deposition, the witness did not

15  avail himself of the opportunity to sign or the signature

16  has been waived.

17          I further certify that I am not of counsel for

18  either or any of the parties to the said deposition, nor

19  in any way interested in the event of this action and

20  that I am not related to any of the parties thereto.

21          WITNESS MY HAND this 17th day of August, 2018.

22

23                          ----------------------------
                            SHELLI G. ENG, CSR NO. 11397
24                          CERTIFIED SHORTHAND REPORTER

25

**EUGENE JONES**