Glenn Katon SBN 281841
KATON.LAW
385 Grand Avenue, Suite 200
Oakland, CA 94610
gkaton@katon.law
(510) 463-3350
(510) 463-3349 (fax)

Caitlin Kelly Henry SBN 287949
ATTORNEY AT LAW
1201 Martin Luther King Jr. Way
Suite 200
Oakland, CA 94612
ckh@caitlinkellyhenry.com
(510) 277-2025

ATTORNEYS FOR PLAINTIFF
SCANVINSKI JEROME HYMES

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| SCANVINSKI JEROME HYMES, | Case No. 3:16-cv-04288-JSC |
| Plaintiff, | |
| v. | **PLAINTIFF HYMES'S OPPOSITION TO MOTION TO CONTINUE TRIAL** |
| MILTON BLISS, VICTOR M. SANCHEZ, JOSEPH A. LEONARDINI, SCOTT NEU, EUGENE A. JONES, PAUL TIMPANO, PIERRE A. GRAY | Trial Date: December 3, 2018 |
| Defendants. | |

## I. INTRODUCTION

Defendants are asking the Court to stay[1] this case a second time after being denied the first, based on the assertion that "circumstances have changed significantly" since their last unsuccessful attempt to delay this case indefinitely. The change in circumstances they call

---

[1] Defendants caption their motion as seeking a "continuance;" however, they are not asking for the case to be reset, they are asking for a future status conference where the Court should consider setting the case "no earlier" than June 2019. Mot. to Continue at 15/4-7.

significant are at most minor and do not warrant a change in the Court's judgment on their previous motion to stay. A motion to dismiss has been put on the calendar in Defendants Neu and Jones' criminal case and they have invoked their Fifth Amendment privilege against self-incrimination as to certain questions asked at their deposition in this case. These are hardly major developments. In fact, the uncertainty surrounding their criminal proceedings ensure that no end is in sight for Neu and Jones' exposure to criminal liability and this Court's considered judgment on their previous motion to stay remains applicable to the current posture of the case.

## II.  BACKGROUND

Plaintiff alleges two beatings on the same day during his pretrial detention. Almost two years later, two of the seven defendants in his case were charged with crimes against other prisoners in unrelated incidents. "Plaintiff's civil claims arose out of a single incident in July 2014, while the criminal complaint is based on a separate series of incidents that took place several months later and continued into 2015. Moreover, the conduct at issue in the criminal cases does not involve Plaintiff, and the conduct at issue in the civil case involves an additional five defendants who are not parties to either criminal case." (Dkt. No. 58 at 5:04-08.) Defendants Neu and Jones currently face charges filed in 2016 separate[2] criminal matters stemming from a series of 2014 and 2015 incidents of excessive force. (Dkt. No. 52-2 at Ex. A.) *See People v. Neu*, Case No. 16004103; *People v. Jones*, Case No. 16004106. The criminal cases have no trial date. (Dkt. No. 52-1 at ¶ 5; Dkt. No. 52-2 at ¶ 5.)

## III.  ARGUMENT

### A.  Good Cause Is Required to Continue Trial

A motion for a continuance that seeks to modify a pretrial scheduling order may only be granted for good cause. Fed. R. Civ. P. 16; *Silverman v. City and County of San Francisco*, 2012

---

[2] "Although both the civil and criminal complaints contain allegations of excessive force by Neu and Jones, the two cases do not implicate the same 'nucleus of facts.'"(Dkt. 58 at 4 24-27 (quoting *McCormick v. Rexroth*, No. C 09–4188 JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010).)

WL 6019309, at *1 (N.D.Cal., 2012.).[3] "The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 324 (9th Cir. 1995). "In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable[.]" *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980). "While the extent to which . . . defendant[s"] Fifth Amendment rights are implicated is a significant factor to be considered, it is only one consideration to be weighed against others." Order Denying Defs.' Request to Stay Civil Discovery (Dkt. 58) at 3:25-28 (citing *SEC v. Alexander*, No. 10–CV–4535, 2010 WL 5388000, at *3 (N.D. Cal. Dec. 22, 2010) (internal quotation marks and citation omitted) and *Keating*, 45 F.3d at 326 (listing the five factors courts consider when deciding whether to grant a stay)). In determining whether to stay civil proceedings in the face of a related criminal action, courts evaluate "the particular circumstances and competing interests involved in the case." *Fed. Sav. & Loan Ins. Corp. v. Molinaro,* 889 F.2d 899, 902 (9th Cir. 1989). The party seeking a stay bears the "burden to make out a clear case of hardship or inequity in being required to go forward," and the court must weigh the competing interests that will be affected by the granting of or refusal to grant the stay." *DeMartini v. Johns*, 693 Fed. App'x 534, 538 (9th Cir. 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)).

Defendants argue that now the Court should reach a different conclusion from the one reached when denying their Motion to Stay Discovery based upon the three *Landis/CMAX*[4] factors, instead of applying the five *Keating* factors that resulted in a denial: (1) "possible damage

---

[3] *See also U.S. v. Brandenfels*, 522 F.2d 1259, 1263 (9th Cir 1975) (motion for continuance made late in the proceedings; denial of continuance proper in view of excessive trial preparation required and the number of witnesses expected to be called). Modification of trial deadlines threatens a "court's ability to control its own docket" and both "disrupt[s] the agreed-upon course of ligitation[] and [may] reward the indolent and cavalier." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted).

[4]The multi-factor analyses for delaying proceedings arise from simultaneous civil cases, not a civil case proceeding while a criminal case is pending. *Keating* concerned stay proceedings in one civil suit until the decision of another civil suit, *CMAX* concerned a mandamus seeking to vacate an order to postpone a civil trial due to Civil Aeronautics Board proceedings, and *Landis* concerned an order to stay proceedings in one civil suit until the decision of another civil suit.

which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (interpreting factors from *Landis v. North American Co*. 299 U.S. 248 (1936).) .) The *Landis/CMAX* factors also favor proceeding with trial as scheduled. In evaluating a motion for a continuance a court can consider: 1. the inconvenience a continuance would cause; and 4. the extent to which a party might suffer harm. (*See United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir.2000) (quoting *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir.), amended by 764 F.2d 675 (9th Cir.1985); *United States v. Mejia*, 69 F.3d 309, 316 (9th Cir.1995).

### B. Defendants' Claim that a Six-Month Stay Will Resolve Their Concern About Neu and Jones Asserting the Fifth Amendment is False

Defendants' motion asks for a six-month continuance. Mot. to Continue (Dkt 101) at 11/17-18; 13/27. The motion's conclusion would have the court vacate the December 3, 2018 trial date, schedule a case management conference in 90 days, and set a trial date "no earlier than" June 2019. *Id*. at 15/4-7. This arbitrary timeframe bears no relationship to when Defendants Neu and Jones will be clear of concern about incriminating themselves through their testimony in this case. Indeed, there is no chance that the motion to dismiss calendared for December 13 will eliminate Neu and Jones need to continue to take the Fifth Amendment in this case to avoid incriminating themselves.

First, if Neu and Jones do file a motion to dismiss and the court hears it on December 13, it is unknown when the court will rule on the motion. Second, if the court denies the motion, Defendants will be in the exact position they are in now. Third, if the court grants the motion, the District Attorney apparently has 60 days to decide whether to appeal. *Id*. at 5/27-28. If he appeals, there would be an indefinite period during which the parties would brief and argue the case before the District Court of Appeal would issue a decision. That decision would be subject to further effort to appeal by the losing side. It is difficult to imagine that process taking less than a year,

during which Neu and Jones would face exposure for the same criminal liability they face today. Fourth, if the motion to dismiss were granted and the District Attorney decided not to appeal, that would only resolve Neu and Jones exposure for state crimes. The federal criminal statute that applies to the conduct alleged in the Felony Complaint is 18 U.S.C. § 242, which provides: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States" shall face fines and imprisonment based upon the injury inflicted. The statute of limitations for that section is five years unless the conduct resulted in death. 18 U.S.C. § 3282. That leaves Neu and Jones subject to federal prosecution for the acts alleged in the Felony Complaint through March 2020.

Thus, not only is it unlikely that Neu and Jones will be better situated to go to trial in six months than they will be on December 3, it is virtually impossible. Judicial efficiency is not served by Defendants' repeated efforts to continue the case, and Hymes day in court should not be held hostage to such uncertainty.

### C. Defendants' Claims that They Would Benefit From Neu and Jones' Testimony is Overstated

Neu testified freely at deposition about the incidents that are the subject of Hymes' lawsuit. He claims he did not use force against Hymes, apart from lowering him to the ground in his cell which is not being challenged, and that he did not see any other Defendants' use force against Hymes. Although he declined to answer questions about prior and subsequent allegations of abuse against prisoners, he readily exculpated himself and the other Defendants in connection with Hymes' claims. Thus, the claims that any adverse inference against Neu for refusing to answer questions would spill over to the other Defendants, or that they would be deprived of the benefit of his testimony is without merit.

Jones did assert the Fifth Amendment at his deposition and refused to testify about the facts in this case. Given that the six other Defendants have exculpated themselves and their co-Defendants, it is the likelihood that the jury will assume guilt of the other Defendants from Jones' refusal to testify in minimal, particularly if the Court instructs the jury that any such assumption

would be improper. Defendants' claim that Jones' declination to testify about the Hymes beatings will prejudice them is based on their assumption that he would testify favorably for them, which may not be a safe assumption. Further, with six deputies exculpating each other, it is difficult to imagine that the lack of a seventh will prejudice them in any significant way.

### D. The Court Should Permit Hymes to Move Forward with His Case as Scheduled

"Plaintiffs in federal courts are given the privilege to expeditiously pursue their case." *Koulouris v. Builders Fence Co., Inc.*, 146 F.R.D. 193, 194 (W.D. Wash. 1991) (citing *Golden Quality Ice Cream Co. v. Deerfield Specialty*, 87 F.R.D. 53, 56 (E.D. Penn. 1980)). Hymes has an interest in the expeditious resolution of his civil claims, and he will suffer damage and hardship by the proposed continuance. *See CMAX*, 300 F.2d at 268 (discussing the first *Landis* factor, which considers "the possible damage which may result from the granting of a stay"). Plaintiff initiated this suit *pro se*, and is highly involved in matters of strategy. Plaintiff's is scheduled for state sentencing November 14, 2018, after which he is almost certain to be transferred to federal pretrial custody in Case No. 3:13-cr-00800-WHO. (*See* Katon Dec.)  If he is convicted and sentenced in that federal case, the U.S. Bureau of Prisons could place him anywhere in the country. This would make it impossible for him to participate in crucial matters of trial strategy in this case, and far more difficult and costly for him to meet with counsel. (Dkt. No. 52 at 4.) Again "if Defendants are convicted in their criminal cases and they appeal, this would delay the civil proceedings even further." (Dkt. No. 58 at 05:16-23.) The hardship from the proceedings on Defendants in this case is no greater than in any other litigation. To the extent two of the seven Defendants have concerns about testifying in Plaintiff's case while charges against them for unrelated incidents are pending, choosing to assert their Fifth Amendment rights is not a hardship that outweighs the hardship to plaintiff of near complete inability to participate in the case he initiated.

## IV.  CONCLUSION

For the foregoing reasons, there remains no good cause for a stay or a trial continuance and Defendants' motion should be denied.

Respectfully submitted,

/s/ Glenn Katon
Glenn Katon

/s/ Caitlin Kelly Henry
Caitlin Kelly Henry

ATTORNEYS FOR PLAINTIFF
SCANVINSKI JEROME HYMES