UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCANVINSKI JEROME HYMES,<br><br>    Plaintiff,<br><br>v.<br><br>MILTON BLISS, et al.,<br><br>    Defendants. | Case No. 16-cv-04288-JSC<br><br>**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; PLAINTIFF'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Re: Dkt. Nos. 82, 97 |

Plaintiff Scanvinski Jerome Hymes brings suit against five current or former San Francisco Deputy Sheriffs (collectively, "Defendants") for the use of excessive force on July 24, 2014 while he was incarcerated at the San Francisco County jail.[1] (Dkt. No. 43.)[2] Now pending before the Court are Defendants' motion for summary judgment, (Dkt. No. 82), and Plaintiff's administrative motion to file under seal portions of its opposition to summary judgment and a related exhibit, (Dkt. No. 97). After careful consideration of the parties' briefing, and having had the benefit of oral argument on November 9, 2018, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment, and DENIES Plaintiff's administrative motion to file under seal.[3]

**BACKGROUND**

**I.     The Parties**

Plaintiff is an inmate at the San Francisco County Jail, where he has been detained on

---

[1] Plaintiff's amended complaint brought suit against seven current or former Sheriff's deputies. (Dkt. No. 43.) By stipulation filed November 12, 2018, Plaintiff voluntarily dismissed all claims against Victor M. Sanchez and Joseph A. Leonardini. (Dkt. No. 118.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[3] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 1 at 4 & 21.)

felony criminal charges since July 21, 2014.

Defendants are current or former San Francisco Deputy Sheriffs who were working at the County Jail on July 24, 2014, the date of the incident at issue.

## II.     The Incident

The following facts are undisputed. On the morning of July 24, 2014, Plaintiff was yelling insults at deputies while inside his cell. Defendant Sergeant Milton Bliss approached Plaintiff's cell and pepper-sprayed him. Plaintiff used a bedsheet to shield himself from the spray. Sergeant Bliss then called for a Special Operations Response Team ("SORT") to remove Plaintiff from his cell and take him to the medical unit.

The SORT, which included the remaining Defendants, mobilized and stood outside of Plaintiff's cell. Sergeant Bliss ordered Plaintiff to "cuff up" and a non-party deputy applied handcuffs and leg restraints to Plaintiff through his cell port. Defendants did not issue any verbal commands to Plaintiff after he was handcuffed and shackled. Sergeant Bliss then directed the non-party deputy to open the cell door and directed the SORT to remove Plaintiff. Defendants Neu, Timpano, Jones, and Gray then entered Plaintiff's cell and took him to the ground. Plaintiff sustained facial injuries while in his cell. A little over a minute later, the four Defendants in the cell removed Plaintiff from his cell at the direction of Sergeant Bliss. Defendants then took Plaintiff to the medical unit. Plaintiff refused treatment, and medical unit personnel directed Defendants to take Plaintiff to San Francisco General Hospital to treat his injuries.

Certain Defendants took Plaintiff from the medical unit to an interview room where they left Plaintiff alone. Shortly thereafter, certain Defendants took Plaintiff to a processing room to change out his restraints and clothing for transfer to the hospital. While changing Plaintiff's restraints, a Defendant performed a leg sweep on Plaintiff and took him to the floor. Plaintiff was then taken to the hospital where he was examined and treated for injuries to his face and head. Plaintiff was returned to jail that afternoon.

## III.     Procedural History

On the day following the incident, July 25, 2014, Plaintiff submitted a Prisoner Grievance Form detailing his account of the incident. (Dkt. No. 1 at Exh. A.) Two years later, Plaintiff filed

his initial complaint under 42 U.S.C. § 1983 against Sergeant Bliss, Victor Sanchez, Joseph Leonardini, Scott Neu, Eugene Jones, Paul Timpano, and Pierre Gray. (Dkt. No. 1.)

Plaintiff subsequently filed an amended complaint, bringing the following causes of action: (i) violation of 42 U.S.C. § 1983 against Defendants Bliss, Neu, Jones, Timpano, and Gray for excessive use of force; and (ii) violation of 42 U.S.C. § 1983 against Defendants Bliss, Neu, Jones, Timpano, Gray, Leonardini, and Sanchez for failure to intervene. (Dkt. No. 43 at ¶¶ 27-32.) On November 12, 2018, Plaintiff voluntarily dismissed all claims against Defendants Leonardini and Sanchez. (Dkt. No. 118.)

Defendants filed the instant motion for summary judgment on September 21, 2018. (Dkt. No. 82.) Plaintiff's opposition, (Dkt. No. 96), and Defendants' reply, (Dkt. No. 106), followed.

## DISCUSSION

### I. Motion for Summary Judgment

#### A. Exhaustion of Administrative Remedies[4]

Defendants argue that they are entitled to summary judgment because Plaintiff has not exhausted his administrative remedies. On the record before it, the Court is not persuaded that "that there is no genuine dispute as to any material fact" and that Defendants are thus "entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549

---

[4] Defendants filed an administrative motion on November 6, 2018—three days before the hearing on Defendants' motion for summary judgment—seeking leave to file a declaration in support of their reply regarding the issue of exhaustion. (Dkt. No. 113.) The Court denies the motion as untimely; further, the proffered evidence would not change the Court's exhaustion analysis.

U.S. 199, 204 (2007)). In carrying its burden, the defendant must first "prove that there was an available administrative remedy." *Albino*, 747 F.3d at 1172. If the defendant does so, "the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* (internal citation omitted). "However, . . . the ultimate burden of proof remains with the defendant." *Id.* As with all other issues on summary judgment, the "court must view all of the facts in the record in the light most favorable to the non-moving party." *Id.* at 1173.

San Francisco Sheriff's Department policy requires prisoner grievances against staff to be forwarded "directly to the Facility Commander." (Dkt. Nos. 84 at ¶ 5; 84-1, Ex. A at 3.) "If the prisoner is not satisfied with the Facility Commander's response, the prisoner can appeal to the Custody Division Commander." (Dkt. No. 84 at ¶ 5.) The Custody Division Commander's decision "completes the appeals process and is final." (*Id.* at ¶ 6.) "If a prisoner does not receive a response to a grievance filed within thirty days, he/she shall assume his/her administrative remedies have been exhausted." (Dkt. No. 84-1, Ex. A at 3.)

Here, Plaintiff filed a formal grievance with the San Francisco County Jail on July 25, 2014, the day after the incident. (Dkt. No. 84-2, Ex. B at 2.)[5] The next day, "Supervisor Lt. Minor" responded in writing to Plaintiff. (Dkt. Nos. 84 at ¶ 7; 84-2, Ex. B at 2.) Lt. Minor's response states:

> I spoke to Mr. Hymes. He said he submitted this grievance to exhaust his local remedies. He feels the force was excessive, and wants to refer the issue to his Attorney. He also wants an I.A. investigation as well. I will refer to ISU.

(Dkt. No. 84-2 at 2.) Plaintiff signed the form that day and checked the box indicating that he was "Satisfied With Response."[6] (*Id.*) The form was then forwarded to the Facility Commander, and

---

[5] The grievance form submitted by Plaintiff, (*see* Dkt. No. 84-2, Ex. B), differs from the model forms attached to the declaration of Lt. John Caramucci, submitted in support of Defendants' motion for summary judgment, (*see* Dkt. No. 84-1, Ex. A at 6-7.) Unless otherwise noted, the Court's discussion of the "grievance form" concerns only the form submitted by Plaintiff.
[6] The form includes a box directly next to the one checked by Plaintiff, indicating "Prisoner Appeal." (Dkt. No. 84-2 at 2.)

4

on July 29, 2014, the Facility Commander responded to Plaintiff in writing with the following:

> As we discussed in my interview with you, this incident will be forwarded for review in terms of the level of Force used. You committed to me that you would be less antagonistic towards inmates and staff. In 30 days I will review all discipline issued . . . ."[7]

(*Id.*)  The Facility Commander checked a box indicating "Upheld Grievance Response."  (*Id.*) There was no box indicating that Plaintiff could appeal the Facility Commander's response, nor is there a signature from Plaintiff.  There is no evidence indicating that the Facility Commander responded to Plaintiff within 30 days or at any time thereafter regarding Plaintiff's grievance.[8] Plaintiff filed his complaint in federal court on July 28, 2016, nearly two years to the day after the Facility Commander's response.

On September 12, 2016, the Internal Affairs Unit sent Plaintiff a letter stating:

> This office received your complaint against members of the San Francisco Sheriff's Department regarding an incident that occurred on or about July 24, 2014 at CJ#4. Your complaint primarily alleged misconduct/use of force by staff members. An investigation was conducted and relevant information collected.
>
> The completed case was forwarded for administrative review. After a full review of the case, the allegation against the staff members was not sustained.

(Dkt. No. 85-1, Ex. A at 2.)

Defendants argue that because Plaintiff did not appeal the Facility Commander's response, but instead indicated on the form that he was "[s]atisfied," demonstrates that Plaintiff failed to exhaust all available administrative remedies.[9]  The Court is not persuaded.  Construing the

---

[7] The text of the Facility Commander's response continues but is cut off at the bottom of the form. (Dkt. No. 84-2 at 2.)
[8] Plaintiff testified that the Facility Commander "told [him] that she would review the matter and get back to [him] in 30 days," but Plaintiff did not "hear back from her or receive any further information about [his] grievance."  (Dkt. No. 96-1 at ¶ 26.)  Defendants offer no evidence indicating that the Facility Commander subsequently contacted Plaintiff—by written response or otherwise.
[9] Defendants further argue that Plaintiff failed to exhaust his administrative remedies because "other administrative relief was *potentially* available to [Plaintiff]," including transferring Plaintiff to another facility or transferring the deputies involved.  (Dkt. No. 84 at ¶ 8) (emphasis added.) This argument is unavailing, because none of those "potential" remedies are listed in the Department's grievance policy and procedure, (*see* Dkt. No. 84-1, Ex. A), nor are they indicated on the grievance form itself, (*see* Dkt. No. 84-2, Ex. B.).  *See Brown*, 422 F.3d at 940-41 (rejecting

evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether Plaintiff exhausted the administrative remedies available to him as outlined in the Department's grievance policy and procedure. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (noting that courts must draw "all reasonable inferences [and] resolve all factual conflicts in favor of the non-moving party.").

In support of their motion for summary judgment, Defendants submit the declaration of Lt. John Caramucci, who is responsible for overseeing the filing of, and reviewing the responses to prisoner complaints against staff. (Dkt. No. 84 at ¶ 3.) Lt. Caramucci characterizes the review conducted by Lt. Minor as a "first level of review," and acknowledges that "[f]ollowing this first level of review, [Plaintiff] checked 'Satisfied with Response' and signed the form." (*Id.* at ¶ 7.)

The grievance form supports Lt. Caramucci's characterization. However, the record indicates only that Plaintiff was "satisfied" with the preliminary review and response on July 26, 2018, as described by Lt. Minor on the grievance form (i.e., recognizing that Plaintiff wanted to exhaust his local remedies, and forwarding the complaint to Internal Affairs). In other words, Plaintiff did not wish to appeal Lt. Minor's *initial* response before the complaint was forwarded to the Facility Commander, as required for complaints against staff. The record does not similarly suggest that Plaintiff was "satisfied" with the Facility Commander's response; instead, the form indicates that the Facility Commander would have the incident reviewed for the level of force used, and "review all discipline issued" within 30 days; it is undisputed that Plaintiff did not receive a definitive response regarding his grievance until the September 2016 letter from the Internal Affairs Unit. The Department's grievance policy provides that "[i]f the prisoner is not satisfied with the Facility Commander's response, the prisoner can appeal to the Custody Division Commander." (Dkt. No. 84 at ¶ 5.) However, there was no space on Plaintiff's grievance form for him to do so. Further, Plaintiff *never* received a definitive response from the Facility Commander from which he could seek an appeal; instead, the Facility Commander stated that the "incident will

---

similar argument where the defendant failed to provide evidence that such remedies were in fact "available.").

be forwarded for review in terms of the level of force used." (Dkt. No. 84-2, Ex. B at 2.)

Plaintiff testified that "[n]o one told [him] about an appeals process for [his] grievance." (Dkt. No. 96-1 at ¶ 27.) And although the grievance form provides a box for "Prisoner Appeal" following the preliminary "Supervisor's Response," it does not provide a similar box to elect to appeal following the Facility Commander's response. Such evidence is relevant in determining whether an appeal was effectively available to Plaintiff. *See Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) ("[I]nformation provided the prisoner is pertinent [regarding exhaustion] because it informs our determination of whether relief was, as a practical matter, 'available.'") In light of this evidence, the Court cannot conclude as a matter of law that Plaintiff failed to exhaust the administrative remedies available to him. The Court must instead infer that Plaintiff attempted to exhaust his local remedies and did not receive a definitive response within the 30 days promised by the Facility Commander and mandated by Department policy, and thus, believed no other remedies were available.

Further, even if Defendants did satisfy their initial burden of demonstrating that there was an available administrative remedy, the record reflects that any such relief was unduly prolonged because Plaintiff filed suit nearly two years to the day after the Facility Commander's assurance that she would review the matter within 30 days. *See Brown*, 422 F.3d at 943 n.18 ("[F]ailure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable.") (internal quotation marks and citation omitted). Indeed, Department policy provides that "If a prisoner does not receive a response to a grievance filed within thirty days, he/she shall assume his/her administrative remedies have been exhausted." (Dkt. No. 84-1, Ex. A at 3.) Defendants' argument that Plaintiff failed to exhaust his administrative remedies because he filed suit before the Department notified him of the results of the Internal Affairs investigation is similarly unavailing. Citing *Brown v. Valoff*,[10] Defendants argue that because Plaintiff "did not wait to learn the results" of the investigation, the PLRA bars

---

[10] *Brown v. Valoff* involved two prisoner-plaintiffs—Brown and Hall. *See generally* 422 F.3d 926. Defendants cite only "to the portion of the opinion about Hall." (Dkt. No. 106 at 11 n.5.)

7

his claim. (Dkt. No. 82 at 18.) *Brown* is readily distinguishable, however, in that the pertinent plaintiff in that case, Hall, received a response memorandum on second-level review of his grievance stating, in pertinent part:

> [Y]our appeal is denied at the second level of review. If you are dissatisfied with this decision, you may complete section 'H' of your appeal and *forward it for further review by following the directions on the back of your appeal form.*

*Brown*, 422 F.3d at 933 (emphasis added). Thus, Hall was given express notice that further administrative review of his *appeal* was available. Hall did not seek further administrative review, but instead, filed a complaint in federal court. *Id.* Over a year later, the internal affairs "investigation ordered as a result of Hall's second level review was completed." *Id.* at 934. The district court determined that Hall met the exhaustion requirement because the internal affairs investigation provided the relief sought through his grievance. *Id.*

The Ninth Circuit reversed on two grounds. *Id.* at 940-41. First, the court concluded that "both a reasonable interpretation of the responses made to Hall and the Department's actual practices as reflected in the governing directives indicate that, as to certain aspects of Hall's grievance, some relief might have been available had he pursued his third level appeal." *Id.* at 942. Second, the court concluded that because "Hall did not await the completion of the staff misconduct investigation before filing his complaint in district court," defendants had "met their burden of demonstrating that Hall did not exhaust" his available administrative remedies. *Id.* at 943. Importantly, the *Brown* court had earlier concluded—in discussing the exhaustion inquiry related to plaintiff Brown—that an internal affairs investigation offered complete relief for staff complaints, citing the department's administrative bulletins and "second level response memorandum" sent to Brown; thus, "no further relief was 'available' other than the staff complaint investigation [by internal affairs] and (confidential) result." *Id.* 937-38.

Here, there is no such indication of the Internal Affairs investigation's import to the exhaustion inquiry in either the grievance policy or the responses given to Plaintiff on the grievance form. The policy itself does not discuss Internal Affairs' role in investigating staff complaints, and the "Grievance Routing Chart" instead indicates that complaints against staff are

8

assigned solely to the Facility Commander, and appealed solely to the Custody Division Chief. (Dkt. No. 84-1, Ex. A at 2-8.) Thus, even if Plaintiff had waited for the results of the Internal Affairs investigation, those results appear to have no bearing on the Facility Commander's determination regarding the complaint against staff, and under the Department's policy, only that determination can be appealed to the Custody Division Chief to "complete[ ] the appeals process." (Dkt. Nos. 84 at ¶¶ 5-6; 84-1, Ex. A at 8.) In other words, the Internal Affairs investigation did not provide the same administrative relief available through the formal grievance process. *See Panaro v. City of North Las Vegas*, 432 F.3d 949, 953 (9th Cir. 2005) (recognizing the distinction between a department's formal administrative grievance procedure and its internal affairs investigation for purposes of exhaustion, and holding that the latter "does not by itself satisfy the exhaustion requirement of the PLRA.").

Further, unlike in *Brown*, the responses given to Plaintiff by Lt. Minor and the Facility Commander do not give rise to a reasonable inference that an Internal Affairs investigation was a prerequisite to exhausting administrative remedies, or the only remedy available for staff complaints. Lt. Minor's response noted that Plaintiff "submitted [his] grievance to exhaust his local remedies[,]" and Plaintiff "*also* wants an [Internal Affairs] investigation as well." (Dkt. No. 84-2, Ex. B at 2 (emphasis added).) The Facility Commander's response does not mention the Internal Affairs investigation, but states only that the "incident will be forwarded for review in terms of the level of force used." (*Id.*)

Viewing the record in the light most favorable to Plaintiff, the administrative remedy available through the *grievance process* was, as a practical matter, unavailable to Plaintiff because he never received a definitive determination from the Facility Commander. Thus, the Court cannot conclude—as a matter of law—that Plaintiff failed to exhaust all available administrative remedies because he filed suit before receiving the results of the Internal Affairs investigation.

**B.     Disputes of Material Fact as to Excessive Force and Failure to Intervene**

To prove an excessive force claim under Section 1983, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 134 S. Ct. 2466, 2473 (2015). "A court must make this determination from the

9

1  perspective of a reasonable officer on the scene, including what the officer knew at the time, not
2  with the 20/20 vision of hindsight." *Id.* Because this standard is purely objective, "it does not
3  matter whether the defendant understood that the force used was excessive or intended it to be
4  excessive." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016). A non-exhaustive
5  list of considerations that may bear on the reasonableness of the force used includes "the
6  relationship between the need for the use of force and the amount of force used; the extent of the
7  plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the
8  severity of the security problem at issue; the threat reasonably perceived by the officer; and
9  whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

   Officers may also be held liable under Section 1983 when their fellow officers use excessive force if they have an "opportunity to intercede" but fail to do so. *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

   Defendants argue that they are entitled to summary judgment on the merits of Plaintiff's claims because: (1) Defendants used reasonable force at all times; (2) the Defendants who are not alleged to have used force against Plaintiff did not witness excessive force used by other Defendants and thus did not fail to intervene; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff alleges no physical injury arising from the pepper spray or processing room incidents and cannot thus claim emotional injury for same. Because Plaintiff's claims arise out of separate incidents involving different levels of alleged participation by individual Defendants, the Court addresses each incident in turn.

### 1. Pepper Spray

It is undisputed that Sergeant Bliss pepper sprayed Plaintiff twice on the morning of July 24, 2014, while Plaintiff was locked in his cell. It is further undisputed that Plaintiff did not suffer any injury as a result because he blocked the spray and it did not contact him. At the hearing on November 9, 2018, Plaintiff represented that he is not pursuing an excessive force claim related to the pepper spray incident. Accordingly, the Court grants summary judgment as to the pepper spray incident.

### 2. Cell Extraction

Plaintiff alleges that certain Defendants[11] punched him multiple times in the head and kicked him in the face during the cell extraction. Defendants deny punching or kicking Plaintiff, or witnessing any deputy doing so during the cell extraction.[12] It is undisputed that Plaintiff was handcuffed and in leg restraints prior to Defendants Neu, Timpano, Jones, and Gray entering his cell. It is also undisputed that Plaintiff sustained injuries to his head and face during the cell extraction.

Simply put, the video footage of the cell extraction is inconclusive, (*see* Dkt. No. 83-1, Ex. A), and thus in light of Plaintiff's testimony the Court cannot say as a matter of law that Defendants Neu, Timpano, Jones, and Gray—at the direction of the scene commander, Sergeant Bliss—did not use excessive force in taking Plaintiff to the ground and removing him from his cell. A reasonable trier-of-fact could find that *any* use of force in taking Plaintiff to the ground was excessive given the circumstances (i.e., Plaintiff was handcuffed, in leg restraints, had his back to the cell door, and Defendants did not issue any verbal commands to him prior to the cell extraction). *See Lolli v. Cty. of Orange*, 351 F.3d 410, 417 (9th Cir. 2003) ("[W]here there is no need for force, *any* force used is constitutionally unreasonable.") (internal quotation marks and citation omitted). Although Plaintiff testified that he is not certain who hit or kicked him, such identification is not required to survive summary judgment where the record contains "sufficient evidence from which a jury could infer that the individual officers who had physical contact with [Plaintiff] participated in the alleged beating." *Id.* Here, the video footage, deposition testimony, and contemporaneous incident report, (Dkt. No. 83-9, Ex. I at 2), give rise to a reasonable inference that Defendants Neu, Timpano, Jones, and Gray "were involved in the altercation and that they exerted some physical force on [Plaintiff] to create the necessary inference that the deputies were integral participants in the alleged unlawful act." *See id.* (internal quotation marks and citation omitted).

---

[11] Plaintiff testified that Defendants Gray, Jones, Neu, and Timpano entered his cell to conduct the extraction. (Dkt. No. 96-3, Ex. 1 at 28:14-20.)

[12] During his deposition, Defendant Jones invoked his Fifth Amendment right against self-incrimination in response to questioning regarding the cell extraction and Sheriff's Department policies. (Dkt. No. 96-11, Ex. 9 at 12:8-29:22, 44:5-45:24, 46:13-48:6.)

Plaintiff does not allege that Sergeant Bliss personally used excessive force during the cell extraction, and the video footage shows that he was not physically involved. However, "[a] supervisor may be held liable under § 1983 if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli*, 351 at 418. There is no dispute that Sergeant Bliss was the scene commander and gave the direction to the SORT to enter Plaintiff's cell and remove him. Thus, Sergeant Bliss's order to enter the cell "is sufficient involvement in the alleged unconstitutional violation such that summary judgment in his favor [is] inappropriate." *Id.*

As for the failure to intervene claim against all Defendants, the video footage indicates that *all* Defendants were present and in the immediate vicinity of the cell during the incident. The video shows that Plaintiff complied with Sergeant Bliss's orders to "cuff up," and was placed in handcuffs and leg restraints while still locked in his cell. And although Plaintiff was yelling prior to SORT entering his cell, the video shows that he was standing still with his back to the cell door when they entered. Whether or not all Defendants could see precisely what transpired inside the cell *after* the four deputies entered and took Plaintiff to the ground, all Defendants were either inside the cell or directly in front of it, all Defendants knew that Plaintiff was in handcuffs and restraints prior to the cell extraction, all Defendants were aware that Plaintiff was taken to the ground, and all Defendants could hear the struggle that ensued. Thus, if in fact the force used was excessive, a reasonable trier-of-fact could find that all Defendants had an opportunity to intervene but failed to do so. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

Defendants' citation to *Stribling v. Picazo*, No. 15-cv-03337-YGR (PR), 2017 WL 956657 (N.D. Cal. Mar. 13, 2017) is unavailing. In *Stribling*, the prisoner-plaintiff brought excessive force claims against 11 correctional officers arising from a cell extraction, including the officer who "worked as a control booth operator" for the plaintiff's housing unit. 2017 WL 956657, at *10. The plaintiff alleged that the officer could have "prevented [the] whole incident . . . by not allowing [d]efendants into his cell," and was thus "liable because [the officer] had a realistic opportunity to intervene and prevent or curtail the violation but failed to do so." *Id.* The evidence

12

showed that the officer's only involvement in the incident was opening the plaintiff's cell door *from inside the control booth* at the direction of another officer. *Id.* (emphasis added). The control booth officer testified that he "could not see anything past [the] point" of the other officers entering the cell. The court concluded that summary judgment was warranted because "the evidence presented [did] not create a dispute of fact as to whether [the control booth officer] knew or had a reason to know that [the plaintiff's] constitutional rights were being violated or show that he had an opportunity to intercede." *Id.* (citing *Cunningham*, 229 F.3d at 1289).

Here, all Defendants were in the immediate vicinity of Plaintiff's cell and mere feet from the cell door. Thus, the physical separation present in *Stribling* is not at issue, and given Defendants' close proximity a reasonable trier of fact could infer that all Defendants were percipient witnesses who had an opportunity to intercede.

Defendants' argument regarding qualified immunity as to the cell extraction also fails to persuade because it is based on Defendants' version of events. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (noting that defendants are entitled to qualified immunity "only if the facts alleged and the evidence submitted, resolved in [*the plaintiff's*] favor and viewed in the light most favorable to him, show that their conduct did not violate a federal right; or if it did, the scope of that right was not clearly established at the time.") (emphasis added). Because Defendants' version of events conflicts with Plaintiff's testimony, and the Court must view the evidence in the light most favorable to Plaintiff, the Court cannot conclude that Defendants are entitled to qualified immunity.

Accordingly, the Court denies summary judgment as to the excessive force and failure to intervene claims related to the cell extraction.

### 3. Processing Room

As for the processing room incident, the Court likewise cannot conclude as a matter of law—based on the record before it—that certain Defendants did not use excessive force before taking Plaintiff to the ground while attempting to change out his restraints. Plaintiff testified that

unknown Defendants[13] used excessive force by leaning him over a table and punching him and kicking him in the "rib [and] abdomen area" while he was restrained and before taking him to the ground, and that other Defendants witnessed the use of excessive force. (Dkt. No. 96-3 at 26-27.) Plaintiff does not allege that Defendants used excessive force after he was on the ground. Defendants Bliss, Neu, and Timpano—who testified to being present in the processing room before Plaintiff was taken to the ground—insist that they did not punch or kick Plaintiff before taking him to the ground, nor did they witness any Defendant doing so. In the absence of other evidence, the conflicting testimony creates a genuine dispute of material fact that must be resolved at trial.

Defendants argue that Defendants Neu and Timpano are entitled to qualified immunity for the force used in the processing room. Again, however, Defendants invoke qualified immunity based on their version of events; specifically, that before being taken to the ground "Plaintiff was [unhandcuffed], on his feet, and trying to break free." (Dkt. No. 30.) Defendants' characterization conflicts with Plaintiff's testimony:

> Q: Before you were bent over the table, had the deputies stared to change your restraints?
>
> A: No.
>
> Q: When you were leaning over the table, were the deputies changing your restraints?
>
> A: No.
>
> Q: So it's your testimony that you were punched leaning over the table before deputies changed your restraints?
>
> A: Yes.

---

[13] Plaintiff testified that he "believes" Defendants Bliss, Jones, Neu, and Timpano were present during the alleged incident in the processing room. (Dkt. No. 83-2 at 38:11-14.) Plaintiff further testified that he does not know who punched or kicked him. (*Id.* at 35:2-19.) The testimony of Defendants Bliss, Neu, and Timpano indicates that they were present in the processing room during the alleged incident. Sergeant Bliss testified that he and "three or four deputies escorted [Plaintiff] in[to the processing room]." (Dkt. No. 12:4-9.) Sergeant Bliss's incident report, filed the day of the incident, states that "Deputies Timpano, Neu, Gray, Sergeant Sanchez and I escorted Hymes into the processing room." (Dkt. No. 83-9 at 3.) Defendants contend that Defendants Gray and Jones were not present in the processing room at any time.

> Q: When the deputies were changing your restraints, did you resist them in any way?
>
> A: No.
>
> Q: Did you try to break free?
>
> A: No.

(Dkt. No. 96-3 at 24:6-20.) Plaintiff further testified that his restraints were changed "after the punches on the table," and after being taken to the ground. (Dkt. No. 83-2 at 30:6-25, 32:14-16, 33:19-24.) Construing the conflicting testimony in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that Defendants Neu and Timpano are entitled to qualified immunity.

The Court concludes, however, that summary judgment is warranted regarding the excessive force and failure to intervene claims against Deputy Gray related to the processing room incident. Plaintiff does not allege that Deputy Gray was present, and Deputy Gray testified that he did not witness the alleged incident. Deputy Gray testified that he was instead in front of the deputies escorting Plaintiff to the processing room and that he entered the room first and walked directly out of the room without stopping to get to "the front office." (Dkt. No. 83-10 at 16-18.) Thus, because there is no evidence that Deputy Gray was in the processing room at the time of the alleged excessive force, there is no evidence that he had an "opportunity to intercede." *See Cunningham*, 229 F.3d at 1289-90 ("[O]fficers can be held liable for failing to intercede *only* if they had an opportunity to intercede.") (emphasis added).

Defendants argue that summary judgment should also be granted to Deputy Jones for all claims related to the processing room incident. The Court disagrees.

Plaintiff testified that Deputy Jones "[m]ay have been" present, but Plaintiff was "not sure." (Dkt. No. 83-2 at 38:13-16.) Deputy Jones exercised his Fifth Amendment rights and did not answer questions related to the processing room. (*See* Dkt. No. 96-11 at 44:5-15.) None of the Defendants who were present in the processing room at some point—Bliss, Neu, and Timpano—testified that Deputy Jones was present, however, none of those Defendants were specifically questioned on that score. And although Sergeant Bliss's incident report does not list

15

Deputy Jones as one of the escorting deputies, the incident report is classic hearsay and taken alone is insufficient to prove a fact. *See, e.g., Cannon v. United States,* No. 15-CV-2582-CAB-BLM, 2017 WL 4792428, at *9 (S.D. Cal. Oct. 24, 2017).

Accordingly, as to the claims regarding the processing room incident, the Court grants summary judgment for Deputy Gray. The Court denies summary judgment as to the claims against Defendants Bliss, Jones, Neu, and Timpano.

***

As with the exhaustion inquiry, Defendants have not met their burden at summary judgment of demonstrating "that there is no genuine dispute as to any material fact" regarding the merits of Plaintiff's claims, and that they are thus "entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). It is not the Court's function at summary judgment to "weigh the evidence and determine the truth of the matter"; instead, the Court must "determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks and citation omitted). Drawing all inferences in Plaintiff's favor, there are genuine disputes of material fact regarding the force used by certain Defendants during both the cell extraction and the processing room incident. It follows that there is a genuine dispute of material fact as to the failure to intervene claim related to both incidents, because that claim is premised on Defendants witnessing an excessive use of force.

### 4. **Emotional Injury from Pepper Spray and Processing Room Incidents**

Under the PLRA, a plaintiff must demonstrate "more than *de minimis* physical injury in order to recover compensatory damages for mental or emotional injury." *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002). Defendants argue that to the extent Plaintiff claims emotional injury stemming from the pepper spray or processing room incidents, that claim fails because Plaintiff denies physical injuries related to those incidents. At the hearing on November 9, 2018, Plaintiff withdrew any claim of emotional injury related to the pepper spray and processing room incidents. Accordingly, the Court grants summary judgment as to emotional injury related to those incidents.

**II.     Administrative Motion to File Under Seal**

Plaintiff seeks to file under seal portions of its opposition to summary judgment that reference San Francisco Sheriff's Department policies and procedures regarding SORT cell extractions taken from the Custody Operations Division's policy manual, (*see* Dkt. No. 96 at 14), and the policy chapter itself ("SORT Policy"), (*see* Dkt. No. 96-6, Ex. 4).  Plaintiff brings its motion pursuant to Civil Local Rule 79-5(e), citing the parties' amended stipulated protective order, (Dkt. No. 95), and Defendants' designation of the material as "Highly Confidential" and "Attorneys Eyes Only."  (Dkt. No. 97 at 1-2.)  Plaintiff states that he "does not see the necessity of keeping the [SORT Policy] confidential but has submitted Exhibit 4 under seal and redacted portions of the opposition brief that refer to the substance of the policy in order to comply with the protective order."  (*Id.* at 2.)

Local Rule 79-5(e) provides that if, as here, "the Submitting Party is seeking to file under seal a document designated as confidential by the opposing party or a non-party pursuant to a protective order," the Designating Party (here, Defendants) must file within four days of the Submitting Party's motion "a declaration as required by subsection 79-5(d)(1)(A) establishing that all of the designated material is sealable." N.D. Cal. Civ. L.R. 79-5(e)(1).  Defendants did not file a declaration in response to Plaintiff's motion to seal establishing that the materials are sealable, as required by Local Rule 79–5(e)(1).

Pursuant to Local Rule 79-5(e)(2):

> If the Designating Party does not file a responsive declaration as required by subsection 79-5(e)(1) and the Administrative Motion to File Under Seal is denied, the Submitting Party may file the document in the public record no earlier than 4 days, and no later than 10 days, after the motion is denied. A Judge may delay the public docketing of the document upon a showing of good cause.

The stated purpose of the SORT Policy is "[t]o provide direction to deputies and supervisors in all phases of a cell extraction and in the execution of the Special Operations Response Team (S.O.R.T.) team during the movement of a hostile, disruptive or combative inmate." (Dkt. No. 96-6, Ex. 4.)  Given that the material deals with the specific tactics employed by SORT in conducting cell extractions, including "preliminary preparations" and planning and

17

executing the extraction, the Court concludes that delaying the public docketing is warranted.

Defendants shall file a declaration within 10 days of this Order that fully complies with Civil Local Rule 79-5(d)(1)(A) and establishes that the designated material is sealable.

//

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. The Court GRANTS summary judgment in favor of Defendants regarding the following:

1. Any claim of excessive force related to the pepper spray incident.
2. The excessive force and failure to intervene claims against Defendant Gray related to the processing room incident.
3. Claim for emotional injury arising from the pepper spray and processing room incidents.

The Court DENIES summary judgment as to all other claims. Further, the Court DENIES Plaintiff's administrative motion to seal.

This Order disposes of Docket Nos. 82 & 97.

**IT IS SO ORDERED.**

Dated: November 13, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge