DENNIS J. HERRERA, State Bar #139669
City Attorney
CHERYL ADAMS, State Bar #164194
Chief Trial Deputy
RENÉE E. ROSENBLIT, State Bar #304983
BRIGGS MATHESON, State Bar #291287
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3853 [Rosenblit]
Telephone:     (415) 553-3919 [Matheson]
Facsimile:     (415) 554-3837
Email:         renee.rosenblit@sfcityatty.org
Email:         briggs.matheson@sfcityatty.org

Attorneys for Defendants
MILTON BLISS, et al.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCANVINSKI JEROME HYMES,<br><br>Plaintiff,<br><br>vs.<br><br>MILTON BLISS, et al.<br><br>Defendants. | Case No. 16-cv-04288-JSC<br><br>**DECLARATION OF RENÉE E. ROSENBLIT IN SUPPORT OF DEFENDANTS' MOTIONS IN LIMINE NOS. 1-8**<br><br>Hearing Date:   November 20, 2018<br>Time:           1:00 p.m.<br>Place:          450 Golden Gate Avenue<br>                Courtroom F, 15th Floor<br>                San Francisco, CA 94102<br><br>Trial Date:     December 3, 2018 |

I, Renée E. Rosenblit, declare as follows:

1.      I am a Deputy City Attorney in the San Francisco City Attorney's Office and counsel for defendants in this matter. As such, I am familiar with this litigation and make this declaration of my own personal knowledge, and if called upon, could testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the Criminal Complaint in this matter, in support of Defendants' Motion in Limine No. 4.

3.      Attached as Exhibit B is a true and correct copy of the transcript of the cited portions of the deposition of Eugene Jones, in support of Defendants' Motion in Limine No. 5.

4.      Attached as Exhibit C is a true and correct copy of a transcript of the cited portions of the deposition of Scott Neu, in support of Defendants' Motion in Limine Nos. 5 and 6.

5.      Attached as Exhibit D is a true and correct copy of the video of the cell extraction on July 24, 2014, in support of Defendants' Motion in Limine No. 5.

6.      Attached as Exhibit E is a true and correct copy of a transcript of the cited portions of the deposition of Pierre Gray, in support of Defendants' Motion in Limine No. 5.

7.      Attached as Exhibit F is a true and correct copy of a transcript of the cited portions of the deposition of Paul Timpano, in support of Defendants' Motion in Limine No. 5.

8.      Attached as Exhibit G is a true and correct copy of a transcript of the cited portions of the deposition of Plaintiff Scanvinski Hymes, in support of Defendants' Motion in Limine Nos. 5 and 6.

9.      Attached as Exhibit H is a true and correct copy of the Sheriff's Dept. termination letter regarding Scott Neu, dated July 23, 2015, in support of Defendants' Motion in Limine No. 3.

10.      Attached as Exhibit I is a true and correct copy of the San Francisco Sheriff's Department policy entitled "S.O.R.T. – Cell Extraction," in support of Defendants' Motion in Limine No. 7.

11.      On October 22, 2018, the parties' respective counsel met and conferred via telephone to discuss motions in limine and potential stipulated issues. Plaintiff's counsel tentatively agreed to stipulate to exclude evidence and argument that any of the defendants were motivated by racial bias or animus toward plaintiff on July 24, 2014. On October 25, 2018, defense counsel emailed plaintiff's counsel to confirm their tentative agreement to exclude evidence or argument concerning racial bias. On October 29, 2018, defense counsel sent a follow up email requesting confirmation.

12.      On October 29, 2018, one week after the initial meet and confer telephone conference, plaintiff's counsel responded by email that he did not agree to the proposed stipulation to exclude evidence of racial bias. Later the same day, counsel for the parties spoke by telephone. Plaintiff's counsel informed defense counsel that he believes he has a good faith argument in favor of presenting

1  evidence of the defendants' alleged racial bias in this case.  However, plaintiff's counsel declined to

2  elaborate and did not identify any specific evidence that he intends to introduce at trial on the issue.

3       I declare under penalty of perjury under the laws of the State of California and the United

4  States of America that the foregoing is true and correct.

5       Executed this 31st day of October 2018, at San Francisco, California.

6

7                     */s/ Renee E. Rosenblit*

                    RENÉE E. ROSENBLIT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, ANNAMARIE DAVIS, declare as follows:

I am a citizen of the United States, over the age of eighteen years and not a party to the above-entitled action. I am employed at the City Attorney's Office of San Francisco, Fox Plaza Building, 1390 Market Street, Sixth Floor, San Francisco, CA 94102.

On October 31, 2018, I served the following document(s):

**DECLARATION OF RENÉE E. ROSENBLIT IN SUPPORT OF DEFENDANTS'
MOTIONS IN LIMINE NOS. 1-8**

on the following persons at the locations specified:

| | |
|---|---|
| Glenn Katon, Esq. | Caitlin Kelly Henry, Esq. |
| Katon Law | Attorney at Law |
| 385 Grand Avenue, Suite 200 | 1201 Martin Luther King Jr. Way, Suite 200 |
| Oakland, CA 94610 | Oakland, CA 94612 |
| _gkaton@katon.law_ | _ckh@caitlinkellyhenry.com_ |
| | |
| Attorney for Plaintiff | Attorney for Plaintiff |
| | |
| (510) 463-3350 (Telephone) | (510) 277-2025 (Telephone) |
| (510) 463-3349 (Facsimile) | |

in the manner indicated below:

☒ **BY UNITED STATES MAIL**: Following ordinary business practices, I sealed true and correct copies of the above documents in addressed envelope(s) and placed them at my workplace for collection and mailing with the United States Postal Service. I am readily familiar with the practices of the San Francisco City Attorney's Office for collecting and processing mail. In the ordinary course of business, the sealed envelope(s) that I placed for collection would be deposited, postage prepaid, with the United States Postal Service that same day.

☒ **BY ELECTRONIC MAIL:** Based on a court order or an agreement of the parties to accept electronic service, I caused the documents to be sent to the person(s) at the electronic service address(es) listed above. Such document(s) were transmitted _via_ electronic mail from the electronic address: annamarie.davis@sfcityatty.org in portable document format ("PDF") Adobe Acrobat.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct.

Executed October 31, 2018, at San Francisco, California.

_/s/ Annamarie Davis_
ANNAMARIE DAVIS

# Exhibit A



GEORGE GASCÓN, SBN 182345
District Attorney
KELLY S. BURKE, SBN 251895
Assistant District Attorney
San Francisco District Attorney's Office
White Collar Crimes Division
732 Brannan Street
Telephone: (415) 551-9523
Facsimile: (415) 551-9504

ATTORNEYS FOR THE PEOPLE


THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
CITY AND COUNTY OF SAN FRANCISCO


| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br>v.<br><br>CLIFFORD T CHIBA,<br>EUGENE A JONES,<br>SCOTT R NEU,<br><br>Defendant(s). | FELONY COMPLAINT<br>ARREST WARRANT<br><br>COURT NUMBER:<br><br><br>VIOLATIONS:<br>**149** Penal Code/Felony (4 counts)<br>**422** Penal Code/Felony (4 counts)<br>**147** Penal Code/Misd. (4 counts)<br>**673** Penal Code/Misd. (9 counts)<br>**1222** Gov't Code/Misd. (2 counts)<br><br>SPECIAL ALLEGATIONS:<br>**147** Penal Code<br>**661** Penal Code<br>**1202.4(a)** Penal Code |

SAN FRANCISCO DISTRICT ATTORNEY SENIOR INVESTIGATOR MIKE KLOSS,
being sworn says, on information and belief, that:

1

COUNT: 1

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March, 2015, commit the crime of ASSAULT BY OFFICER UNDER COLOR OF AUTHORITY, to wit: Violating Section **149** of the Penal Code, a Felony, in that the said defendant, being then and there a Deputy Sheriff with the San Francisco Sheriff's Department, directed under color of authority the assault and beating of RICARDO PALAKIKO-GARCIA.

COUNT: 2

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March, 2015, commit the crime of ASSAULT BY OFFICER UNDER COLOR OF AUTHORITY, to wit: Violating Section **149** of the Penal Code, a Felony, in that the said defendant, being then and there a Deputy Sheriff with the San Francisco Sheriff's Department, directed under color of authority the assault and beating of STANLEY HARRIS.

COUNT: 3

The said defendants, EUGENE A JONES and SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of ASSAULT BY OFFICER UNDER COLOR OF AUTHORITY, to wit: Violating Section **149** of the Penal Code, a Felony, in that the said defendants, being then and there Deputy Sheriffs with the San Francisco Sheriff's Department, directed under color of authority the assault and beating of RICARDO PALAKIKO-GARCIA.

COUNT: 4

The said defendants, EUGENE A JONES and SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of ASSAULT BY OFFICER UNDER COLOR OF AUTHORITY, to wit: Violating Section **149** of the Penal Code, a Felony, in that the said defendants, being then and there Deputy Sheriffs with the San Francisco Sheriff's Department, directed under color of authority the assault and beating of STANLEY HARRIS.

COUNT: 5

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March, 2015, commit the crime of CRIMINAL THREATS, to wit: Violating Section **422** of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully threaten to commit a crime which would result in great bodily injury to another person, to wit: RICARDO PALAKIKO-GARCIA, made so unequivocally, unconditionally, immediately, and specifically as to convey to the person threatened a gravity of purpose and an immediate prospect of execution.

2

### COUNT: 6

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March, 2015, commit the crime of CRIMINAL THREATS, to wit: Violating Section 422 of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully threaten to commit a crime which would result in great bodily injury to another person, to wit: STANLEY HARRIS, made so unequivocally, unconditionally, immediately, and specifically as to convey to the person threatened a gravity of purpose and an immediate prospect of execution.

### COUNT: 7

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of CRIMINAL THREATS, to wit: Violating Section 422 of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully threaten to commit a crime which would result in great bodily injury to another person, to wit: RICARDO PALAKIKO-GARCIA, made so unequivocally, unconditionally, immediately and specifically as to convey to the person threatened a gravity of purpose and an immediate prospect of execution.

### COUNT: 8

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of CRIMINAL THREATS, to wit: Violating Section 422 of the Penal Code, a Felony, in that the said defendant did willfully and unlawfully threaten to commit a crime which would result in great bodily injury to another person, to wit: STANLEY HARRIS, made so unequivocally, unconditionally, immediately and specifically as to convey to the person threatened a gravity of purpose and an immediate prospect of execution.

### COUNT: 9

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about and between the 16th day of January 2015, through the 25th day of March 2015, both dates inclusive, commit the crime of INHUMANITY TO PRISONER, to wit: Violating Section 147 of the Penal Code, a Misdemeanor, in that the said defendant committed willful inhumanity and oppression toward a prisoner under his care and in his custody, to wit: withholding food and clothing from RICARDO PALAKIKO-GARCIA.

COUNT: 10

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about and between the 3rd day of October 2014 through the 25th day of March 2015, both dates inclusive, commit the crime of INHUMANITY TO PRISONER, to wit: Violating Section **147** of the Penal Code, a Misdemeanor, in that the said defendant committed willful inhumanity and oppression toward a prisoner under his care and in his custody, to wit: withholding  food, clothing, and bedding from STANLEY HARRIS.

COUNT: 11

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about and between the 3rd day of October 2014 through the 25th day of March 2015, both dates inclusive, commit the crime of INHUMANITY TO PRISONER, to wit: Violating Section **147** of the Penal Code, a Misdemeanor, in that the said defendant committed willful inhumanity and oppression toward a prisoner under his care and in his custody, to wit: ordering STANLEY HARRIS to do push-ups and dips against his will.

COUNT: 12

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about and between the 6th day of January 2015 through the 25th day of March 2015, both dates inclusive, commit the crime of INHUMANITY TO PRISONER, to wit: Violating Section **147** of the Penal Code, a Misdemeanor, in that the said defendant committed willful inhumanity and oppression toward a prisoner under his care and in his custody, to wit: withholding food, clothing, and bedding from NICHOLAS TILLER.

COUNT: 13

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March, 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing RICARDO PALAKIKO-GARCIA to engage in a physical fight with another inmate.

COUNT: 14

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 5th day of March 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing STANLEY HARRIS to engage in a physical fight with another inmate.

COUNT: 15

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing RICARDO PALAKIKO-GARCIA to engage in a physical fight with another inmate.

COUNT: 16

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about the 6th day of March, 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing STANLEY HARRIS to engage in a physical fight with another inmate.

COUNT: 17

The said defendant, SCOTT R NEU, did in the City and County of San Francisco, State of California, on or about and between the 3rd day of October 2014 through the 25th day of March 2015, both dates inclusive, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: ordering STANLEY HARRIS to do push-ups and dips against his will.

COUNT: 18

The said defendant, CLIFFORD T CHIBA, did in the City and County of San Francisco, State of California, on or about the 5th day of March 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: failing to stop the physical fight that RICARDO PALAKIKO-GARCIA was forced to participate in by another deputy.

COUNT: 19

The said defendant, CLIFFORD T CHIBA, did in the City and County of San Francisco, State of California, on or about the 5th day of March 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: failing to stop the physical fight that STANLEY HARRIS was forced to participate in by another deputy.

COUNT: 20

The said defendant, EUGENE A JONES, did in the City and County of San Francisco, State of California, on or about the 6th day of March 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing RICARDO PALAKIKO-GARCIA to engage in a physical fight with another inmate.

COUNT: 21

The said defendant, EUGENE A JONES, did in the City and County of San Francisco, State of California, on or about the 6th day of March 2015, commit the crime of CRUEL AND UNUSUAL PUNISHMENT OF PRISONER, to wit: Violating Section **673** of the Penal Code, a Misdemeanor, in that the said defendant used in the San Francisco County Jail cruel, corporal, and unusual punishment, and inflicted treatment and allowed a lack of care which would injure and impair the health of a prisoner, inmate, and person confined, to wit: forcing STANLEY HARRIS to engage in a physical fight with another inmate.

COUNT: 22

The said defendant, CLIFFORD T CHIBA, did in the City and County of San Francisco, State of California, on or about the 5th day of March 2015, commit the crime of WILLFUL OMISSION TO PERFORM OFFICIAL DUTY, to wit: Violating Section **1222** of the Government Code, a Misdemeanor, in that the said defendant willfully omitted to perform a duty enjoined by law upon a public officer, to wit: Deputy Sheriff with the San Francisco Sheriff's Department.

COUNT: 23

The said defendant, EUGENE A JONES, did in the City and County of San Francisco, State of California, on or about the 6th day of March 2015, commit the crime of WILLFUL OMISSION TO PERFORM OFFICIAL DUTY, to wit: Violating Section **1222** of the Government Code, a Misdemeanor, in that the said defendant willfully omitted to perform a duty enjoined by law upon a public officer, to wit: Deputy Sheriff with the San Francisco Sheriff's Department.

## ALLEGATIONS REGARDING REMOVAL FROM OFFICE:

It is further alleged that if any defendant is convicted of a violation of Penal Code section 147, the court shall remove him from office.

It is further alleged that if any defendant is convicted of a violation of Penal Code section 149, which constitutes the neglect and violation of official duty on the part of a public officer, the court may remove him from office pursuant to Penal Code section 661.

It is further alleged that if any defendant is convicted of a violation of Penal Code section 673, which constitutes the neglect and violation of official duty on the part of a public officer, the court may remove him from office pursuant to Penal Code section 661.

It is further alleged that if any defendant is convicted of a violation of Government Code section 1222, which constitutes the neglect and violation of official duty on the part of a public officer, the court may remove him from office pursuant to Penal Code section 661.

## ALLEGATION PURSUANT TO PENAL CODE SECTION 1202.4(a)

It is further alleged that if any defendant is convicted of any of the above offenses, the court may order the defendant to pay restitution to the victim(s) of the offense(s), and to the Restitution Fund, pursuant to Penal Code Section 1202.4(a).

AFFIDAVIT OR DECLARATION ATTACHED HERETO AND INCORPORATED HEREIN SETS FORTH THE UNDERLYING FACTS ESTABLISHING PROBABLE CAUSE FOR THE ARREST OF EACH DEFENDANT NAMED IN THIS COMPLAINT.

I state, declare, verify and certify under the penalty of perjury that the foregoing is true and correct.  Executed in San Francisco, California on February 22, 2016.

_____
Senior Investigator Mike Kloss, Star # 7007

Pursuant to Penal Code sections 1054 through 1054.7, the People request that, within fifteen (15) days, each defendant and/or his attorney disclose: (A) the names and addresses of persons, other than the defendant, he intends to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements, of those persons including any reports or statements of experts made in connection with the case, and including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the defendant intends to offer in evidence at the trial; (B) any real evidence which the defendant intends to offer in evidence at the trial.  This request is a continuing request, to cover not only all such material currently in existence, but all material which comes into existence to the conclusion of this case.

## MARSY'S LAW

Information contained in the reports being distributed as discovery in this case may contain confidential information protected by Marsy's Law and the amendments to the California Constitution Section 28. Any victim(s) in any above referenced charge(s) is entitled to be free from intimidation, harassment, and abuse. It is unlawful for defendant(s), defense counsel, and any other person acting on behalf of the defendant(s) to use any information contained in the reports to locate or harass any victim(s) or the victim(s)'s family or to disclose any information that is otherwise privileged and confidential by law. Additionally, it is a misdemeanor violation of California Penal Code § 1054.2(a)(3) to disclose the address and telephone number of a victim or witness to a defendant, defendant's family member or anyone else. Note exceptions in California Penal Code § 1054.2(a)(2).

Exhibit B

# In The Matter Of:

*HYMES VS.*
*BLISS*

---

*EUGENE JONES*
*August 8, 2018*

---

*CLARK REPORTING & VIDEO CONFERENCING*
*2140 SHATTUCK AVE. STE. 407*
*BERKELEY, CA  94704*
*WWW.CLARKDEPOS.COM*

Original File JONES.txt
Min-U-Script® with Word Index

**CLARK REPORTING & VIDEO CONFERENCING**

1

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                SAN FRANCISCO DIVISION

 4   SCANVINSKI JEROME HYMES,      )
                                   )
 5              Plaintiff,         )
                                   )
 6          v.                     )  No. 3:16-cv-04288-JSC
                                   )
 7   MILTON BLISS, VICTOR M.       )
     SANCHEZ, JOSEPH A.            )
 8   LEONARDINI, SCOTT NEU,        )
     EUGENE A. JONES,              )
 9   PAUL TIMPANO, PIERRE A.       )
     GRAY,                         )
10                                 )
                Defendants.        )
11   _____)
```

12

13

14

15

16

17                DEPOSITION OF EUGENE JONES

18               Wednesday, August 8, 2018

19

20         CLARK REPORTING & VIDEO CONFERENCING

21              2140 SHATTUCK AVE. STE. 407

22                 BERKELEY, CA  94704

23                    510.486.0700

24   Reported by:

25   SHELLI G. ENG, C.S.R. No. 11397

**CLARK REPORTING & VIDEO CONFERENCING**

2

1                         I N D E X

2     Examination by:                              Page

3       MR. KATON . . . . . . . . . . . . . . . . . . . 7

4

5                         ---oOo---

6

7

8

9               I N D E X   O F   E X H I B I T S

10    Exhibit                                       Page

11    1        Policy and procedure documents; 4 pages . . . . 18

12    2        Policy and procedure documents; 4 pages . . . . 19

13    3        Policy and procedure documents; 3 pages . . . . 20

14                        ---oOo---

15

16

17

18

19

20

21

22

23

24

25

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

3

1                         APPEARANCES

2

3

4    For the Plaintiff:

5                        KATON LAW
                   BY:  GLENN KATON, ESQUIRE
6                 385 Grand Avenue, Suite 200
                   Oakland, California 94610
7                   Phone: (510) 463-3350
                     Fax: (510) 463-3349
8                      gkaton@katon.law

9

10          LAW OFFICE OF CAITLIN KELLY HENRY
             BY:  CAITLIN KELLY HENRY, ESQUIRE
11      1201 Martin Luther King Jr. Way, Suite 200
                   Oakland, California 94612
12                 Phone: (510) 277-2025
                 ckh@caitlinkellyhenry.com
13

14

15

16

17   For the Defendants:

18          CITY AND COUNTY OF SAN FRANCISCO
                OFFICE OF THE CITY ATTORNEY
19      BY:  BRIGGS MATHESON, DEPUTY CITY ATTORNEY
         RENEE E. ROSENBLIT, DEPUTY CITY ATTORNEY
20          1390 Market Street, Sixth Floor
             San Francisco, California 94102
21                 Phone: (415) 554-3800
                     Fax: (415) 554-3837
22           briggs.matheson@sfcityatty.org
              renee.rosenblit@sfcityatty.org
23

24

25

**EUGENE JONES**

CLARK REPORTING & VIDEO CONFERENCING

4

1                          APPEARANCES

2                          (Continued)

3

4

5                          PAVONE LAW
            BY:  MATTHEW B. PAVONE, ESQUIRE
6             750 Grant Avenue, Suite 250
               Novato, California 94945
7              Phone: (415) 209-9610
                Fax: (415) 892-0337
8              mpavone@pavonelaw.com

9

10

11

12   The Videographer:

13                    JOSEPH MOURGOS
               Eureka Street Legal Video
14              Phone: (415) 215-2041

15

16                    ---oOo---

17

18

19

20

21

22

23

24

25

**CLARK REPORTING & VIDEO CONFERENCING**

5

```
 1            UNITED STATES DISTRICT COURT

 2           NORTHERN DISTRICT OF CALIFORNIA

 3             SAN FRANCISCO DIVISION

 4   SCANVINSKI JEROME HYMES,      )
                                   )
 5            Plaintiff,           )
                                   )
 6         v.                      )   No. 3:16-cv-04288-JSC
                                   )
 7   MILTON BLISS, VICTOR M.       )
     SANCHEZ, JOSEPH A.            )
 8   LEONARDINI, SCOTT NEU,        )
     EUGENE A. JONES,              )
 9   PAUL TIMPANO, PIERRE A.       )
     GRAY,                         )
10                                 )
              Defendants.          )
11   _____)

12

13            BE IT REMEMBERED THAT, pursuant to Notice,

14   and on Wednesday, August 8, 2018, commencing at the hour

15   of 9:58 a.m. thereof, at CLARK REPORTING & VIDEO

16   CONFERENCING, WELLS FARGO BUILDING, 2140 Shattuck Avenue,

17   Berkeley, California 94704, before me, SHELLI G. ENG,

18   C.S.R. No. 11397, a Certified Shorthand Reporter in the

19   State of California, there personally appeared

20                    EUGENE JONES,

21   called as a witness by the Plaintiff; who, having been

22   duly affirmed by me, was thereupon examined and testified

23   as is hereinafter set forth.

24                    ---oOo---

25
```

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

9

1  constitutional and statutory privileges from time to

2  time, and I will be advising him accordingly.  Thank

3  you.

4  BY MR. KATON:

5      Q.  Just so the record is clear, are you refusing

6  to answer the question of whether you were a sheriff's

7  deputy on July 24th, 2014?

8              MR. PAVONE:  Yes.

9              THE WITNESS:  Yes.

10             MR. PAVONE:  I'm instructing the witness not

11 to answer that question.

12 BY MR. KATON:

13     Q.  Do you recall an incident involving Scanvinski

14 Jerome Hymes on July 24th, 2014?

15             MR. PAVONE:  Objection.  Violates

16 constitutional privilege.  Instruct the witness not to

17 answer.

18             You should read the invocation that I provided

19 to you, Deputy Jones.

20             Deputy Jones?

21 THE WITNESS:  Yes, sir.

22             MR. PAVONE:  Read the invocation that I

23 provided to you so we can make a proper record.

24             THE WITNESS:  "I respectfully decline to

25 answer that question based upon my rights against

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

10

1  self-incrimination under the United States and

2  California Constitutions and the California Evidence

3  Code."

4           MR. KATON:  If your counsel does not object,

5  we can refer to that invocation so that the witness

6  doesn't have to recite it in full.

7           MR. PAVONE:  Fine.  I appreciate that and I

8  accept that offer.  Thank you.

9  BY MR. KATON:

10      Q.   Have you ever met Scanvinski Jerome Hymes

11  before?

12           MR. PAVONE:  Go ahead.

13           THE WITNESS:  Yes.

14  BY MR. KATON:

15      Q.   Had you ever met him prior to July 24th, 2014?

16      A.   No.

17      Q.   What were -- well, did you meet him on July

18  24th, 2014?

19           MR. PAVONE:  Instruct the witness not to

20  answer based on his constitutional rights.

21  BY MR. KATON:

22      Q.   Are you going to invoke the privilege that you

23  recited earlier?

24      A.   Yes, sir.

25      Q.   Were you part of -- well, let me withdraw

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

11

1   that.

2           Do you know what a S.O.R.T. team is?

3       A.   Yes.

4       Q.   What is a S.O.R.T. team?

5       A.   S.O.R.T. team is a group of individuals put

6   together to remove someone from a cell or their housing

7   location.

8       Q.   And were you part of a S.O.R.T. team on

9   July 24th, 2014?

10          MR. PAVONE:   Instruct the witness not to

11  answer based on his constitutional privilege.

12  BY MR. KATON:

13      Q.   Are you going to invoke the privilege that you

14  recited earlier?

15      A.   Yes.

16      Q.   Are you aware of whether any sheriff's

17  deputies removed Mr. Hymes from his cell on July 24th,

18  2014?

19          MR. PAVONE:   Instruct the witness not to

20  answer based on his constitutional privileges.

21  BY MR. KATON:

22      Q.   Are you going to invoke the privilege that you

23  recited earlier?

24      A.   Yes.

25      Q.   Do you know of any deputies who were involved

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

12

1   in removing Mr. Hymes from his cell on July 24th, 2014?

2           MR. PAVONE:  Instruct the witness not to

3   answer based on his constitutional privileges.

4   BY MR. KATON:

5       Q.   Are you going to invoke the --

6       A.   Yes.

7       Q.   -- privilege that you recited earlier?

8       A.   Yes.

9       Q.   So now, I want to be clear that I'm not asking

10  anything about you or whether you were involved in

11  removing Mr. Hymes from his cell.  I'm asking if you are

12  aware of whether any other deputies were involved in

13  removing Mr. Hymes from his cell on July 24th, 2014.

14          MR. PAVONE:  Instruct the witness not to

15  answer.

16          Deputy, to facilitate things, when I say that,

17  you can then give the response that "I invoke my

18  privilege . . ."

19          THE WITNESS:  Okay.

20          MR. PAVONE:  Just to speed it along.  I'm

21  instructing the witness not to answer that question.

22          THE WITNESS:  I invoke -- or, yes.  I don't

23  know what to say.

24  BY MR. KATON:

25      Q.   If you intend to invoke the privilege that you

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

13

1  recited earlier, you can just say "I am invoking the

2  privilege that I recited earlier."

3       A.   Okay.

4       Q.   And that's what you're doing?

5       A.   Yes.

6       Q.   So did you ever -- well, let me withdraw that.

7            Did you ever observe Scanvinski Jerome Hymes

8  after July 24th, 2014?

9            MR. PAVONE:   Instruct the witness not to

10 answer.

11 BY MR. KATON:

12      Q.   And are you going to invoke the privilege that

13 you recited earlier?

14      A.   Yes.

15      Q.   Did you give any commands to Scanvinski Jerome

16 Hymes on July 24th, 2014?

17           MR. PAVONE:   Instruct the witness not to

18 answer.   Same grounds.

19 BY MR. KATON:

20      Q.   And are you --

21      A.   Yes.

22      Q.   Just so the record is clear, are you invoking

23 the privilege that you recited earlier?

24      A.   Yes, sir.

25           MR. PAVONE:   And for the record, all of my

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

14

1  instructions not to answer are based on his

2  constitutional rights unless otherwise indicated.

3  BY MR. KATON:

4       Q.   Did you use any force on Mr. Hymes on

5  July 24th, 2014?

6           MR. PAVONE:  Instruct the witness not to

7  answer.  Same grounds.

8  BY MR. KATON:

9       Q.   And, Mr. Jones, are you going to invoke the

10  privilege that you recited earlier?

11      A.   Yes, sir.

12      Q.   Did you observe any other sheriff's deputies

13  using force on Mr. Hymes on July 24th, 2014?

14           MR. PAVONE:  Instruct the witness not to

15  answer.  Same grounds.

16  BY MR. KATON:

17      Q.   And are you going to invoke the privilege you

18  recited earlier?

19      A.   Yes, sir.

20      Q.   Do you recall if you prepared an incident

21  report in connection with Scanvinski Jerome Hymes

22  relating to an incident on July 24th, 2014?

23           MR. PAVONE:  Instruct the witness not to

24  answer.  Same grounds.

25  BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

15

1      Q.   And are you going to invoke the privilege you

2   recited earlier?

3      A.   Yes.

4      Q.   Did you observe Mr. Hymes hit his head on a

5   toilet on July 24th, 2014?

6           MR. PAVONE:   Instruct the witness not to

7   answer.   Same grounds.

8   BY MR. KATON:

9      Q.   And are you going to invoke the privilege you

10   recited earlier?

11      A.   Yes, sir.

12      Q.   Do you know whether Mr. Hymes sustained any

13   injuries in connection with being removed from his cell

14   on July 24th, 2014?

15           MR. PAVONE:   Instruct the witness not to

16   answer.   Same grounds.

17   BY MR. KATON:

18      Q.   And are you going to invoke the privilege that

19   you recited earlier?

20      A.   Yes.

21      Q.   Do you know how Mr. Hymes might have sustained

22   any injuries on July 24th, 2014?

23           MR. PAVONE:   Objection.   Instruct the witness

24   not to answer.   Same grounds.

25   BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

16

1      Q.   Are you going to invoke the privilege that you

2  recited earlier?

3      A.   Yes.

4      Q.   Did you observe any sheriff's deputies kick

5  Mr. Hymes on July 24th, 2014?

6          MR. PAVONE:   Instruct the witness not to

7  answer.   Same grounds.

8  BY MR. KATON:

9      Q.   And are you going to invoke the privilege that

10 you recited earlier?

11     A.   Yes, sir.

12     Q.   Did you observe any sheriff's deputies punch

13 Mr. Hymes on July 24th, 2014?

14         MR. PAVONE:   Instruct the witness not to

15 answer.

16         THE WITNESS:   Yes, sir.

17         MR. PAVONE:   Well --

18         THE WITNESS:   I respectfully decline to answer

19 that question.

20 BY MR. KATON:

21     Q.   Yes, you meant you're following your

22 attorney's instruction not to answer?

23     A.   Yes, correct.

24     Q.   So just try -- I know you know what I am

25 saying, but just let me finish before you start to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

17

1    answer so the record is clear.

2         A.    Yes, sir.  Sorry about that.

3         Q.    No problem.

4               Do you know any reason why Mr. Hymes may have

5    been removed from his cell on July 24th, 2014?

6               MR. PAVONE:   Instruct the witness not to

7    answer.  Same grounds.

8    BY MR. KATON:

9         Q.    And are you going to invoke the privilege that

10   you recited earlier?

11        A.    Yes, sir.

12        Q.    I may have asked a similar question when we

13   first started this morning, but just -- I would like to

14   make sure that I asked you this.

15              Were you working as a sheriff's deputy for the

16   City and County of San Francisco on July 24th, 2014?

17              MR. PAVONE:   Instruct the witness not to

18   answer.  Same grounds.

19   BY MR. KATON:

20        Q.    And are you going to invoke the privilege that

21   you recited earlier?

22        A.    Yes, sir.

23        Q.    Do you know if Sergeant Bliss assembled a

24   S.O.R.T. team to remove Mr. Hymes from his cell on

25   July 24th, 2014?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

18

1            MR. PAVONE:  Instruct the witness not to
2   answer.  Same grounds.
3   BY MR. KATON:
4        Q.   And are you going to invoke the privilege you
5   recited earlier?
6        A.   Yes.
7        Q.   Did you observe Mr. Hymes resisting any
8   deputies on July 24th, 2014?
9            MR. PAVONE:  Instruct the witness not to
10  answer.  Same grounds.
11  BY MR. KATON:
12       Q.   And are you going to invoke the privilege that
13  you recited earlier?
14       A.   Yes.
15       Q.   I will get the court reporter to mark the
16  first exhibit, please.
17            (Whereupon Plaintiff's Exhibit 1 was marked
18            for identification by the court reporter.)
19  BY MR. KATON:
20       Q.   And if you could look at Exhibit 1 and tell me
21  if you recognize this document.
22            MR. PAVONE:  Go ahead.  You can answer that
23  question.
24            THE WITNESS:  Yes.
25  BY MR. KATON:

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

19

1       Q.    And what is this document?

2       A.    The title is "S.O.R.T. Cell Extraction."

3       Q.    And you've seen this document before?

4       A.    Yes.

5       Q.    And were you familiar with this document as of

6   July 24th, 2014?

7             MR. PAVONE:   Instruct the witness not to

8   answer.   Same grounds.

9   BY MR. KATON:

10      Q.    And are you going to invoke the privilege that

11  you recited earlier?

12      A.    Yes.

13      Q.    I'll ask the court reporter to mark 2, please.

14            (Whereupon Plaintiff's Exhibit 2 was marked

15            for identification by the court reporter.)

16  BY MR. KATON:

17      Q.    And if you could tell me -- take a minute to

18  review it and let me know if you are familiar with the

19  document that is Exhibit 2?

20      A.    Yes, sir.

21      Q.    You are familiar with it?

22      A.    Yes, sir.

23      Q.    And what is that?

24      A.    The use of force policy.

25      Q.    And you've seen this before today?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

20

1          A.    Yes.

2          Q.    And were you familiar with this document as of

3    July 24th, 2014?

4                MR. PAVONE:    Instruct the witness not to

5    answer.    Same grounds.

6    BY MR. KATON:

7          Q.    And are you going to invoke the privilege that

8    you recited earlier?

9          A.    Yes.

10         Q.    I will ask the court reporter to mark 3,

11   please.

12               (Whereupon Plaintiff's Exhibit 3 was marked

13               for identification by the court reporter.)

14   BY MR. KATON:

15         Q.    If you could take a moment to look at what's

16   marked as Exhibit 3, and let me know if you know what

17   that is.

18         A.    Yes, sir.

19         Q.    What is that?

20         A.    That's the incident report policy.

21         Q.    And were you familiar with this document

22   before today?

23         A.    Yes.

24         Q.    And were you familiar with this document as of

25   July 24th, 2014?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

21

1          MR. PAVONE:   Instruct the witness not to

2   answer.   Same grounds.

3   BY MR. KATON:

4       Q.   And are you going to invoke the privilege that

5   you recited earlier?

6       A.   Yes.

7       Q.   Did you observe Sergeant Bliss using any force

8   against Mr. Hymes on July 24th, 2014?

9          MR. PAVONE:   Instruct the witness not to

10  answer.

11  BY MR. KATON:

12      Q.   Are you going to invoke the privilege you

13  recited earlier?

14      A.   Yes.

15      Q.   Did you observe Deputy Timpano using any force

16  against Mr. Hymes on July 24th, 2014?

17          MR. PAVONE:   Instruct the witness not to

18  answer.

19  BY MR. KATON:

20      Q.   Are you going to invoke the privilege you

21  recited earlier?

22      A.   Yes.

23      Q.   Did you observe Deputy Neu use any force

24  against Mr. Hymes on July 24th, 2014?

25          MR. PAVONE:   Instruct the witness not to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

1   BY MR. KATON:

2       Q.   Is there a part of that question that you

3   didn't understand that I can clarify?

4       A.   No.  I understand now, sir.

5       Q.   Okay.  What is your answer to that question

6   subject to Mr. Matheson's objection?

7           THE WITNESS:  Does that mean I answer?

8           MR. PAVONE:  You can answer.

9           THE WITNESS:  No.

10  BY MR. KATON:

11      Q.   Do you agree that sheriff's deputies may only

12  use the force that a reasonable officer would use in

13  similar circumstances?

14          MR. MATHESON:  Same objection.  Calls for a

15  legal conclusions.

16          MR. PAVONE:  And instruct not to answer on

17  constitutional privilege grounds.

18  BY MR. KATON:

19      Q.   Are you going to refuse to answer and invoke

20  the privilege that you recited earlier?

21      A.   Yes.

22      Q.   Do you agree that a sheriff's deputy

23  witnessing another deputy using excessive force is

24  obligated to intervene to stop that from happening?

25          MR. PAVONE:  Instruct the witness not to

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

27

1  answer based on constitutional privilege.

2          MR. MATHESON:  Same objections.

3  BY MR. KATON:

4      Q.  Are you going to decline to answer based upon

5  the privileges that you recited earlier?

6      A.  Yes.  Excuse me, yes.

7      Q.  Are you aware of a policy in the San Francisco

8  jail that prohibits prisoners from using vulgar

9  language?

10         MR. PAVONE:  You can answer.

11         THE WITNESS:  Can you repeat the question,

12  sir?

13  BY MR. KATON:

14      Q.  Sure.

15         Are you aware of a policy in the San Francisco

16  jail that prohibits prisoners from using vulgar

17  language?

18      A.  No.

19      Q.  Would you agree that sheriff's deputies who do

20  use excessive force against prisoners should be

21  accountable for their conduct?

22         MR. MATHESON:  Instruct the witness not to

23  answer.

24  BY MR. KATON:

25      Q.  Are you going to refuse to answer based upon

**EUGENE JONES**

CLARK REPORTING & VIDEO CONFERENCING

28

1   privilege that you recited earlier?

2        A.   Yes, sir.

3        Q.   Do you agree that when dealing with a prisoner

4   who is not following commands of deputies that sheriff's

5   deputies should try to use deescalation before using

6   force when feasible?

7             MR. PAVONE:   Instruct the witness not to

8   answer.

9   BY MR. KATON:

10       Q.   Are you going to decline to answer based upon

11  the privileges that you recited earlier?

12       A.   Yes, sir.

13       Q.   Do you agree that sheriff's deputies should

14  give prisoners a warning before using force to give them

15  the opportunity to comply before the force is used when

16  that's feasible?

17            MR. PAVONE:   Instruct the witness not to

18  answer.

19  BY MR. KATON:

20       Q.   Are you going to decline to answer based upon

21  the privileges that you recited earlier?

22       A.   Yes.

23       Q.   Mr. Jones, are you currently employed?

24            MR. PAVONE:  You can answer.

25            THE WITNESS:  Yes.

**EUGENE JONES**

1      Q.   And you did not discuss the incident with any

2   of your fellow deputies at the San Francisco Sheriff's

3   Department?

4      A.   No.

5      Q.   In preparation for this deposition, did you

6   review any incident report?

7      A.   Not that I recall, but I'm not sure.

8      Q.   Did you review any witness statements in

9   preparation for this deposition?

10      A.   No.

11      Q.   Did you review any memoranda in preparing for

12   this deposition?

13          MR. MATHESON:  Objection to the extent the

14   question is seeking information protected by the

15   attorney-client privilege.

16          MR. KATON:  So I will rephrase that.

17      Q.   Did you review any memoranda in preparation

18   for this deposition other than any that may have been

19   provided to you by your attorneys or prepared by your

20   attorney?

21      A.   No.

22      Q.   And have you been investigated by the

23   San Francisco Sheriff's Department for use of force in

24   the past?

25          MR. PAVONE:  Instruct the witness not to

**CLARK REPORTING & VIDEO CONFERENCING**

1    answer.   Same grounds.

2    BY MR. KATON:

3        Q.   And are you going to decline to answer based

4    upon the privileges that you recited earlier?

5        A.   Yes.

6             MS. ROSENBLIT:   In addition, we would like to

7    object that the question calls for information protected

8    by the deponent's right to privacy and the official

9    information privilege.

10   BY MR. KATON:

11       Q.   Have you ever been disciplined by the

12   San Francisco Sheriff's Department for use of force

13   before?

14            MR. PAVONE:   Instruct the witness not to

15   answer.

16            MR. MATHESON:   Same objections.

17   BY MR. KATON:

18       Q.   Are you going to decline to answer based upon

19   the privileges that you recited earlier?

20       A.   Yes.

21       Q.   Have you been disciplined for any reason by

22   the San Francisco Sheriff's Department relating to the

23   treatment of prisoners?

24            MR. PAVONE:   Instruct the witness not to

25   answer.

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

39

1            MR. MATHESON:  Same objections.

2   BY MR. KATON:

3        Q.   Are you going to decline not to answer based

4   upon the privileges that you recited earlier?

5        A.   Yes.

6        Q.   Have you ever been disciplined for your

7   conduct in S.O.R.T. operations?

8            MR. PAVONE:  Instruct the witness not to

9   answer.

10           MR. MATHESON:  Same objection.

11  BY MR. KATON:

12       Q.   Are you going to decline to answer based upon

13  the privileges that you recited earlier?

14       A.   Yes.

15       Q.   Have you been disciplined before for failing

16  to prepare incident reports as required?

17           MR. PAVONE:  Instruct the witness not to

18  answer.

19           MR. MATHESON:  Same objections.

20  BY MR. KATON:

21       Q.   Are you going to decline not to answer based

22  upon the privileges you recited earlier?

23       A.   Yes.

24       Q.   Have you been a party to a civil lawsuit apart

25  from the one that we are here about today?

**EUGENE JONES**

**CLARK REPORTING & VIDEO CONFERENCING**

```
 1   STATE OF CALIFORNIA )

 2   COUNTY OF ALAMEDA    )

 3           I, Shelli G. Eng, Certified Shorthand Reporter,

 4   No. 11397, State of California, do hereby certify:

 5           That prior to being examined, the witness named

 6   in the foregoing deposition, to wit, EUGENE JONES, was by

 7   me duly affirmed to testify the truth, the whole truth

 8   and nothing but the truth; that said deposition was taken

 9   down by me in shorthand at the time and place therein

10   named and thereafter reduced to typewriting under my

11   direction and supervision; that the witness was given an

12   opportunity to read and correct said deposition and to

13   subscribe the same.  Should the signature of the witness

14   not be affixed to the deposition, the witness did not

15   avail himself of the opportunity to sign or the signature

16   has been waived.

17           I further certify that I am not of counsel for

18   either or any of the parties to the said deposition, nor

19   in any way interested in the event of this action and

20   that I am not related to any of the parties thereto.

21           WITNESS MY HAND this 17th day of August, 2018.

22

23           ----------------------------

24           SHELLI G. ENG, CSR NO. 11397
             CERTIFIED SHORTHAND REPORTER

25
```

**EUGENE JONES**

Exhibit C

# In The Matter Of:

*HYMES VS.*
*BLISS*

---

*SCOTT NEU*
*August 9, 2018*

---

*CLARK REPORTING & VIDEO CONFERENCING*
*2140 SHATTUCK AVE. STE. 405*
*BERKELEY, CA  94704*
*510.486.0700*

Original File NEUNONCONFIDENTIAL.txt
Min-U-Script® with Word Index

1

1          UNITED STATES DISTRICT COURT

2          NORTHERN DISTRICT OF CALIFORNIA

3              SAN FRANCISCO DIVISION

4                  ---oOo---

5   SCANVINSKI JEROME HYMES,

6                  Plaintiff,

7          vs.              Case No. 3:16-cv-04288-JSC

8   MILTON BLISS, VICTOR M. SANCHEZ,
    JOSEPH A. LEONARDINI, SCOTT NEU,
9   EUGENE A. JONES, PAUL TIMPANO,
    PIERRE A. GRAY,
10
                   Defendants.
11  _____/

12

13

14

15       VIDEOTAPED DEPOSITION OF SCOTT NEU

16           Thursday, August 9, 2018

17          NONCONFIDENTIAL TRANSCRIPT

18           Pages 1-42; 44-59; 63-94

19

20      CLARK REPORTING & VIDEO CONFERENCING

21         2140 SHATTUCK AVE. STE. 407

22             BERKELEY, CA  94704
                   510.486.0700
23  REPORTED BY:

24  SANDRA L. CARRANZA, CRR, RPR, CSR 7062

25

2

1

2

3                          I N D E X

4

5  DEPOSITION OF SCOTT NEU

6

7  EXAMINATION BY:                                    PAGE

8       MR. KATON                                 6, 92

9       MS. ROSENBLIT                                92

10

11  CONFIDENTIAL PORTION - BOUND SEPARATELY          43

12  CONFIDENTIAL PORTION - ATTORNEYS' EYES ONLY -
    BOUND SEPARATELY                                 60-62
13

14

15  PLAINTIFF'S EXHIBITS MARKED

16  Exhibit 1  Incident Report Statement             39

17  Exhibit 2  SF Sheriff's Dept. Policy and
               Procedure - Use of Force              48
18
19  Exhibit 3  SF Sheriff's Dept. Policy and
               Procedure - SORT - Cell Extraction    49

20  Exhibit 4  SF Sheriff's Dept. Policy and
               Procedure - Incident Reports          50
21

22                       ---oOo---

23

24

25

3

1                        A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:

4                        KATON LAW
                         BY:  GLENN KATON, ATTORNEY AT LAW
5                        385 Grand Avenue, Suite 200
                         Oakland, California 94610
6                        (510) 463-3350
                         gkaton@katon.law
7
                         CAITLIN KELLY HENRY, ATTORNEY AT LAW
8                        1201 MLK Way, Suite 200
                         Oakland, California 94612
9                        (510) 277-2025
                         ckh@cailinkellyhenry.com
10

11   FOR THE DEFENDANTS:

12                       OFFICE OF THE CITY ATTORNEY
                         BY:  RENEE E. ROSENBLIT
13                       1390 Market Street, Sixth Floor
                         San Francisco, California 94102
14                       (415) 554-3853
                         renee.rosenblit@sfcityatty.org
15

16   FOR THE DEFENDANT SCOTT NEU:

17                       RAINS LUCIA STERN, PC
                         BY:  NICOLE PIFARI, ATTORNEY AT LAW
18                       220 Montgomery Street, 15th Floor
                         San Francisco, California 94104
19                       (415) 341-9341
                         npifari@rlslawyers.com
20

21   ALSO PRESENT:  JOSEPH MOURGOS, VIDEOGRAPHER

22

23   TAKEN AT:      CLARK REPORTING AND VIDEO
                    CONFERENCING
24                  2140 Shattuck Avenue Suite 407
                    Berkeley, California 94704
25

4

1          BE IT REMEMBERED that, pursuant to Notice

2     of Taking Deposition and on Thursday, August 9,

3     2018, commencing at the hour of 10:09 A.M., before

4     me, SANDRA L. CARRANZA, CSR No. 7062, RPR, CRR,

5     there personally appeared

6

7                          SCOTT NEU,

8

9     called as a witness by the Plaintiff, who, having

10    been first duly sworn, was examined and testified as

11    hereinafter set forth.

12

13                        ---oOo---

14

15

16

17

18

19

20

21

22

23

24

25

## SCOTT NEU

6

10:10  1   representing Clark Court Reporting and Video

2   Conferencing.

3           Would the reporter please administer the

4   oath.

10:10  5                (Oath administered)

6           THE WITNESS:  Yes.

7

8                    SCOTT NEU,

9       having been duly sworn, testified as follows:

10:10 10

11               EXAMINATION BY MR. KATON

12           MR. KATON:  Q.  Good morning, sir.

13       A.    Good morning.

14       Q.    My name is Glenn Katon, as you just heard.

10:10 15  I'm representing the plaintiff in a lawsuit against

16  seven deputy sheriffs, and -- oh, first of all, can

17  you state your name for the record, please?

18       A.    My name is Scott Neu.  N-E-U is the last

19  name.

10:11 20       Q.    And have you had your deposition taken

21  before, Mr. Neu?

22       A.    Have I had a deposition?  Yes.

23       Q.    How many times?

24       A.    Twice.

10:11 25       Q.    What type of cases were those?

**SCOTT NEU**

7

10:11 1      A.   One was a use of force case and the other

2      was --

3           MS. PIFARI:   I'm going to object.   I'm

4      going to instruct my client not to answer in order

10:11 5      to assert his statutory rights and privileges under

6      state and federal law, specifically his Fifth

7      Amendment right to remain silent.

8           Instruct you not to answer.

9           MR. KATON:   Q.   Are you going to decline to

10:11 10      answer the question?

11      A.   On advice of my Counsel, I'm going to take

12      the Fifth Amendment.

13      Q.   Have you ever testified at trial before?

14      A.   Yes.

10:11 15      Q.   What type of cases -- well, how many cases?

16      A.   I believe just one.

17      Q.   What type of case was that?

18      A.   I believe it was use of force.

19           MS. PIFARI:   I'm going to object for the

10:12 20      aforementioned reasons and instruct my client not to

21      answer.

22           MR. KATON:   Q.   Are you going to follow

23      your attorney's instruction?

24      A.   I am.

10:12 25      Q.   So do you understand that even though we're

## SCOTT NEU

35

11:27  1   observe any other deputies use force against

       2   Mr. Hymes?

       3          MS. ROSENBLIT:  Objection.  Vague and

       4   compound.

11:27  5          Are we talking about other than what's

       6   already been described or ...

       7          MR. KATON:  Q.  Do you understand the

       8   question?

       9      A.   I understand.

11:28 10      Q.   Okay.  Can you answer it?

      11      A.   The answer is no.

      12      Q.   So to be clear -- I'm sorry, to be clear,

      13   you did not see any other deputies punch Mr. Hymes

      14   on the day of the incident?

11:28 15      A.   Correct.

      16      Q.   You did not see any other deputies kick

      17   Mr. Hymes on the day of the incident?

      18      A.   Correct.

      19      Q.   And you did not see any other deputies

11:28 20   strike Mr. Hymes in any way?

      21      A.   Correct.

      22      Q.   Did you observe any impact that could have

      23   broken Mr. Hymes' nose?

      24      A.   No.

11:28 25      Q.   Did you observe any impact that you believe

11:28  1    could have fractured his jaw?

2              MS. ROSENBLIT:   Objection to this one,

3    belatedly for the last one.   Calls for speculation

4    and expert medical opinion.

11:29  5              MR. KATON:   Q.   You can answer, if you

6    understand.

7         A.    The answer is no.

8         Q.    I know that you testified earlier about

9    Mr. Hymes bleeding.   Did you actually see

11:29 10   lacerations?

11        A.    I saw blood coming from his facial area,

12   but I didn't see the actual opening of the cut, but

13   I saw blood from his facial area.

14        Q.    And you described who was on the SORT team

11:29 15   and who was otherwise present for the cell

16   extraction.

17              Can you tell me, to the best of your

18   recollection, which deputies were inside the cell

19   other than yourself?   And this is during the process

11:29 20   of the cell extraction.

21        A.    To the best of my abilities would be Deputy

22   Timpano and Deputy Jones.   There may have been more,

23   but they had helmets on and face masks, so I

24   couldn't recognize them.

11:30 25        Q.    So does that mean you believe there were

SCOTT NEU

63

| 11:49 | 1 | (Resumption of non-confidential portion of the |
| | 2 | transcript.) |
| | 3 | MR. KATON:  Q.  Does the San Francisco |
| | 4 | Sheriff's Department require deputies to maintain |
| 12:03 | 5 | any level of physical conditioning? |
| | 6 | A.   No. |
| | 7 | Q.   Were you doing anything around July 24th, |
| | 8 | 2014, to maintain your own physical fitness? |
| | 9 | A.   Yes. |
| 12:03 | 10 | Q.   What were you doing? |
| | 11 | A.   Going to the gym that's provided in the |
| | 12 | building on a daily basis. |
| | 13 | Q.   And what types of training were you doing |
| | 14 | at the gym? |
| 12:03 | 15 | A.   Free weights and cardio equipment. |
| | 16 | Q.   Anything besides that? |
| | 17 | A.   No. |
| | 18 | Q.   Have you ever done any boxing? |
| | 19 | MS. PIFARI:   Objection.   I'm going to |
| 12:04 | 20 | instruct my client not to answer and to assert his |
| | 21 | rights and privileges to remain silent. |
| | 22 | THE REPORTER:   "To" what, I'm sorry? |
| | 23 | MS. PIFARI:   Remain silent. |
| | 24 | Instructing you not to answer. |
| 12:04 | 25 | MR. KATON:   Q.   Are you going to follow |

12:04 1   your attorney's instruction and decline to answer?

2        A.    Yes.

3        Q.    Have you ever done any martial arts

4   training?

12:04 5            MS. PIFARI:   Objection.

6            I'm going to instruct my client not to

7   answer for the aforementioned reasons.

8            MR. KATON:   Q.   Are you going to follow

9   your attorney's instruction and decline to answer?

12:04 10        A.    Yes.

11        Q.    Did you meet with anyone to prepare for

12   this deposition, other than your attorneys?

13        A.    No.

14        Q.    Have you discussed the incidents with

12:05 15   Mr. Hymes on July 24th, 2014, with anyone besides

16   your attorneys?

17        A.    No.

18            MS. ROSENBLIT:   Belated objection.   Vague

19   as to time.

11:49 20            MR. KATON:   Q.   That question was meant to

21   be at any time.

22        A.    No.

23        Q.    You didn't discuss the incidents with

24   Mr. Hymes with Deputy Bliss?

12:05 25        A.    Only when we got notice from the city

12:12 1      A.   I don't remember.

2      Q.   Do you know if any other deputies prepared

3 a Request for Discipline for Mr. Hymes relating to

4 the incidents of that date?

12:12 5      A.   Only the fact of that Sergeant Bliss wanted

6 us to all write, you know, terrorist threat

7 statements and charge the inmate; that's a formal

8 discipline.  Other than that, no.

9           MR. KATON:  Can we take just, like, a

12:13 10 five-minute break.

11           THE VIDEOGRAPHER:  Going off the record.

12 The time is 12:13 p.m.

13           This is the end of Disk No. 1.

14             (Recess taken.)

12:21 15           THE VIDEOGRAPHER:  We are back on the

16 record.

17           This marks the beginning of Disk No. 2 in

18 the deposition of Scott Neu.  The time is 12:21 p.m.

19           MR. KATON:  Q.  Are you okay to continue,

12:21 20 Mr. Neu?

21      A.   Yes.

22      Q.   Are you currently employed?

23      A.   No.

24      Q.   And what was your last place of employment?

12:21 25           MS. PIFARI:   It's a belated objection for

SCOTT NEU

71

12:21 1    the -- my aforementioned reasons, I'm going to

2    instruct my client not to answer.

3              MR. KATON:  Is that instruction for the

4    question of where were you last employed?

12:21 5              MS. PIFARI:  It's actually a belated

6    objection for asking if he's still employed.  I'm

7    going to try to stay out of all that.

8              MR. KATON:  Okay.  How about the question

9    of can you tell me where you were last employed?

12:22 10             MS. PIFARI:  I mean, the second one answers

11   the first, right?

12             MR. KATON:  That's your call, not mine.

13             MS. PIFARI:  Yeah, I'm going to -- I'm

14   going to object and instruct him not to answer.

12:22 15             MR. KATON:  Q.  So are you going to follow

16   your attorney's instruction and not answer the

17   question about where was your last place of

18   employment?

19        A.    Yes.

12:22 20        Q.    For how long were you employed at the San

21   Francisco Sheriff's Department?

22             MS. PIFARI:  I'm going to object and

23   instruct him not to answer.

24             MR. KATON:  Q.  Are you going to decline to

12:22 25   answer based on that instruction?

SCOTT NEU

72

12:22  1        A.    Yes.

       2        Q.    Did you testify in court in a preliminary

       3   hearing relating to the events of July 24th, 2014?

       4        A.    Yes.

12:23  5        Q.    And I'll represent to you that the

       6   transcript indicates that that hearing took place on

       7   June 3rd, 2015.

       8             Does that sound about right?

       9        A.    Yes.

12:23 10        Q.    And you took an oath to give truthful

      11   testimony at that hearing, correct?

      12        A.    Correct.

      13        Q.    And you understood that the Court would be

      14   relying in part on your testimony in making

12:23 15   important decisions about the charges against

      16   Mr. Hymes?

      17             MS. ROSENBLIT:  Objection.  Calls for

      18   speculation.  Vague.

      19             THE WITNESS:  Yes.

12:23 20             MR. KATON:  Q.  And did you in fact give

      21   truthful and accurate testimony on July 3rd, 2015,

      22   at the preliminary hearing?

      23             MS. ROSENBLIT:  Counsel, I think you mean

      24   June 3rd?

12:24 25             MR. KATON:  Yes, I apologize.

SCOTT NEU

73

12:24 1          Let me withdraw that.

2     Q.   Did you in fact give truthful and accurate

3 testimony at the preliminary hearing on June 3rd,

4 2015?

12:24 5     A.   Yes.

6     Q.   Have you ever been disciplined for use of

7 force by the San Francisco Sheriff's office?

8          MS. PIFARI:   Objection.   Per my

9 aforementioned reasons, I'm instructing my client

12:24 10 not to answer.

11          MS. ROSENBLIT:   I'm also objecting that the

12 question calls for information protected by the

13 deponent's right to privacy and official information

14 privilege.

12:24 15          MR. KATON:   Q.   Are you going to decline to

16 answer based on your attorney's instructions?

17     A.   Yes.

18     Q.   And have you been investigated for the use

19 of force by the San Francisco Sheriff's Department?

12:25 20          MS. PIFARI:   Objection.   For the

21 aforementioned reasons, instructing my client not to

22 answer.

23          MS. ROSENBLIT:   Same objections.

24          MR. KATON:   Q.   And you're going to decline

12:25 25 to answer?

**SCOTT NEU**

74

12:25  1        A.    Yes.

2        Q.    And have you been disciplined for any sort

3    of treatment of prisoners by the San Francisco

4    Sheriff's Department?

12:25  5            MS. PIFARI:  Objection.  For the

6    aforementioned reasons, I'm instructing my client

7    not to answer.

8            MS. ROSENBLIT:  Same objections.  Calls for

9    information protected by the deponent's right to

12:25 10    privacy, official information privilege, and it's

11    vague.

12            MR. KATON:  Q.  Are you going to decline to

13    answer?

14        A.    Yes.

12:25 15        Q.    Have you ever been disciplined by the San

16    Francisco Sheriff's Department for conduct relating

17    to SORT operations?

18            MS. PIFARI:  Objection.  For the

19    aforementioned reasons, I'm instructing my client

12:25 20    not to answer.

21            MS. ROSENBLIT:  Same objections.

22            MR. KATON:  Q.  You're going to decline to

23    answer?

24        A.    Yes.

12:26 25        Q.    Have you ever been disciplined for problems

**SCOTT NEU**

75

12:26  1    in incidents -- I'm sorry, incident reports that

2    you've prepared as a San Francisco Sheriff's deputy?

3           MS. PIFARI:  Objection.  For the

4    aforementioned reasons, I'm instructing my client

12:26  5    not to answer.

6           MS. ROSENBLIT:  Same objections.

7           And for the record, when I say "same

8    objections," I mean the same objections I made to

9    the previous questions.

12:26 10           MR. KATON:  Q.  Are you going to decline to

11    answer?

12       A.  Yes.

13       Q.  And were you involved in a lawsuit where it

14    was alleged that you sexually assaulted a

12:26 15    transgender prisoner?

16           MS. PIFARI:  Objection.  For my

17    aforementioned reasons, I'm instructing my client

18    not to answer.

19           MS. ROSENBLIT:  Same objections.

12:26 20           MR. KATON:  Q.  Are you going to decline to

21    answer?

22       A.  Yes.

23       Q.  Have you ever been sued by a prisoner

24    before for excessive use of force other than in this

12:27 25    case?

**SCOTT NEU**

76

12:27  1          MS. PIFARI:  Objection.  For my

2     aforementioned reasons, I am instructing my client

3     not to answer.

4          MS. ROSENBLIT:  Same objections.  Official

12:27  5     information, privacy, and vague.

6          MR. KATON:  Q.  Are you going to decline to

7     answer?

8     A.  Yes.

9     Q.  Do you recall a prisoner named Ricardo

12:27  10    Palakiko-Garcia?

11         MS. PIFARI:  Objection.  For the

12    aforementioned reasons, I'm instructing my client

13    not to answer.

14         MR. KATON:  Q.  Are you going to decline to

12:28  15    answer?

16    A.  Yes.

17    Q.  Did you use any force against a prisoner

18    named Ricardo Palakiko-Garcia?

19         MS. PIFARI:  Objection.  For the

12:28  20    aforementioned reasons, I'm instructing my client

21    not to answer.

22         MS. ROSENBLIT:  Objection.  Calls for

23    official information and information protected by

24    the deponent's right to privacy.  Vague.

12:28  25         MR. KATON:  Q.  Did you ever direct anyone

**SCOTT NEU**

77

12:28 1    else to use force against a prisoner named Ricardo

2    Palakiko-Garcia?

3            MS. PIFARI:  Objection.  For the

4    aforementioned reasons, I'm instructing my client

12:28 5    not to answer.

6            MS. ROSENBLIT:  Same objections.

7            MR. KATON:  Q.  Do you decline to answer?

8        A.  Yes.

9        Q.  Did you make threats against a prisoner

12:28 10   named Ricardo Palakiko-Garcia?

11            MS. PIFARI:  Objection.  For the

12    aforementioned reasons, I'm instructing my client

13    not to answer.

14            MS. ROSENBLIT:  Same objections.

12:29 15            MR. KATON:  Q.  Are you declining to

16    answer?

17        A.  Yes.

18        Q.  Did you ever withhold food or clothing from

19    a prisoner named Palakiko-Garcia?

12:29 20            MS. PIFARI:  Objection.  For the

21    aforementioned reasons, I'm instructing my client

22    not to answer.

23            MS. ROSENBLIT:  Same objection.

24            MR. KATON:  Q.  Do you decline to answer?

12:29 25        A.  Yes.

**SCOTT NEU**

78

12:29  1        Q.   Did you ever force Mr. Palakiko-Garcia to
       2   engage in a physical fight?
       3            MS. PIFARI:   Objection.  For the
       4   aforementioned reasons, I'm instructing my client
12:29  5   not to answer.
       6            MS. ROSENBLIT:   Same objections.
       7            MR. KATON:   Q.   Do you decline to answer?
       8        A.   Yes.
       9        Q.   Do you recall a prisoner named Stanley
12:29 10   Harris?
      11            MS. PIFARI:   Objection.  For the
      12   aforementioned reasons, I'm instructing my client
      13   not to answer.
      14            MR. KATON:   Q.   Do you recall ever using
12:30 15   force against a prisoner named Stanley Harris?
      16            MS. PIFARI:   Objection.  For the
      17   aforementioned reasons, I'm instructing my client
      18   not to answer.
      19            MS. ROSENBLIT:   Same objections.
12:30 20            MR. KATON:   Q.   Are you going to decline to
      21   answer?
      22        A.   Yes.
      23        Q.   Did you ever command someone named Stanley
      24   Harris, a prisoner at San Francisco Jail, to do
12:30 25   push-ups or dips against his will?

## SCOTT NEU

79

12:30  1          MS. PIFARI:  Objection.  For the
2     aforementioned reasons, I'm instructing my client
3     not to answer.
4          MS. ROSENBLIT:  Same objections.
12:30  5          MR. KATON:  Q.  Do you decline to answer?
6     A.  Yes.
7     Q.  Did you ever make threats against a
8     prisoner named Stanley Harris?
9          MS. PIFARI:  Objection.  For the
12:30  10    aforementioned reasons, I'm instructing my client
11    not to answer.
12         MS. ROSENBLIT:  Same objections.
13         MR. KATON:  Q.  Do you decline to answer?
14    A.  Yes.
12:30  15    Q.  Did you ever withhold food or clothing from
16    a prisoner named Stanley Harris?
17         MS. PIFARI:  Objection.  For the
18    aforementioned reasons, I'm instructing my client
19    not to answer.
12:31  20         MS. ROSENBLIT:  Same objections.
21         MR. KATON:  Q.  Do you decline to answer?
22    A.  Yes.
23    Q.  Did you ever force a prisoner named Stanley
24    Harris to engage in a physical fight?
12:31  25         MS. PIFARI:  Objection.  For the

SCOTT NEU

80

12:31  1    aforementioned reasons, I'm instructing my client

     2    not to answer.

     3              MS. ROSENBLIT:   Same objections.

     4              MR. KATON:   Q.   Did you ever observe other

12:31  5    deputies using force against a prisoner named

     6    Ricardo Palakiko-Garcia?

     7              MS. PIFARI:   Objection.   For the

     8    aforementioned reasons, I'm instructing my client

     9    not to answer.

12:31  10              MS. ROSENBLIT:   Same objections.

    11              MR. KATON:   Q.   Do you decline to answer?

    12        A.   Yes.

    13        Q.   Did you ever observe other deputies using

    14    force against a prisoner named Stanley Harris?

12:31  15              MS. PIFARI:   Objection.   For the

    16    aforementioned reasons, I'm instructing my client

    17    not to answer.

    18              MS. ROSENBLIT:   Same objections.

    19              MR. KATON:   Q.   Do you decline to answer?

12:31  20        A.   Yes.

    21        Q.   Did you ever withhold food, clothing or

    22    bedding from a prisoner named Nicholas Tiller?

    23              MS. PIFARI:   Objection.   For the

    24    aforementioned reasons, I'm instructing my client

12:32  25    not to answer.

**SCOTT NEU**

81

12:32  1                MS. ROSENBLIT:   Same objections.

2                MR. KATON:   Q.   Do you decline to answer?

3      A.   Yes.

4      Q.   Do you recall being sued by a prisoner

12:32  5  named Wigfall?

6                MS. PIFARI:   Objection.   For the

7  aforementioned reasons, I'm instructing my client

8  not to answer.

9                MR. KATON:   Q.   Do you decline to answer?

12:32  10      A.   Yes.

11      Q.   Do you ever recall using force against a

12  prisoner named Wigfall?

13                MS. PIFARI:   Objection.   For the

14  aforementioned reasons, I'm instructing my client

12:32  15  not to answer.

16                MS. ROSENBLIT:   Same objections.

17                MR. KATON:   Q.   Do you recall being sued by

18  a prisoner named Spears?

19                MS. PIFARI:   Objection.   For the

12:32  20  aforementioned reasons, I'm instructing my client

21  not to answer.

22                MR. KATON:   Q.   Do you decline to answer?

23      A.   Yes.

24      Q.   Do you recall using force against a

12:33  25  prisoner named Spears?

**SCOTT NEU**

82

12:33  1          MS. PIFARI:  Objection.  For the

2   aforementioned reasons, I'm instructing my client

3   not to answer.

4          MS. ROSENBLIT:  Same objections.

12:33  5          MR. KATON:  Q.  Do you decline to answer?

6      A.  Yes.

7      Q.  Do you recall being sued by a prisoner

8   named @Collier?

9          MS. PIFARI:  Objection.  For the

12:33 10   aforementioned reasons, instructing my client not to

11   answer.

12          MR. KATON:  Q.  Do you decline to answer?

13      A.  Yes.

14      Q.  Do you recall using force against a

12:33 15   prisoner named Collier?

16          MS. PIFARI:  Objection.  For the

17   aforementioned reasons, instructing my client not to

18   answer.

19          MS. ROSENBLIT:  Same objections.

12:33 20          MR. KATON:  Q.  Do you decline to answer?

21      A.  Yes.

22      Q.  Do you recall being sued by a prisoner

23   named Lester?

24          MS. PIFARI:  Objection.  For the

12:33 25   aforementioned reasons, instructing my client not to

**SCOTT NEU**

12:33  1    answer.

2          MR. KATON:   Q.   Do you decline to answer?

3      A.    Yes.

4      Q.    Do you recall using force against a

12:34  5    prisoner named Lester?

6          MS. PIFARI:   Objection.   For the

7    aforementioned reasons, instructing my client not to

8    answer.

9          MS. ROSENBLIT:   Same objections.

12:34  10          MR. KATON:   Q.   Do you decline to answer?

11     A.    Yes.

12     Q.    Do you recall being sued by a prisoner

13   named Jacobo, J-A-C-O-B-O, along with Deputies Jones

14   and Gray?

12:34  15          MS. PIFARI:   Objection.   Based on the

16   aforementioned reasons, I'm instructing my client

17   not to answer.

18          MR. KATON:   Q.   Do you decline to answer?

19     A.    Yes.

12:34  20     Q.    And do you recall using force against a

21   prisoner named Jacobo?

22          MS. PIFARI:   Objection.   For the

23   aforementioned reasons, I'm instructing my client

24   not to answer.

12:34  25          MS. ROSENBLIT:   Same objections.

SCOTT NEU

84

12:34 1      MR. KATON:   Q.   Do you recall being sued by

2      a prisoner named Moody, along with Deputies Bliss

3      and Tilton?

4           MS. PIFARI:   Objection.   For the

12:35 5      aforementioned reasons, I'm instructing my client

6      not to answer.

7           MR. KATON:   Q.   Do you decline to answer?

8      A.   Yes.

9      Q.   Do you recall using force against a

12:35 10     prisoner named Moody?

11          MS. PIFARI:   Objection.   For the

12     aforementioned reasons, I'm instructing my client

13     not to answer.

14          MS. ROSENBLIT:   Same objections.

12:35 15     MR. KATON:   Q.   Do you decline to answer?

16     A.   Yes.

17     Q.   Do you recall being sued by a prisoner

18     named Cavness, C-A-V-N-E-S-S?

19          MS. PIFARI:   Objection.   For the

12:35 20     aforementioned reasons, I'm instructing my client

21     not to answer.

22          MR. KATON:   Q.   Do you decline to answer?

23     A.   Yes.

24     Q.   Do you recall using force against a

12:35 25     prisoner named Cavness?

SCOTT NEU

12:35  1          MS. PIFARI:   Objection.   For the

2    aforementioned reasons, I'm instructing my client

3    not to answer.

4          MS. ROSENBLIT:   Same objection.

12:35  5          MR. KATON:   Q.   Do you decline to answer?

6     A.   Yes.

7     Q.   Do you recall being sued by a prisoner

8    named Adams?

9          MS. PIFARI:   Objection.   For the

12:36  10   aforementioned reasons, I'm instructing my client

11   not to answer.

12        MR. KATON:   Q.   Do you decline to answer?

13    A.   Yes.

14    Q.   Did you use force against a prisoner named

12:36  15   Adams?

16        MS. PIFARI:   Objection.   For the

17   aforementioned reasons, I'm instructing my client

18   not to answer.

19        MS. ROSENBLIT:   Same objections.

12:36  20        And for the record, they were the official

21   information privilege, the right to privacy,

22   statutory and constitutional, and vague.

23        MR. KATON:   Q.   Do you recall the City

24   settling a case on your behalf that was brought by a

12:36  25   prisoner named Palakiko-Garcia.

**SCOTT NEU**

86

12:36 1          MS. PIFARI:  Objection.  For the

2    aforementioned reasons, instructing my client not to

3    answer.

4          MS. ROSENBLIT:  Same objections.  As well

12:36 5    as an objection that it calls for confidential

6    settlement negotiations.

7          MR. KATON:  Q.  Do you decline to answer?

8      A.  Yes.

9      Q.  Do you recall being sued by a prisoner

12:37 10   named Colvin, C-O-L-V-I-N, along with Deputies Jones

11   and Myres?

12          MS. PIFARI:  Objection.  For the

13   aforementioned reasons, I'm instructing my client

14   not to answer.

12:37 15          MR. KATON:  Q.  Do you decline to answer?

16     A.  Yes.

17     Q.  Do you recall using force against a

18   prisoner named Colvin?

19          MS. PIFARI:  Objection.  For the

12:37 20   aforementioned reasons, I'm instructing my client

21   not to answer.

22          MS. ROSENBLIT:  Same objection.

23          MR. KATON:  Q.  Do you decline to answer?

24     A.  Yes.

12:37 25     Q.  And do you recall being sued by a prisoner

**SCOTT NEU**

87

12:37  1    named Payne, P-A-Y-N-E, in 2011?

2              MS. PIFARI:  Objection.  For the

3    aforementioned reasons, instructing my client not to

4    answer.

12:38  5              MR. KATON:  Q.  Do you decline to answer?

6         A.    Yes.

7         Q.    Do you recall using force against a

8    prisoner named Payne?

9              MS. PIFARI:  Objection.  For the

12:38 10    aforementioned reasons, instructing my client not to

11    answer.

12              MS. ROSENBLIT:  Same objections.

13              MR. KATON:  Q.  Do you decline to answer?

14         A.    Yes.

12:38 15         Q.    Do you recall being sued by a prisoner

16    named Dangerfield, along with Deputies Minor and

17    Browne?

18              MS. PIFARI:  Objection.  For the

19    aforementioned reasons, instructing my client not to

12:38 20    answer.

21              MR. KATON:  Q.  Do you decline to answer?

22         A.    Yes.

23         Q.    Do you recall using force against a

24    prisoner named Dangerfield?

12:38 25              MS. PIFARI:  Objection.  For the

**SCOTT NEU**

88

12:38 1   aforementioned reasons, instructing my client not to

2   answer.

3            MS. ROSENBLIT:  Same objections.

4            MR. KATON:  Q.  Do you decline to answer?

12:38 5       A.  Yes.

6       Q.  Do you recall being sued by a prisoner

7   named Browne, B-R-O-W-N-E?

8            MS. PIFARI:  Objection.  For the

9   aforementioned reasons, instructing my client not to

12:39 10  answer.

11           MR. KATON:  Q.  Do you decline to answer?

12      A.  Yes.

13      Q.  Do you recall using force against a

14  prisoner named Browne?

12:39 15          MS. PIFARI:  Objection.  For the

16  aforementioned reasons, instructing my client not to

17  answer.

18           MS. ROSENBLIT:  Same objections.

19           MR. KATON:  I may be finished, but can we

12:39 20  take a quick break so I can review my notes?

21           THE VIDEOGRAPHER:  Going off the record.

22  The time is 12:39 p.m.

23              (Recess taken.)

24           THE VIDEOGRAPHER:  We are back on the

12:48 25  record at 12:48 p.m.

94

1                    REPORTER CERTIFICATE

2          I, the undersigned, a Certified Shorthand

3    Reporter of the State of California, do hereby

4    certify:  That the foregoing proceedings were taken

5    before me at the time and place herein set forth;

6    that any witnesses in the foregoing proceedings,

7    prior to testifying, were duly sworn; that a record

8    of the proceedings was made by me using machine

9    shorthand which was thereafter transcribed under my

10   direction; that the foregoing transcript is a true

11   record of the testimony given.

12          Further, that if the foregoing pertains to

13   the original transcript of a deposition in a Federal

14   Case, before completion of the proceedings, review

15   of the transcript [  ] was [X] was not requested.

16          I further certify I am neither financially

17   interested in the action nor a relative or employee

18   of any attorney or party to this action.

19   IN WITNESS WHEREOF, I have this date subscribed my

20   name.

21   Dated:  August 13, 2018

22          _____

23                    SANDRA L. CARRANZA
                         CSR No. 7062

24

25

# Exhibit D

*Placeholder for Media File*

# Exhibit E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

---oOo---


SCANVINSKI JEROME HYMES,

        Plaintiff,

vs.                                        Case No. 3:16-cv-04288-JSC

MILTON BLISS; VICTOR M.
SANCHEZ, JOSEPH A. LEONARDINI;
SCOTT NEU; EUGENE A. JONES;
PAUL TIMPANO; PIERRE A. GRAY,

        Defendants.

_____/


THE VIDEOTAPED DEPOSITION OF OFFICER PIERRE A. GRAY

Thursday, August 16, 2018


Reported by:  Patricia Rosinski, CSR #4555


CLARK REPORTING & VIDEO CONFERENCING
2140 Shattuck, Suite 407
Berkeley, California 94704
(510) 486.0700
www.clarkdepos.com

```
 1                    A P P E A R A N C E S

 2

 3  FOR THE PLAINTIFF:

 4        LAW OFFICE OF CAITLIN KELLY HENRY
          By:  CAITLIN KELLY HENRY
 5             Attorney at Law
          1201 Martin Luther King Jr. Way, Suite 200
 6        Oakland, California 94612
          (510) 277-2025
 7        ckh@caitlinkellyhenry.com

 8   - and -

 9        KATON.LAW
          By:  GLENN KATON
10             Attorney at Law
          385 Grand Avenue, Suite 200
11        Oakland, California 94610
          (510) 463-3350
12        gkaton@katon.law

13

14  FOR THE DEFENDANTS:

15        CITY AND COUNTY OF SAN FRANCISCO
          OFFICE OF THE CITY ATTORNEY
16        By:  RENEE E. ROSENBLIT
               Deputy City Attorney
17        1390 Market Street, Sixth Floor
          San Francisco, California 94102
18        (415) 554-3853
          renee.rosenblit@sfcityatty.org
19

20

21  And there also being present:

22  Steve Zavattero, Legal Videographer

23

24                    ---oOo---

25
```

2

1                           I N D E X

2
    EXAMINATION BY                                      PAGE
3
          MS. HENRY                                        8
4
          MS. ROSENBLIT                                  138
5

6   AFTERNOON SESSION                                   PAGE

7                                                         93

8
                          ---oOo---
9

10                         **EXHIBITS**

11          DEPOSITION OF OFFICER PIERRE A. GRAY

12                 Thursday, August 16, 2018

13

14                 PLAINTIFF'S EXHIBITS MARKED        PAGE

15  EXHIBIT 1       Handwritten diagram                 61
                    - 1 pg.
16
    EXHIBIT 2       Incident Report Statement           93
17                  - 1 pg.

18  EXHIBIT 3       San Francisco Sheriff's Department  111
                    Policy and Procedure - Use of Force
19                  - 4 pgs.

20

21

22

23

24

25

                                                         3

1                        I N D E X

2

3  QUESTIONS INSTRUCTED NOT TO ANSWER          PAGE     LINE

4  How many times have you been under          131       11
   investigation for the use of force?
5
   How many times have you been disciplined    131       23
6  for the use of force?

7  How many times have you been disciplined    132        5
   for other treatment of prisoners?
8
   How many times have you been disciplined    132       12
9  for conduct during a S.O.R.T.?

10 How many times have you been disciplined    132       19
   for problems in incident reports?
11
   How many times have you been disciplined    133        1
12 for problems in incident statements?

13

14                      ---oOo---
15

16

17

18

19

20

21

22

23

24

25

                                                          4

1                         I N D E X

2

3    HIGHLY CONFIDENTIAL SECTIONS:

4

5    Page 33

6    Page 39

7    Pages 133-138

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      BE IT REMEMBERED that, pursuant to Notice of Taking

2   Deposition, and on Thursday, August 16, 2018, commencing at

3   the hour of 10:06 a.m., thereof, at Clark Reporting & Video

4   Conferencing, 2140 Shattuck Avenue, Suite 501, Berkeley,

5   California, before me, PATRICIA ROSINSKI, CSR No. 4555, a

6   Certified Shorthand Reporter in and for the State of

7   California, there personally appeared

8

9                    OFFICER PIERRE A. GRAY,

10

11  produced as a witness in the above-entitled action, who,

12  being by me first duly sworn, was thereupon examined as a

13  witness in said action.

14

15

16

17

18

19

20

21

22

23

24

25

                                                          6

1    A.    I didn't see inside of the cell.

2    Q.    Did you see any blood on Mr. Hymes?

3    A.    Yes.

4    Q.    When did you see blood on Mr. Hymes?

11:48AM   5    A.    When he first stood up and turned around.

6    Q.    Where was he?

7    A.    Right at -- when I first saw him, I didn't

8    see the blood.  I didn't see the blood until he got

9    right out of F Tank into the mainline area.

11:48AM   10    Q.    Where was the blood?

11    A.    On his face.

12    Q.    Anywhere else?

13    A.    I didn't see anywhere else.  I just saw --

14    I just remember on his face.

11:49AM   15    Q.    And did you look at his clothing at that

16    time?

17    A.    No.

18    Q.    Did you look at the ground at that time?

19    A.    No.

11:49AM   20    Q.    So you wouldn't have seen blood in that

21    area --

22    A.    No.

23    Q.    -- if there was any.

24          So before Mr. Hymes left the cell, did you

11:49AM   25    see anyone kick him?

72

```
          1     A.    No one kicked him.

          2     Q.    Did you see anyone punch him?

          3     A.    No one.

          4     Q.    Did you see anyone strike him?

11:49AM   5     A.    No.

          6     Q.    Did you see anyone use any other force

          7   before he left the cell?

          8          MS. ROSENBLIT:   Objection.   Vague as to

          9   "force."

11:49AM  10          THE WITNESS:   Can you rephrase it, please.

         11          MS. HENRY:   Q.   Did you see anyone use any

         12   physical force on Mr. Hymes before he left the cell?

         13          MS. ROSENBLIT:   Same objection.   Asked and

         14   answered.

11:50AM  15          THE WITNESS:   No.

         16          MS. HENRY:   Q.   And were any other orders

         17   given, other than the ones you've already described,

         18   before Mr. Hymes left the cell?

         19     A.    Not that I remember.

11:50AM  20     Q.    Did Mr. Hymes resist in any other way other

         21   than what you've already described and --

         22          MS. ROSENBLIT:   Object -- sorry.   I didn't

         23   mean to cut you off.

         24          MS. HENRY:   I've been doing it, too.

11:51AM  25     Q.    -- before he exited the cell?
```

                                                                    73

```
 1                    REPORTER'S CERTIFICATE

 2   STATE OF CALIFORNIA      )
                              )  ss.
 3   COUNTY OF MARIN          )

 4          I, PATRICIA ROSINSKI, hereby certify:

 5          That I am a Certified Shorthand Reporter in

 6    the State of California. That prior to being

 7    examined, OFFICER PIERRE A. GRAY, the witness named

 8    in the foregoing deposition, was by me duly sworn to

 9    testify the truth, the whole truth, and nothing but

10    the truth; That said deposition was taken pursuant

11    to Notice of Deposition and agreement between the

12    parties at the time and place therein set forth and

13    was taken down by me in stenotype and thereafter

14    transcribed by me by computer and that the

15    deposition is a true record of the testimony given

16    by the witness.

17          I further certify that I am neither counsel

18    for either, nor related in any way to any party to

19    said action, nor otherwise interested in the result

20    or outcome thereof.

21          Pursuant to Federal Rules of Civil Procedure,

22    Rule 30(e), review of the transcript was not requested

23    before the completion of the deposition.

24                _____
                  PATRICIA ROSINSKI, CSR No. 4555
25
                      19th day of August, 2018
                                                        143
```

# Exhibit F

# In The Matter Of:

*HYMES VS.*
*BLISS*

---

*PAUL TIMPANO*
*August 10, 2018*

---

*CLARK REPORTING & VIDEO CONFERENCING*
*2140 SHATTUCK AVE. STE. 405*
*BERKELEY, CA  94704*
*510.486.0700*

Original File TIMPANO.txt
**Min-U-Script® with Word Index**

1

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                 SAN FRANCISCO DIVISION

4                      ---oOo---

5   SCANVINSKI JEROME HYMES,

6                 Plaintiff,

7         vs.              Case No. 3:16-cv-04288-JSC

8   MILTON BLISS, VICTOR M. SANCHEZ,
    JOSEPH A. LEONARDINI, SCOTT NEU,
9   EUGENE A. JONES, PAUL TIMPANO,
    PIERRE A. GRAY,
10
                  Defendants.
11  _____/

12

13

14

15       VIDEOTAPED DEPOSITION OF PAUL TIMPANO

16              Friday, August 10, 2018

17

18        CLARK REPORTING & VIDEO CONFERENCING

19             2140 SHATTUCK AVE. STE. 407

20               BERKELEY, CA  94704

21                 510.486.0700

22

23

24   REPORTED BY:

25   SANDRA L. CARRANZA, CRR, RPR, CSR 7062

2

1                         I N D E X

2

3   DEPOSITION OF PAUL TIMPANO

4

5   EXAMINATION BY:                              PAGE

6         MR. KATON                                6

7         MR. MATHESON                            105

8   AFTERNOON SESSION                             78

9

10  PLAINTIFF'S EXHIBITS MARKED

11  Exhibit 1   Incident Report Statment, signed
                and dated 8/2/14 by Deputy
12              Timpano                           89

13  Exhibit 2   Photograph                        97

14  Exhibit 3   Photograph                        98

15                      ---oOo---

16

17

18

19

20

21

22

23

24

25

3

1                    A P P E A R A N C E S

2

3   FOR THE PLAINTIFF:

4                    KATON LAW
                     BY:  GLENN KATON, ATTORNEY AT LAW
5                    385 Grand Avenue, Suite 200
                     Oakland, California 94610
6                    (510) 463-3350
                     gkaton@katon.law
7
                     CAITLIN KELLY HENRY, ATTORNEY AT LAW
8                    1201 MLK Way, SUite 200
                     Oakland, California 94612
9                    (510) 277-2025
                     ckh@cailinkellyhenry.com
10

11  FOR THE DEFENDANTS:

12                   OFFICE OF THE CITY ATTORNEY
                     BY:  RENEE E. ROSENBLIT and
13                   BRIGGS MATHESON, ATTORNEYS AT LAW
                     1390 Market Street, Sixth Floor
14                   San Francisco, California 94102
                     (415) 554-3853
15                   renee.rosenblit@sfcityatty.org
                     briggs.matheson@sfcityatty.org
16

17  ALSO PRESENT:   STEVE ZAVATTERO, VIDEOGRAPHER
                     SCANVINSKI JEROME HYMES
18
                     (Also Present:  Misc. sheriff
19                    officers guarding Mr. Hymes)

20

21  TAKEN AT:       SAN FRANCISCO COUNTY JAIL No. 4
                     850 Bryant Street, 7th Floor
22                   San Francisco, California 94103

23

24                      ---oOo---

25

4

1          BE IT REMEMBERED that, pursuant to Notice

2     of Taking Deposition and on Friday, August 10, 2018,

3     commencing at the hour of 10:06 A.M., before me,

4     SANDRA L. CARRANZA, CSR No. 7062, RPR, CRR, there

5     personally appeared

6

7                         PAUL TIMPANO,

8

9     called as a witness by the Plaintiff, who, having

10    been first duly sworn, was examined and testified as

11    hereinafter set forth.

12

13                       ---oOo---

14

15

16

17

18

19

20

21

22

23

24

25

**PAUL TIMPANO**

32

1      Q.   And were there times, from the time that

2  you got to his cell until he was removed, that you

3  were blocked from seeing him, or did you have eyes

4  on him the whole time?

5      A.   He was probably blocked as well.  Once

6  again, best recollection, just because of the amount

7  of people in the SORT team and just, you know, the

8  general motion, you know.

9      Q.   And you didn't see anyone punch Mr. Hymes

10 in the cell?

11     A.   No.

12     Q.   You didn't see anyone kick Mr. Hymes in the

13 cell?

14     A.   No.

15     Q.   You didn't see anyone strike Mr. Hymes in

16 the cell in any way?

17     A.   No.

18     Q.   So what happened after Mr. Hymes was

19 removed from the cell?

20     A.   I'm not sure where he was taken to next.

21     Q.   What did you do next?

22     A.   I don't remember.

23     Q.   Do you remember if you were involved any

24 longer with Mr. Hymes?  Did you go back to other

25 duties?

107

1                    REPORTER CERTIFICATE

2         I, the undersigned, a Certified Shorthand

3   Reporter of the State of California, do hereby

4   certify:  That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that any witnesses in the foregoing proceedings,

7   prior to testifying, were duly sworn; that a record

8   of the proceedings was made by me using machine

9   shorthand which was thereafter transcribed under my

10  direction; that the foregoing transcript is a true

11  record of the testimony given.

12        Further, that if the foregoing pertains to

13  the original transcript of a deposition in a Federal

14  Case, before completion of the proceedings, review

15  of the transcript [  ] was [X] was not requested.

16        I further certify I am neither financially

17  interested in the action nor a relative or employee

18  of any attorney or party to this action.

19  IN WITNESS WHEREOF, I have this date subscribed my

20  name.

21  Dated:  August 16, 2018

22         _____

23                    SANDRA L. CARRANZA
                         CSR No. 7062

24

25

Exhibit G

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA


SCANVINSKI JEROME HYMES,

       Plaintiff,

vs.              CASE NO. CV164288

MILTON BLISS, et al.,

       Defendants.
_____/



DEPOSITION OF
SCANVINSKI JEROME HYMES
May 14, 2018



Reported by:   HANNAH KAUFMAN & ASSOCIATES, INC.
JESSICA AYRES  Certified Shorthand Reporters
CSR# 14180     150 Executive Park Blvd., Suite 4600
San Francisco, California 94134-3333
(415) 337-2077

Hannah Kaufman & Associates, Inc.

1                          I N D E X

2

3    DEPOSITION OF SCANVINSKI JEROME HYMES

4

5    EXAMINATION BY:                          PAGE

6    MS. ROSENBLIT                         5, 178

7    MR. KATON                              177

8

9

10

11                    E X H I B I T S

12                    DESCRIPTION            PAGE

13   Exhibit 1    Complaint by a Prisoner       125

14   Exhibit 2    Amended Complaint             131

15   Exhibit 3    Video of S. Hymes' interview    133

16                with Lt. Flewellen

17   Exhibit 4    Letter signed by Lt. Flewellen  138

18   Exhibit 5    Claim against City and County   139

19                of San Francisco

20   Exhibit 6    Photos Bates-stamped 132-141     140

21   Exhibit 7    Cell extraction video          148

22   Exhibit 8    San Quentin video              169

23

24

25

2

Hannah Kaufman & Associates, Inc.

1          BE IT REMEMBERED that, pursuant to Notice of

2   Taking Deposition, and on Monday, the 14th day of

3   May, 2018, commencing at the hour of 10:09 a.m. thereof,

4   at the offices of SAN FRANCISCO COUNTY JAIL, 850 Bryant

5   Street, 7th Floor, San Francisco, California, before me

6   JESSICA AYRES, a Certified Shorthand Reporter in the

7   State of California, personally appeared,

8                SCANVINSKI JEROME HYMES,

9   called as a witness herein; and the said witness, being

10  by me first duly sworn, was thereupon examined and

11  testified as is hereinafter set forth.

12                        - - -

13

14

15

16

17

18

19

20

21

22

23

24

25

3

Hannah Kaufman & Associates, Inc.

```
 1                    A P P E A R A N C E S :

 2

 3    FOR THE PLAINTIFF:

 4         Law Offices of KATON.LAW

 5         385 GRAND AVENUE, SUITE 200

 6         OAKLAND, CALIFORNIA 94610

 7         By GLENN KATON, Attorney at Law

 8         510-463-3550

 9         gkaton@katon.law

10

11    FOR THE DEFENDANTS:

12         Law Offices of SAN FRANCISCO CITY ATTORNEY'S

13         OFFICE

14         1390 MARKET STREET, 6TH FLOOR

15         SAN FRANCISCO, CALIFORNIA 94102-5408

16         By RENEE E. ROSENBLIT & BRIGGS MATHESON,

17         Deputy City Attorneys

18         415-554-3800

19         renee.rosenblit@sfcityatty.org

20         briggs.matheson@sfcityatty.org

21

22    ALSO PRESENT:

23         DEPUTY J. FRIETZSCHE

24         DEPUTY S. LOPEZ

25         DEPUTY K. MARES
```

4

Hannah Kaufman & Associates, Inc.

1       A    Yes.

2       Q    Again, on that same level of 1 to 10 pain

3    scale, how painful was the kick?

4       A    I would say 9.

5       Q    9 out of 10?

6       A    Yeah.

7       Q    In the processing room, you described punches

8    to your ribs; right?

9       A    Yes.

10       Q    Same pain scale.  Where would you place the

11   pain from the punches?

12       A    5 to 6.

13       Q    5 to 6 out of 10?

14       A    Yes.

15       Q    What about the kicks you described to the ribs?

16       A    About a 7.

17       Q    Did I miss anything?

18       A    In regards?

19       Q    Was there any other force that we didn't

20   describe?

21       A    No.

22       Q    When you were in your cell, do you know who was

23   punching your face?

24       A    No.

25       Q    Do you know who kicked you in the face?

61

Deposition of Scanvinski Jerome Hymes

Hannah Kaufman & Associates, Inc.

1          (Whereupon, Deputy K. Mares enters the room.)

2          THE WITNESS:  No.

3  BY MS. ROSENBLIT:

4     Q   What about for your nose?

5     A   No.

6     Q   Have you been advised you need future medical

7  treatment for your jaw?

8     A   No.

9     Q   Have you ever broken your nose before?

10    A   Not that I recall.

11    Q   What about your jaw?

12    A   No.

13    Q   Have you been in fights before?

14    A   Yes.

15    Q   How many fights?

16    A   I don't know.  From kid?  Adult?  Total life?

17    Q   Let's say since you were 18, how many physical

18  fights have you been in?

19    A   I can't -- I don't know, maybe 20.  I don't --

20  I can't -- estimate 20.

21    Q   Did you report this incident?

22    A   I submitted an inmate grievance.

23    Q   When did you submit a grievance?

24    A   The following day.

25    Q   What happened with your grievance?

86

Deposition of Scanvinski Jerome Hymes

Hannah Kaufman & Associates, Inc.

1        I do hereby certify that the witness in the

2    foregoing deposition was by me duly sworn to testify the

3    truth, the whole truth, and nothing but the truth in the

4    within-entitled cause; that said deposition was taken at

5    the time and place therein stated; that the testimony of

6    the said witness was reported by me, a Certified

7    Shorthand Reporter and a disinterested person, and was

8    under my supervision thereafter transcribed into

9    typewriting; that thereafter, the witness was given an

10   opportunity to read and correct the deposition

11   transcript, and to subscribe the same; that if unsigned

12   by the witness, the signature has been waived in

13   accordance with stipulation between counsel for the

14   respective parties.

15       And I further certify that I am not of counsel or

16   attorney for either or any of the parties to said

17   deposition, nor in any way interested in the outcome of

18   the cause named in said caption.

19       IN WITNESS WHEREOF, I have hereunto set my hand

20   the 23rd day of May, 2018.

21

22   _____

     JESSICA AYRES

23   CSR No. 14180

24

25

180

Deposition of Scanvinski Jerome Hymes

# Exhibit H

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE SEALED**



# OFFICE OF THE SHERIFF
## CITY AND COUNTY OF SAN FRANCISCO
### 1 DR. CARLTON B. GOODLETT PLACE
### ROOM 456, CITY HALL
### SAN FRANCISCO, CALIFORNIA 94102



**Ross Mirkarimi**
SHERIFF

July 23, 2015
Reference: 2015-124

Mr. Scott Neu

Dear Mr. Neu,

I have conducted a pre-termination hearing on charges for your dismissal. This hearing, held before me on June 24, 2015, allowed me to receive information in your case from your attorney, Harry Stern. In that hearing you chose not to make a statement. In your defense Mr. Stern indicated you had been frank and forthright in your statement to IA. He also provided information about your time in the department and your performance as a deputy.

I have carefully reviewed the investigation materials that resulted in the charges contained in my legal counsel's letter of April 28, 2015. I have also considered the information your counsel provided in the hearing.

Highly Confidential – Attorney's Eyes Only

CCSF_HYMES_004620



Sincerely,

ROSS MIRKARIMI
Sheriff

cc:   Undersheriff Rocha, Chief Freeman, Lieutenant Flewellen, Sergeant Durkan,
      Harry Stern, Rains Lucia Stern

Highly Confidential – Attorney's Eyes Only

CCSF_HYMES_004621

Exhibit I



| CUSTODY DIVISION | **Date Issued:** 11/2003 | **Policy #:** CODM 4.17 |
|---|---|---|
| | **Last Revised** 04/01/2014 | |
| | **Related Policies:**<br>SFSD 02-10 Use of Video Camera   SFSD 02-03 Use of Force<br>SFSD 02-20 Incident Reports<br>CDM 4.21 Restraint Chair CDM 04.11 Evidence Processing | |
| | **Approved By:**<br><br>Chief Deputy Matthew Freeman | |
| **POLICY AND PROCEDURE** | | |
| Chapter: 04 Security and Control | Title: **S.O.R.T – Cell Extraction** | |

**POLICY:** It is the policy of the San Francisco Sheriff's Department (SFSD) Custody Operations Division (COD)to use the least amount of force necessary when there is no other alternative but to forcibly remove a prisoner from a cell and move him / her to another location.

**PURPOSE:** To provide direction to deputies and supervisors in all phases of a cell extraction and in the execution of the Special Operations Response Team (S.O.R.T.) team during the movement of a hostile, disruptive or combative inmate.

**DEFINITIONS:**

**Area of Operation -** encompasses all areas which relate to the movement of a prisoner from the cell / area to be extracted from to the desired destination and including the route between the two

**Assembly Area -** located away from the Area of Operation; area where team members receive instructions, information and equip themselves with the necessary equipment.

**Destination -** the point at which the cell extraction has ended. The destination may be another cell / area in the same facility, another SFSD facility, an SFSD vehicle, a restraint chair, etc.

**Protective Equipment Ensemble –** The protective equipment ensemble is assigned to team members to provide protection from blunt force trauma during cell extractions. Ensemble includes riot helmet, and protection for the upper torso including shoulders, thighs, groin, shins, elbows, forearms and hands.

**Scene Commander -** is the Supervisor in command at a cell extraction or other incident. The Scene Commander is usually the highest ranking Operational Supervisor and / or the Watch Commander.

**S.O.R.T. Team Leader –** S.O.R.T. Team Member #5. Appointed by the Scene Commander. Usually remains outside the cell and controls the operation.

**I. GENERAL**

A. Deputies who must forcibly remove a prisoner from a cell or other area will comply with SFSD Policy & Procedure 02 - 03 "Use of Force".

B. Until a supervisor has arrived, a cell door shall not be opened when a prisoner inside is credibly threatening to resist or actively resisting orders to move to another cell or area.

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000551

    1. Exception: In a life threatening emergency immediate action should be taken.

C. When possible, employees shall utilize verbal techniques to encourage voluntary compliance from the prisoner.

    1. Employees shall attempt to identify the reason(s) why the prisoner is refusing to move.

D. There shall never be a "point of no return" from which the prisoner is no longer given an opportunity to comply with orders.

## II. PROCEDURES

A. PRELIMINARY PREPARATIONS - Upon determination that a prisoner shall possibly be removed forcibly from a cell, the Scene Commander shall:

    1. take action to isolate the situation and prevent escalation of the incident;

        a. This may include:

            i. removing all non-essential staff and prisoner workers;

            ii. locking down any prisoners housed in the area and / or

            iii. postponing or cancelling jail activity in the area.

    2. assign a deputy (may be the housing deputy) to monitor the activity of the resistant prisoner as well as any other prisoners in the area;

        a. The deputy shall immediately alert the Scene Commander if a life threatening emergency arises requiring immediate action, and

        b. attempt to persuade the prisoner to peacefully comply with orders given.

    3. develop an Emergency Plan to implement in the event of the situation deteriorating to where immediate action is required before the development of the primary plan;

    4. announce Code-33 on the radio to limit radio traffic;

    5. limit activities in other areas of the jail as necessary to free up staff to assist in the operation;

        a. Request additional personnel from other facilities / sections / unit if necessary.

    6. select S.O.R.T. team members and designate assignments (See "S.O.R.T. Team Operations Reference" form); select support personnel and designate assignments and determine required equipment.

        a. Team Members shall outfit and equip themselves and report to the Assembly Area.

            i. Exception: Team Member #7 shall immediately begin video recording the prisoner's words and actions.

B. PLANNING THE OPERATION –

    1. As time permits, the Scene Commander shall develop a Primary Plan, an Alternate Plan (should circumstances change), a Contingency Plan (should something go wrong) and an Emergency Plan (should everything go wrong).

    2. The plan shall be approved by the Watch Commander (if different than the Scene

HIGHLY CONFIDENTIAL ATTORNEYS EYES
ONLY – SUBJECT TO FEDERAL PROTECTIVE
ORDER

CCSF_HYMES_000552

Commander).

3. The plans should include:

   a. all available information about the prisoner:

      i. Name

      ii. Risks and alerts associated with him / her and his / her current behavior

      iii. Information regarding the cause of the current behavior

   b. the location from where the prisoner will be moved, the destination and the route to be taken;

   c. the specific tasks and responsibilities assigned to each S.O.R.T. team member and

   d. the specific tasks and responsibilities assigned to each support personnel.

4. The Scene Commander will:

   a. present the plan to the S.O.R.T. and support personnel and conduct a brief back to answer questions;

   b. inspect S.O.R.T. team members for serviceability of required equipment;

   c. conduct a rehearsal (if time permits) and

   d. line up the S.O.R.T. team in squad order and move the team to an area with quick access to the cell while still being out of sight of the prisoner.

C. EXECUTING THE OPERATION

1. The Scene Commander will give the prisoner a final opportunity to comply with orders given. If the prisoner agrees to comply,

   a. he / she will be directed to lie prone face down with his / her head near the back wall, and place his / her hands behind his / her back, and

   b. the team will enter the cells, secure and search the prisoner and move the prisoner to the intended destination.

2. The Scene Commander will:

   a. advise the prisoner that he / she will be moved by force;

   b. direct the S.O.R.T. Team to move into position and

   c. scan the cell for possible weapons, obstacles or other hazards

3. The Team Leader will issue a final warning to the prisoner.

4. The S.O.R.T. will make entry into the prisoner's cell as outlined in the "S.O.R.T. Operations Reference – S.O.R.T. Detailed Tasks.

   a. Tasks may be changed, combined, etc. as the specific circumstances of the incident require.

## III. FORMS

A. S.O.R.T. Operations Reference Guide

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000553

S.O.R.T. – Cell Extraction

    B.  S.O.R.T. Implementation Checklist

**IV. REFERENCES**

    N/A

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER                  CCSF_HYMES_000554

**S.O.R.T. Operations Reference Guide**

## SORT Team Members Equipment

| | |
|---|---|
| **Team Member #1** | Outfitted with full protective equipment ensemble. Equipped with padded / plastic shield. No radio or handcuff key. No unnecessary items. |
| **Team Member #2** | Outfitted with full protective equipment ensemble. No radio or handcuff key. No unnecessary items. |
| **Team Member #3** | Outfitted with full protective equipment ensemble. No radio or handcuff key. No unnecessary items. |
| **Team Member #4** | Outfitted with full protective equipment ensemble. No radio or handcuff key. No unnecessary items. |
| **Team Member #5 (Team Leader)** | Outfitted with riot helmet and gloves. Equipped with radio, chemical agent, leg irons, handcuffs or flex cuffs, handcuff key. No unnecessary equipment. |
| **Team Member #6** | Outfitted with protective equipment ensemble. Equipped with chemical agent, ARWEN and TASER (as necessary). (Must have current training and certification record on file for Less Than Lethal weapons.) No radio or handcuff key. No unnecessary items. |
| **Team Member #7** | Outfitted with riot helmet and gloves. Equipped with department issued video camera. .) No radio or handcuff key. No unnecessary items. |

## SORT Team Members Assignments / Responsibilities[1]

| | |
|---|---|
| **Team Member #1** | Using a shield, will hold prisoner against wall, floor or bunk while Team Member #2 and Team Member #3 secure the prisoner's arms. |

---

[1] These are the usual responsibilities for each S.O.R.T. Team member. The Scene Commander can add to, change or remove assignments as necessary based on the circumstances (ex. Cell size) to ensure a successful operation.

4.0 Security and Control CDM 4.22

1

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000555

## S.O.R.T. Operations Reference Guide

**Team Member #2**   From the prisoner's right side, assist Team Member #1 with pinning prisoner against wall, floor or bunk. Control the arm that presents itself to him / her from the right side and retains control while placing prisoner on the floor.

**Team Member #3**   From the prisoner's left side, assist Team Member #1 with pinning prisoner against wall, floor or bunk. Control the arm that presents itself to him / her from the left side and retains control while placing prisoner on the floor.

Secures prisoner's wrists with restraints; searches prisoner's lower back area for contraband.

**Team Member #4**   Enters the cell last and controls the prisoner's legs by placing into "Figure 4 Leg Lock". Will use restraints as necessary.

**Team Member #5**   Team Leader. Remains outside and directs the operation. Communicates with the Scene Commander and any other personnel and coordinates activities through the Tactical Phase. Provides restraint equipment to Team Members #1-#3 as needed.

**Team Member #6**   Less Lethal Weapons Operator. Stands by until needed.

**Team Member #7**   Responsible for video recording cell extraction from beginning to end, finalizing video and properly documenting the medium used to capture the incident (DVD, video tape, flash drive, etc.) Will complete a supplemental incident report documenting steps he /she took to record the incident and ensure that chain of custody is established.

HIGHLY CONFIDENTIAL ATTORNEYS EYES
ONLY – SUBJECT TO FEDERAL PROTECTIVE
ORDER

CCSF_HYMES_000556

## S.O.R.T. Operations Reference Guide

## Support Personnel and Assignments

| | |
|---|---|
| **Support #1** | Unlocks the cell door at the scene. |
| | Searches and secures the prisoner's property. |
| **Support #2** | Searches the destination cell. |
| | Ensures appropriate items (bedding, property if previously searched) are placed in the cell prior to the arrival of the prisoner. |
| | Controls the door at the destination. |
| **Support #3** | Clears planned route of travel of persons and obstacles |

## Tactical Phase - Detailed Tasks

| | |
|---|---|
| **Scene Commander** | Ensure that all support personnel and equipment (i.e., restraint chair if used to transport or as a destination) are in place and have accomplished necessary assignments or are standing by. |
| **Scene Commander or Team Leader** | Give prisoner opportunity to comply with orders. If prisoner refuses to comply, advise prisoner that he / she will be moved by force. |

If at any time prior to the extraction the prisoner agrees to comply,

- the Team Leader will direct the prisoner to lie on the floor face down with his / her head toward the back wall and his / her hands behind his / her back
- Team Members #1-#4 will enter the cell, secure the prisoner's legs and arms, search the prisoner and remove him / her from the cell

If the prisoner refuses, instruct the S.O.R.T. team to move into position.

4.0 Security and Control CDM 4.22

3

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000557

### S.O.R.T. Operations Reference Guide

Give the prisoner a final warning.

**Team Leader**

Visually scan the cell for possible weapons, obstacles or other hazards (urine, feces, wet floor, baby oil, etc.)

**Team Leader or Team Member #7**

Use a Less Than Lethal option to encourage prisoner compliance. (Note: More than one option may be necessary i.e., chemical agent fails so ARWEN is used)

**Team Members 1-3:**

Enter cell on pre-arranged signal coordinated with deputy opening the cell door.

Enter as a team and control the prisoner by pressing him / her against the wall, floor or bunk until the prisoner's hands and arms are secured.

Place the prisoner in a prone position on the floor.

**Note:** Sworn employees shall make every attempt to limit the amount of weight and pressure applied to the **back** of the prisoner while being restrained. The Team Leader will monitor the prisoner for any signs of distress and / or difficulty breathing until the cell extraction is complete.

**Team Member #1**

Passes shield out of cell.

**Team Member #4**

Controls the prisoner's legs by placing the legs in a Figure 4 Leg Lock.

**Team Member #1, #2, #3 and / or #4**

Search the prisoner thoroughly.

Bring the prisoner to a standing position.

Walk prisoner out of cell.

**Note:** If a prisoner refuses to walk, he / she may be placed into a restraint chair. All applicable restraint chair policies and procedures apply.

**Support #1**

Secures the cell. If any item in the cell can be used as evidence, he / she will photograph, collect and process the evidence per Custody Division

4

4.0 Security and Control CDM 4.22

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000558

## S.O.R.T. Operations Reference Guide

policy.

Once the evidence, if any, is removed, the prisoner's property will be searched and placed into a plastic bag with the prisoner's name marked on it.

| | |
|---|---|
| **Two Team Members (#1-#4)** | Each team member takes an arm and the prisoner is walked backwards toward the destination. |
| **Scene Commander, Team Leader and one Team Member** | Walk ahead of prisoner to ensure clear path and readiness at destination |
| **Team Member #7** | Continue recording operation. |
| **Team Member** | Protects Team Member #7 from being spat upon or assaulted by the prisoner. |
| **Escorting Team Members** | At the destination, place the prisoner in a prone position on the floor with his / her head facing the back wall. |
| | Control the prisoner's legs with a Figure 4 Leg Lock. |
| | **Note:** Again, it is important to monitor the prisoner's breathing at all times while he / she is restrained in a face down position. |
| | **Note:** Sworn employees shall make every effort to limit the amount of weight and pressure applied to a prisoner's back while the restraints are being removed. |
| **Team Member #5** | Monitor the prisoner for any signs of distress or difficulty breathing until the restraints have been removed and the team has exited the cell. |
| **Team Members #1 - #4** | *If the prisoner is suspected of having weapons*, remove the restraints and the prisoner's clothing to allow for a thorough strip search. |
| **Team Members #1 - #3** | Exit the cell one at a time |

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY – SUBJECT TO FEDERAL PROTECTIVE ORDER

CCSF_HYMES_000559

### S.O.R.T. Operations Reference Guide

| | |
|---|---|
| **Team Member #4** | Exit the cell last. |
| **Support #3** | Lock the cell door immediately upon exit of Team Member #4 |
| **Team Member #5** | Ask Jail Medical Services to evaluate the prisoner for injuries. |

## S.O.R.T. Operation Debriefing

| | |
|---|---|
| **Team Member #5** | Ask all persons involved if anyone was injured. |
| **Team Members (all)** | Clean up as necessary. |
| | Return to Assembly Area with all operational equipment |
| **Team Members (all)** | Inspect equipment for serviceability and return to proper storage |
| **Team Member #7** | Video media removed from camera, finalized and processed as evidence |
| **Support #1** | Return the prisoner's property to him / her. If the prisoner is still agitated, secure the property. |
| **Scene Commander** | Conduct debrief of operation. |
| | Return jail to normal operations. |
| **Scene Commander** | Determine which reports need to be written. |
| | Determine if follow up investigation and criminal charging and / or administrative action are needed. |

HIGHLY CONFIDENTIAL ATTORNEYS EYES
ONLY – SUBJECT TO FEDERAL PROTECTIVE
ORDER

CCSF_HYMES_000560