# Exhibit F

```
                                                                    1

 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                 SAN FRANCISCO DIVISION

 4                      ---oOo---

 5   SCANVINSKI JEROME HYMES,

 6              Plaintiff,

 7       vs.                 Case No. 3:16-cv-04288-JSC

 8   MILTON BLISS, VICTOR M. SANCHEZ,
     JOSEPH A. LEONARDINI, SCOTT NEU,
 9   EUGENE A. JONES, PAUL TIMPANO,
     PIERRE A. GRAY,
10
              Defendants.
11   _____/

12

13

14

15     VIDEOTAPED DEPOSITION OF MILTON HOWARD BLISS

16                   July 31, 2018

17              Non-Confidential Transcript

18

19

20

21

22   REPORTED BY:

23   SANDRA L. CARRANZA, CRR, RPR, CSR 7062

24

25
```

```
                                                              2
 1
 2                        I N D E X
 3
 4   DEPOSITION OF MILTON HOWARD BLISS
 5
 6   EXAMINATION BY:                                      PAGE
 7   MR. KATON                                         6, 137
 8   MS. ROSENBLIT                                        136
 9   AFTERNOON SESSION                                     89
10
11   CONFIDENTIAL PORTIONS -
     BOUND SEPARATELY                  34-55; 59-61; 92-104
12
13   PLAINTIFF'S EXHIBITS MARKED
14   Exhibit 1   Incident Report by
                 Lieutenant J. Minor, Bates Nos.
15               000009 - 11                               69
16   Exhibit 2   Policy and Procedure - Operations -
                 Incident Report                           70
17
     Exhibit 3   Policy and Procedure - 02 Legal
18               Enforcement and Operations -
                 Use of Force                              89
19
     Exhibit 4   Policy and Procedure - 04 Security
20               and Control - SORT - Cell Extraction      90
21                          ---oOo---
22
23
24
25
```

```
                                                              3
 1                      A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFF:

 4                 KATON LAW
                   BY:  GLENN KATON, ATTORNEY AT LAW
 5                 385 Grand Avenue, Suite 200
                   Oakland, California 94610
 6                 (510) 463-3350
                   gkaton@katon.law
 7
                   CAITLIN KELLY HENRY, ATTORNEY AT LAW
 8                 1201 MLK Way, Suite 200
                   Oakland, California 94612
 9                 (510) 277-2025
                   ckh@cailinkellyhenry.com
10

11   FOR THE DEFENDANTS:

12                 OFFICE OF THE CITY ATTORNEY
                   BY:  RENEE E. ROSENBLIT and
13                 BRIGGS MATHESON, ATTORNEYS AT LAW
                   1390 Market Street, Sixth Floor
14                 San Francisco, California 94102
                   (415) 554-3853
15                 renee.rosenblit@sfcityatty.org
                   briggs.matheson@sfcityatty.org
16

17   ALSO PRESENT:  STEVE ZAVATTERO, VIDEOGRAPHER
                    SCANVINSKI JEROME HYMES
18
                    (Also Present:  Misc. sheriff
19                   officers guarding Mr. Hymes)

20
     TAKEN AT:      SAN FRANCISCO COUNTY JAIL No. 4
21                  850 Bryant Street, 7th Floor
                    San Francisco, California 94103
22

23
                          ---oOo-
24

25
```

9

1  Q.  And you were working in the jail on that
2  day?
3  A.  Yes.
4  Q.  What time did you start working that day?
5  A.  Came on shift at 7:00 o'clock in the
6  morning.
7  Q.  And prior to when you started your shift at
8  7:00 a.m., had you ever met Mr. Hymes before?
9  A.  No.
10 Q.  Had you ever even seen Mr. Hymes before?
11 A.  No.
12 Q.  Had you heard of Mr. Hymes before 7:00 a.m.
13 on --
14 A.  No, no.  Before 7:00, that muster prior,
15 there might have been something mentioned about him,
16 but I can't recall the -- the conversation.
17 Q.  You said something "prior" and I didn't
18 catch the word?
19 A.  I'm sorry, during muster, there might have
20 been something put out about Hymes, Mr. Hymes.  I
21 don't remember.
22 Q.  What's muster?
23 A.  That would be our -- 15 minutes prior to
24 the start of the watch, the whole team meets up and
25 we give out the assignments to the deputies, and we

1  assembled?
2      A.   I don't recall everybody, every member, but
3  I believe Leonardini, Neu, Gray.  Ysip, I'm not sure
4  if he's on there.  A couple of other -- couple of
5  other deputies.  I don't remember who was there.
6      Q.   Do you remember if Deputy Timpano was part
7  of the SORT team?
8      A.   I don't remember if he was part of the
9  original SORT team.  I don't recall.
10     Q.   And how about Deputy Jones?
11     A.   Maybe he was on there.  I don't recall.
12     Q.   So what happened -- I'm sorry, what
13  happened next?
14     A.   We assembled at the emergency operations
15  center.  I gave the brief to the deputies that were
16  on the SORT team.  We went over our plan.  I believe
17  I called in our classification deputies to give us a
18  back brief on Hymes, his background.
19     Q.   When you say that you gave a brief, what
20  was that?
21     A.   It's a brief prior to the beginning of a
22  SORT operation.
23     Q.   And what did that consist of?
24     A.   Just explaining to each officer or deputy
25  what their job is going to do or what it entails and

32

1   who we're going to SORT.
2       Q.   So you -- did you give each deputy an
3   instruction on what their role in the extraction was
4   going to be?
5       A.   I believe so.
6       Q.   Do you remember what those instructions
7   were and who you gave them to?
8            MS. ROSENBLIT:  Objection.  Compound.
9            THE WITNESS:  I don't recall exactly what
10  deputy, who I gave -- I gave instructions, I give it
11  to everybody, but I can't recall each deputy's job
12  within that operation.
13           MR. KATON:  Q.  What -- even if you can't
14  remember which deputy you gave instructions to,
15  what -- what instructions did you give?
16      A.   Well, all SORT operations, all deputies
17  have the same job, whatever number they're --
18  they're in.  And so I would tell each deputy what
19  number they were, and then any special instructions
20  of the specific or of the inmate himself.  What type
21  of threat he was, low threat, high threat.  And then
22  the classification deputy would step in and give us
23  an explanation of who the inmate was and what his
24  threat was.
25      Q.   So what are the numbers you're referring

62

1        (Resumption of non-confidential
2        portion of the transcript.)
3           MR. KATON:  Q.  What happened after Deputy
4   Neu entered the cell?
5       A.   Deputy Neu went in, went into the cell and
6   he took Hymes to the ground.
7       Q.   Why would he take Mr. Hymes to the ground?
8       A.   Because Hymes was a dangerous person.  His
9   MO was to hurt deputies or hurt officers in CDC.
10  And that was my previous intelligence report from
11  classification, that he would try to bring -- he
12  would try to hurt officers, whether he was cuffed up
13  or not.
14      Q.   Okay.  So what do you -- what do you
15  accomplish by putting him to the ground?
16      A.   When we take him -- when we place him to
17  the ground, then we can do -- we can search him at
18  that point, and check -- excuse me, check him for
19  weapons.
20      Q.   Okay.  So when you say that Deputy Neu took
21  Hymes to the ground, how did he go about doing that?
22      A.   At that point when they walked in, it was
23  hard for me to see.  I -- I could not see everything
24  that transpired after that, there was too many
25  people in there and I'm in the back.  And so I'm

139

REPORTER CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:  That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [  ] was [X] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  August 13, 2018

_____

SANDRA L. CARRANZA
CSR No. 7062