# Exhibit H

```
              UNITED STATES DISTRICT COURT

            NORTHERN DISTRICT OF CALIFORNIA

                 SAN FRANCISCO DIVISION

                       ---oOo---


SCANVINSKI JEROME HYMES,

          Plaintiff,

vs.                                 Case No. 3:16-cv-04288-JSC

MILTON BLISS; VICTOR M.
SANCHEZ, JOSEPH A. LEONARDINI;
SCOTT NEU; EUGENE A. JONES;
PAUL TIMPANO; PIERRE A. GRAY,

          Defendants.
_____/




     THE VIDEOTAPED DEPOSITION OF OFFICER PIERRE A. GRAY


                Thursday, August 16, 2018






  Reported by:  Patricia Rosinski, CSR #4555


            CLARK REPORTING & VIDEO CONFERENCING
               2140 Shattuck, Suite 407
                Berkeley, California 94704
                     (510) 486.0700
                   www.clarkdepos.com
```

```
 1                   A P P E A R A N C E S

 2

 3  FOR THE PLAINTIFF:

 4       LAW OFFICE OF CAITLIN KELLY HENRY
         By:  CAITLIN KELLY HENRY
 5            Attorney at Law
         1201 Martin Luther King Jr. Way, Suite 200
 6       Oakland, California 94612
         (510) 277-2025
 7       ckh@caitlinkellyhenry.com

 8  - and -

 9       KATON.LAW
         By:  GLENN KATON
10            Attorney at Law
         385 Grand Avenue, Suite 200
11       Oakland, California 94610
         (510) 463-3350
12       gkaton@katon.law

13

14  FOR THE DEFENDANTS:

15       CITY AND COUNTY OF SAN FRANCISCO
         OFFICE OF THE CITY ATTORNEY
16       By:  RENEE E. ROSENBLIT
              Deputy City Attorney
17       1390 Market Street, Sixth Floor
         San Francisco, California 94102
18       (415) 554-3853
         renee.rosenblit@sfcityatty.org
19

20

21  And there also being present:

22  Steve Zavattero, Legal Videographer

23

24                        ---oOo---

25
```

|         |    |                                                              |
|---------|----|--------------------------------------------------------------|
|         | 1  | A.   I responded to the EOC, and he told me to               |
|         | 2  | suit up, and we were going to extract Mr. Hymes.             |
|         | 3  | Q.   Did he give a reason that you were going to             |
|         | 4  | extract Mr. Hymes?                                           |
| 10:31AM | 5  | A.   I don't remember the reason.                            |
|         | 6  | Q.   Do you remember if he gave you a reason?                |
|         | 7  | A.   I don't.  Not off the top of my head, no.               |
|         | 8  | Q.   So you don't remember if he gave you a                  |
|         | 9  | reason, and you don't remember what that reason was          |
| 10:32AM | 10 | if he gave it?                                               |
|         | 11 | MS. ROSENBLIT:  Objection.  Asked and                        |
|         | 12 | answered.  Compound.                                         |
|         | 13 | You can still answer.                                        |
|         | 14 | THE WITNESS:  Okay.                                          |
| 10:32AM | 15 | So he did give a reason.  I don't remember                   |
|         | 16 | what the reason was.  Is that better?                        |
|         | 17 | MS. HENRY:  Thank you.                                       |
|         | 18 | THE WITNESS:  Uh-hum.                                        |
|         | 19 | MS. HENRY:  Q.  And after he told you to                     |
| 10:32AM | 20 | suit up and that you were going to extract                   |
|         | 21 | Mr. Hymes, what happened next?                               |
|         | 22 | A.   During suiting up, he gave us a briefing.               |
|         | 23 | Q.   And what did Sergeant Bliss say during the              |
|         | 24 | briefing?                                                    |
| 10:32AM | 25 | A.   He read what classification told him about              |

28

```
            1     Mr. Hymes.
            2          Q.   What did he say about that?
            3          A.   He said, "According to classification,
            4     Mr. Hymes likes bait the deputies in to S.O.R.T. and
10:33AM     5     extract him from a cell, and while he's being moved
            6     to somewhere else, he likes to kick out the
            7     deputies', or whoever is escorting him, knees from
            8     the side.  So watch yourself.  Be aware."
            9          Q.   And after Sergeant Bliss said that, what
10:33AM    10     happened next?
           11          A.   I believe he told us our assignments.
           12          Q.   And what were the assignments?
           13          A.   I know my assignment.  I can't speak for
           14     everyone else.
10:33AM    15               My assignment was the shield.  I was
           16     Number 1.  Behind me was Deputy Neu.  After that, I
           17     don't know how it went all the way back.
           18          Q.   And what was Neu's assignment?
           19          A.   I believe Neu would be arm.
10:34AM    20          Q.   Which arm?
           21          A.   I believe right.
           22          Q.   And you don't know who was assigned what
           23     role beyond --
           24          A.   No.
10:34AM    25          Q.   -- the right arm and the shield?
```

29

```
              1    Counsel, if you agree, he's demonstrating that he --
              2    crossed the ankles?
              3          THE WITNESS:  Yes.
              4          MS. ROSENBLIT:  Is that right?
11:35AM       5          THE WITNESS:  Yes, crossed the ankles.
              6          MS. HENRY:  I'd like to mark this as an
              7    exhibit, please, Exhibit 1.
              8          (Whereupon, Plaintiff's Exhibit 1 was
              9          marked for identification and is attached
11:35AM      10          hereto.)
             11          MS. HENRY:  Q.  So before you controlled
             12    his legs, did he do anything you would consider
             13    trying to fight?
             14          MS. ROSENBLIT:  Objection.  Vague.
11:36AM      15          THE WITNESS:  Yes.
             16          MS. HENRY:  Q.  Please describe that.
             17       A.   Just thrashing around on the floor.  I
             18    wouldn't say -- I don't know if he was trying to
             19    keep them from grabbing on him or what, but he was
11:36AM      20    just thrashing around on the floor when we first
             21    went down.
             22       Q.   So in terms of thrashing, does that mean --
             23    I see on the video you're moving your shoulders back
             24    and forth.
11:36AM      25       A.   Right.
```

61

|         |    |                                                                 |
|---------|----|-----------------------------------------------------------------|
|         | 1  | Q.    Can you describe for the written record                   |
|         | 2  | what "thrashing" means?                                         |
|         | 3  | A.    Moving shoulders -- shoulders back and                    |
|         | 4  | forth, like you said, trying to get up.                         |
| 11:36AM | 5  | Q.    Trying to stand?                                          |
|         | 6  | A.    Or trying to knee up, get up. Trying to                   |
|         | 7  | get off the floor.                                              |
|         | 8  | Q.    And was anyone else touching him at the                   |
|         | 9  | time he was trying to get to his knees or stand?                |
| 11:37AM | 10 | A.    I believe everyone was trying to get ahold                |
|         | 11 | of their assigned positions. So people were trying              |
|         | 12 | to get ahold of his arms. People -- I was trying to             |
|         | 13 | get ahold of his legs. And once I did that, you                 |
|         | 14 | know, a lot of the thrashing stopped because he                 |
| 11:37AM | 15 | couldn't move back and forth.                                   |
|         | 16 | Q.    So before you got ahold of his legs, did he               |
|         | 17 | do anything other than moving his shoulders back and            |
|         | 18 | forth?                                                          |
|         | 19 | A.    Well, he -- like I said earlier, prior to                 |
| 11:37AM | 20 | this question, he was laying on his side and turned             |
|         | 21 | over with his own momentum trying to get up.                    |
|         | 22 | Q.    And anything other than turning from his                  |
|         | 23 | side and moving his shoulders back and forth before             |
|         | 24 | you --                                                          |
| 11:37AM | 25 | A.    Kicking.                                                  |

62

```
                1      Q.    Can you describe the kicks?
                2      A.    Well, you know, just more so trying to get
                3   momentum with his legs.
                4      Q.    So he was kicking to gain momentum with his
11:37AM         5   legs.
                6            How close together were his legs shackled
                7   at the time?
                8      A.    I'm not sure.  Maybe, what, 24 inches?
                9   2 feet?
11:38AM        10      Q.    So he would have been able to move his legs
               11   independently?
               12      A.    Yes.
               13      Q.    And was he moving his legs independently?
               14      A.    Yes.
11:38AM        15      Q.    And was he moving his legs independently
               16   when he moved to his stomach?
               17      A.    Yes.
               18      Q.    And did any other deputies try to turn him
               19   to gain control at that time?
11:38AM        20            MS. ROSENBLIT:  Objection.  May call for
               21   speculation.
               22            THE WITNESS:  I don't know.
               23            MS. HENRY:  Q.  Did you see any deputies
               24   trying to turn him to gain control?
11:39AM        25      A.    No.  I was focused on the legs.
```

63

|         |    |    |                                                           |
|---------|----|----|-----------------------------------------------------------|
|         | 1  | A. | Yes.                                                      |
|         | 2  | Q. | And the numbers, Team Number 1 through 4 or               |
|         | 3  |    | 5?                                                        |
|         | 4  | A. | Yes.                                                      |
| 02:30PM | 5  | Q. | Was there also conversation about what                   |
|         | 6  |    | weapons would be -- I don't want to say "use," but       |
|         | 7  |    | available and present?                                    |
|         | 8  | A. | Yes.                                                      |
|         | 9  | Q. | And was there a conversation about which                  |
| 02:30PM | 10 |    | deputy or deputies would be holding the weapons?          |
|         | 11 | A. | Yes.                                                      |
|         | 12 | Q. | Was there also conversation about risk                    |
|         | 13 |    | factors of Mr. Hymes?                                     |
|         | 14 | A. | Yes.                                                      |
| 02:30PM | 15 | Q. | And a plan for the extraction?                            |
|         | 16 | A. | Yes.                                                      |
|         | 17 | Q. | And what was the plan for the extraction?                 |
|         | 18 | A. | The plan was to go in, subdue, and extract.               |
|         | 19 | Q. | Thank you.                                                |
| 02:31PM | 20 |    | ==Switching gears for a moment, on the==                  |
|         | 21 |    | ==morning of July 24th, 2014, did you attend a muster?==  |
|         | 22 | ==A.== | ==Yes.==                                              |
|         | 23 | ==Q.== | ==What is "muster"?==                                 |
|         | 24 | ==A.== | ==*"Muster" is a briefing for the oncoming*==         |
| 02:31PM | 25 |    | ==staff of events that went on the prior watch and the== |

139

```
02:31PM
                1    watch before that.
                2         Q.   At the muster on the morning of July 24th,
                3    2014, did you receive any information about
                4    Scanvinski Hymes?
                5         A.   Yes.
                6         Q.   What did you learn?
                7         A.   That he had been yelling obscenities all
                8    night long.  He had been talking about every deputy
                9    back there and trying to bait them into doing, I
02:31PM        10    guess, stuff to them, and basically that Mr. Hymes
               11    was a very sophisticated in- -- inmate.
               12         Q.   Did you learn anything else?
               13         A.   I think, there, we were briefed on the fact
               14    that he likes to be extracted, and he likes to
02:32PM        15    injure people when -- when he is extracted.
               16         Q.   Did you learn any information about how he
               17    likes to injure people?
               18         A.   Yes.  He likes to kick out -- after the
               19    extract, while he's walking and everyone is okay, he
02:32PM        20    likes to kick people's knees from the side.  End
               21    their careers, we were told.
               22         Q.   What do you mean "end their careers"?
               23         A.   Well, breaking their knees so that
               24    they're -- they can't come back to work.  You know,
02:32PM        25    injury that might retire them out.
```

140

| | | |
|---|---|---|
| 1 | Q. | Did you learn that Mr. Hymes had done this |
| 2 | previously? | |
| 3 | A. | Yes, in CDC. |
| 4 | Q. | Do you recall if you learned anything about |
| 5 | his CDC points? | |
| 6 | A. | No. |
| 7 | Q. | Is there anything else that you learned |
| 8 | about Mr. Hymes at muster that you can remember as | |
| 9 | you sit here today? | |
| 10 | A. | No, just those things. |
| 11 | Q. | And, then, we already discussed this |
| 12 | morning what you learned at the briefing prior to | |
| 13 | the S.O.R.T. extraction. | |
| 14 | A. | Correct. It was along the same lines of |
| 15 | information. | |
| 16 | Q. | Are there any other times in which you |
| 17 | learned information about Mr. Hymes prior to the | |
| 18 | S.O.R.T.? | |
| 19 | A. | No. |
| 20 | | MS. ROSENBLIT: That's all I have. |
| 21 | | MS. HENRY: That's it. |
| 22 | | THE VIDEOGRAPHER: Here marks the end of |
| 23 | Disc Number 2 in the dep- -- in the deposition of | |
| 24 | Pierre A. Gray. The original videos will be | |
| 25 | retained by Eureka Street Legal Video. | |

141

1       REPORTER'S CERTIFICATE

2  STATE OF CALIFORNIA    )
                          )  ss.
3  COUNTY OF MARIN        )

4       I, PATRICIA ROSINSKI, hereby certify:

5       That I am a Certified Shorthand Reporter in

6  the State of California. That prior to being

7  examined, OFFICER PIERRE A. GRAY, the witness named

8  in the foregoing deposition, was by me duly sworn to

9  testify the truth, the whole truth, and nothing but

10 the truth; That said deposition was taken pursuant

11 to Notice of Deposition and agreement between the

12 parties at the time and place therein set forth and

13 was taken down by me in stenotype and thereafter

14 transcribed by me by computer and that the

15 deposition is a true record of the testimony given

16 by the witness.

17      I further certify that I am neither counsel

18 for either, nor related in any way to any party to

19 said action, nor otherwise interested in the result

20 or outcome thereof.

21      Pursuant to Federal Rules of Civil Procedure,

22 Rule 30(e), review of the transcript was not requested

23 before the completion of the deposition.

24      _____
          PATRICIA ROSINSKI, CSR No. 4555
25        19th day of August, 2018

143