# Exhibit I

```
                                                                    1

 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                 SAN FRANCISCO DIVISION

 4                       ---oOo---

 5   SCANVINSKI JEROME HYMES,

 6              Plaintiff,

 7         vs.                  Case No. 3:16-cv-04288-JSC

 8   MILTON BLISS, VICTOR M. SANCHEZ,
     JOSEPH A. LEONARDINI, SCOTT NEU,
 9   EUGENE A. JONES, PAUL TIMPANO,
     PIERRE A. GRAY,
10
                Defendants.
11   _____/

12

13

14

15       VIDEOTAPED DEPOSITION OF PAUL TIMPANO

16              Friday, August 10, 2018

17

18       CLARK REPORTING & VIDEO CONFERENCING

19            2140 SHATTUCK AVE. STE. 407

20                 BERKELEY, CA  94704

21                   510.486.0700

22

23

24   REPORTED BY:

25   SANDRA L. CARRANZA, CRR, RPR, CSR 7062
```

2

```
 1                        I N D E X

 2

 3    DEPOSITION OF PAUL TIMPANO

 4

 5    EXAMINATION BY:                                    PAGE

 6          MR. KATON                                       6

 7          MR. MATHESON                                  105

 8    AFTERNOON SESSION                                   78

 9

10    PLAINTIFF'S EXHIBITS MARKED

11    Exhibit 1   Incident Report Statment, signed
                  and dated 8/2/14 by Deputy
12                Timpano                                 89

13    Exhibit 2   Photograph                              97

14    Exhibit 3   Photograph                              98

15                          ---oOo---
```

3

                    A P P E A R A N C E S


FOR THE PLAINTIFF:

            KATON LAW
            BY:  GLENN KATON, ATTORNEY AT LAW
            385 Grand Avenue, Suite 200
            Oakland, California 94610
            (510) 463-3350
            gkaton@katon.law

            CAITLIN KELLY HENRY, ATTORNEY AT LAW
            1201 MLK Way, SUite 200
            Oakland, California 94612
            (510) 277-2025
            ckh@cailinkellyhenry.com


FOR THE DEFENDANTS:

            OFFICE OF THE CITY ATTORNEY
            BY:  RENEE E. ROSENBLIT and
            BRIGGS MATHESON, ATTORNEYS AT LAW
            1390 Market Street, Sixth Floor
            San Francisco, California 94102
            (415) 554-3853
            renee.rosenblit@sfcityatty.org
            briggs.matheson@sfcityatty.org


ALSO PRESENT:   STEVE ZAVATTERO, VIDEOGRAPHER
                SCANVINSKI JEROME HYMES

                (Also Present:  Misc. sheriff
                 officers guarding Mr. Hymes)


TAKEN AT:       SAN FRANCISCO COUNTY JAIL No. 4
                850 Bryant Street, 7th Floor
                San Francisco, California 94103


                    ---oOo---

16

1   A.   No.
2   Q.   Had you ever heard of Mr. Hymes before the
3   day of the incident?
4   A.   I hadn't, no.
5   Q.   What was the first you saw -- excuse me.
6        What was the first you saw or heard of
7   Mr. Hymes on the day of the incident?
8   A.   The day of the incident in our morning
9   muster.  I'm not sure if you need a clarification on
10  muster.
11  Q.   My understanding is it's kind of a briefing
12  to the deputies --
13  A.   Exactly.  That's what it is.
14  Q.   -- on what's going on in the jail?
15  A.   Yes.
16  Q.   What did you hear about Mr. Hymes at
17  morning muster on day of the incident?
18  A.   That morning, the muster was basically
19  about Mr. Hymes.  And we had heard -- we were told
20  that he was -- he had the most violent CDC record in
21  history, that he had a propensity to kick guards out
22  at the knee, and that he retired out a few; that he
23  liked to sue departments and -- and that, you know,
24  he was just violence.  You know, a chaos-causing
25  individual was basically what we were told.

17

1   Q.   And who provided you with that information?
2   A.   The supervisors.
3   Q.   Do you remember who they were?
4   A.   Well, I don't want to -- I mean -- I mean,
5   I know that Sergeant Bliss was there, probably the
6   captain was there.  Some senior deputy that was
7   just -- probably pretty much our whole supervisory
8   staff was probably there.
9   Q.   So apart from who was there, do you
10  remember who provided you the information about
11  Mr. Hymes?
12  A.   I wouldn't say it was any one of the
13  supervisors.  I think that they were all, you know,
14  communicating the information to us, as best as I
15  can remember it, you know.
16  Q.   And you mentioned Deputy -- I'm sorry, you
17  mentioned Sergeant Bliss and you mentioned a
18  captain.  Who was that?
19  A.   I believe it was Captain Adams at the time,
20  yes.
21  Q.   Were there any other supervisors there who
22  you remember providing information about Mr. Hymes?
23  A.   Not specifically.
24       You know, the other thing is we have this
25  every day, so I just happen to know that, you know,

18

1  it's not uncommon to have the captain to the senior
2  deputy, you know, communicating information to us.
3      Q.   Yeah.  I'm only asking what you actually
4  remember.  And I understand that --
5      A.   Got it.
6      Q.   -- you might --
7      A.   No, I'm going to say that I remember the
8  sergeant, I remember the captain.  And that's what I
9  remember, yeah.
10     Q.   And that was -- did you have muster at
11 7:00 a.m.?
12     A.   6:45.
13     Q.   About how long did that last?
14     A.   Probably close to 15 minutes.
15     Q.   And do you remember what you did after
16 muster on that day?
17     A.   I don't remember what my assignment was.
18 It was somewhere in the back, but I don't remember
19 exactly where.
20     Q.   What's -- excuse me.  What's the next thing
21 you remember relating to Mr. Hymes?
22     A.   The next thing I remember was Mr. Hymes
23 causing a disturbance.
24     Q.   In what way was he causing a disturbance?
25     A.   Making threats, yelling, screaming.

107

REPORTER CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:  That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were duly sworn; that a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; that the foregoing transcript is a true record of the testimony given.

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript [  ] was [X] was not requested.

I further certify I am neither financially interested in the action nor a relative or employee of any attorney or party to this action.

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated:  August 16, 2018

_____

SANDRA L. CARRANZA
CSR No. 7062