# Exhibit J

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                      SAN FRANCISCO DIVISION

4

5    SCANVINSKI JEROME HYMES,

6                    Plaintiff,

7    vs.                          Case No.: 3:16-cv-04288-JSC

8    MILTON BLISS, VICTOR M.
     SANCHEZ, JOSEPH A. LEONARDINI,
9    SCOTT NEU, EUGENE A. JONES,
     PAUL TIMPANO, PIERRE A. GRAY,
10
                     Defendants.
11   _____/

12

13

14

15              NONCONFIDENTIAL PORTION ONLY

16          DEPOSITION OF JOSEPH A. LEONARDINI

17              Tuesday, August 14, 2018

18

19

20          REPORTER'S TRANSCRIPT OF PROCEEDINGS
            BY APRIL DAWN HEVEROH, CSR NO. 8759
21   ─────────────────────────────────────────────

22       **CLARK REPORTING & VIDEOCONFERENCING**

23        **2140 SHATTUCK AVENUE, SUITE 407**

24             **BERKELEY, CA  94704**

25               **(510) 486-0700**

                                                    1

```
 1                    I N D E X

 2

 3   EXAMINATION BY:                           PAGE

 4   MS. HENRY                                   5

 5   MR. MATHESON                              110

 6                    ---o0o---

 7

 8            INDEX OF PLAINTIFF'S EXHIBITS

 9   NO.          DESCRIPTION                 PAGE

10   EXHIBIT 1    Incident Report Statement     72

11   EXHIBIT 2    San Francisco Sheriff's Department    77
                  Incident Report dated 06/03/1993
12
     EXHIBIT 3    San Francisco Sheriff's Department    80
13                S.O.R.T. - Cell Extraction Policy
                  and Procedure
14

15                    ---o0o---

16

17

18

19

20

21

22

23

24

25
                                                    2
```

DEPOSITION OF JOSEPH A. LEONARDINI

```
 1                  APPEARANCES OF COUNSEL
 2   FOR THE PLAINTIFF:
 3          CAITLIN KELLY HENRY, ATTORNEY AT LAW
 4          1201 Martin Luther King Jr. Way, Suite 200
 5          Oakland, California 94612
 6          (510) 277-2025
 7          ckh@caitlinkellyhenry.com
 8           --- and ---
 9          KATON.LAW
10          BY:  GLENN KATON, ESQ.
11          385 Grand Avenue, Suite 200
12          Oakland, California 94610
13          (510) 463-3350
14          gkaton@katon.law
15
16   FOR THE DEFENDANTS:
17          CITY AND COUNTY OF SAN FRANCISCO
18          OFFICE OF THE CITY ATTORNEY
19          BY:  BRIGGS MATHESON, DEPUTY CITY ATTORNEY
20          1390 Market Street, Sixth Floor
21          San Francisco, California 94102
22          (415) 554-3919
23          briggs.matheson@sfcityatty.org
24
25   Also present:  Steve Zavattero, Videographer
```

3

DEPOSITION OF JOSEPH A. LEONARDINI

```
1    review any documents?

2         A.    I did.

3         Q.    What documents did you review?

4         A.    I reviewed an incident report that was prepared

5    by Sergeant Bliss, and I also did a quick review of the

6    policies.  I think I reviewed the Use of Force policy

7    real quick and a S.O.R.T. policy.

8         Q.    And did you review your own incident report?

9         A.    The handwritten incident report?  I did.

10        Q.    And did you review any videos?

11        A.    I did.  I reviewed the S.O.R.T. extraction of

12   Mr. Hymes.

13        Q.    And was that the video that's approximately 13

14   minutes long?

15        A.    I believe so.

16        Q.    Okay.  Did you review any audio, any

17   interviews, for example?

18        A.    No.

19        Q.    Did you review any emails or text messages, not

20   including from your attorney?

21        A.    I had emails regarding Inmate Hymes coming to

22   the jail.  These were like via the captain officer

23   safety bulletin, and I believe there was also a video

24   attached to the email, and I believe it was from the

25   show Locked Up.  It's a TV program.
```

                                                          8

DEPOSITION OF JOSEPH A. LEONARDINI

```
 1   regarding an incident with Mr. Hymes on July 24th, 2014.
 2   If I refer to the cell extraction on that day and the
 3   circumstances surrounding the extraction as "the
 4   incident," will you understand?
 5        A.   Yes.
 6        Q.   Were you working as a sheriff's deputy in
 7   San Francisco on the day of the incident?
 8        A.   Yes.
 9        Q.   What time did you start working?
10        A.   It was either 6:45 or 7:00 a.m.
11        Q.   And what was your assignment that day?
12        A.   Well, I was a senior deputy.  I believe I was
13   assigned as a supervisor.  So if I may, the senior
14   deputy position is a quasi-supervisor position.  So it
15   could be I worked as a deputy at a post or you can be
16   supervisor.
17        Q.   Do you remember if you were working at a post?
18        A.   I believe I was a supervisor.
19        Q.   Supervisor.  No post.  Had you ever seen
20   Mr. Hymes before the day of the incident?
21        A.   No.
22        Q.   Had you heard of Mr. Hymes before the day of
23   the incident?
24        A.   Yes.
25        Q.   How had you heard of Mr. Hymes before the day
```

14

DEPOSITION OF JOSEPH A. LEONARDINI

1    of the incident?

2        A.    Like I mentioned earlier, there was an officer

3    safety bulletin being passed out by the classification,

4    I believe Captain Adams at the time.

5        Q.    And on the 24th, July 24th of 2014, what was

6    the first you saw of Mr. Hymes?

7        A.    It was actually during the actual cell

8    extraction.

9        Q.    During the extraction.  Not before.

10            Had you seen Mr. Hymes before the extraction?

11       A.    No.

12       Q.    Had you heard Mr. Hymes before the extraction?

13       A.    Yes.

14       Q.    Did you hear anyone give orders to Mr. Hymes

15   before the extraction?

16            MR. MATHESON:   Objection.   Vague as to time.

17   BY MS. HENRY:

18       Q.    Did you hear anyone give orders to Mr. Hymes

19   before the S.O.R.T. team was convened?

20       A.    I don't recall.

21       Q.    How did you become involved in the S.O.R.T.

22   team?

23       A.    Sergeant Bliss advised me that we would be

24   doing a S.O.R.T.

25       Q.    And why did Sergeant Bliss call for a S.O.R.T.?

                                                           15

DEPOSITION OF JOSEPH A. LEONARDINI

1   that the previous two deputies that had identified

2   themselves have now left the room.

3   BY MS. HENRY:

4       Q.   What did you observe next?

5       A.   A struggle on the ground of cell F1.   I

6   couldn't see specifically what was going on.   I saw

7   thrashing.   Inmate Hymes, I believe, was kicking his

8   feet.   That's about all I could see.

9       Q.   Were any deputies on top of Mr. Hymes?

10      A.   Due to the size of the cell and the amount of

11  deputies in there, I would say yes.

12      Q.   Would they have been sitting on Mr. Hymes?

13      A.   No.

14      Q.   Would they have been putting their knees on

15  Mr. Hymes?

16      A.   Possibly.

17      Q.   Would they have been standing on Mr. Hymes?

18      A.   No.

19      Q.   Would they have been controlling Mr. Hymes?

20      A.   (No audible response.)

21      Q.   Did you observe deputies kneeling on Mr. Hymes?

22      A.   I don't recall.

23      Q.   Did you observe deputies standing on Mr. Hymes?

24      A.   I don't recall.

25      Q.   Did you observe deputies using their arms to

                                                        28

```
 1                    REPORTER CERTIFICATE

 2

 3          I hereby certify that the witness in the

 4  foregoing deposition was by me duly sworn to testify to

 5  the truth, the whole truth and nothing but the truth in

 6  the within-entitled cause; that said deposition was

 7  taken at the time and place herein named; that the

 8  deposition is a true record of the witness' testimony as

 9  reported to the best of my ability by me, a duly

10  certified shorthand reporter and a disinterested person,

11  and was thereafter transcribed under my direction into

12  typewriting by computer.

13          I further certify that I am not interested

14  in the outcome of said action, nor connected with, nor

15  related to any of the parties in said action, nor to

16  their respective counsel.

17          IN WITNESS WHEREOF, I have hereunto set my

18  hand this _____ day of _____, 2018.

19

20                    _____

21                    APRIL DAWN HEVEROH
                       CSR NO. 8759
22

23

24

25
```