1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCANVINSKI JEROME HYMES,

Plaintiff,

v.

MILTON BLISS, et al.,

Defendants.

Case No. 16-cv-04288-JSC

**ORDER FOLLOWING SECOND PRETRIAL CONFERENCE**

Following the second pretrial conference held on November 29, 2018, the Court rules as follows. This Order supplements the rulings made at the November 29 hearing.

**I.      Plaintiff's Motion in Limine No. 1**

**A.      Exhibits 103 and 104 (Safety Alert and Safety Bulletin)**

Exhibits 103 and 104 (Safety Alert and Safety Bulletin) are admissible to show Defendants' state of mind, that is, what they knew about Plaintiff at the time of the cell extraction. *See Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995). The jury shall be instructed that such evidence is relevant only in determining whether the officers' conduct was reasonable and may not be considered by them in deciding whether Plaintiff acted as Defendants contend he did. However, the sentence on exhibit 104 stating "Hymes [sic] tactics include forced cell extractions to injure staff, compliant while being uncuffed or leg shackled then assaulting staff" shall be redacted. It is not proper 404(b) evidence because it is hearsay and thus not competent to establish that Hymes ever engaged in such conduct. Its probative value in terms of explaining Defendants' state of mind is limited given the other information in exhibits 103 and 104, and any such value is outweighed by the likelihood that the jury will impermissibly interpret it as evidence that Plaintiff in fact engaged in such conduct on July 24, 2014.

**B.      Exhibit 106 (Field Arrest Card)**

Exhibit 106 (pages 2, 8 and 9 only) is admissible to show Sergeant Bliss's state of mind,

along with any other defendant for whom a foundation is laid that he read the card.  The jury shall

be instructed that such evidence is relevant only in determining whether Sergeant Bliss's (or other

defendant's) conduct was reasonable and may not be considered by them in deciding whether

Plaintiff acted as Defendants contend he did.

**C.      "Locked Up" Video**

The edited version of the "Locked Up" video is admissible in part to show Mr. Neu's state

of mind.  In particular, the scenes showing Mr. Hymes speaking to the camera (Clip 2 0047-104),

as well as the scenes in which he is clearly identifiable (Clip 5 0200-0204) (Clip 6 (the first part

with Mr. Hymes' foot in the cell door), are admissible for Mr. Neu's state of mind.  The jury shall

be instructed that such evidence is relevant only in determining whether Mr. Neu's conduct was

reasonable and may not be considered by them in deciding whether Plaintiff acted as Defendants

contend he did during the cell extraction.

The first part of the video (022-42), where Mr. Hymes is sitting in the chair and then

suddenly starts moving around and gets in a scuffle with correctional officers is excluded pursuant

to Rule 403 for the reasons explained at oral argument.  Its probative value is outweighed by its

likely prejudicial effect, especially given all the other evidence that may be admitted for Mr. Neu's

state of mind.  The Court also excludes those portions of the video where the viewer cannot

identify Mr. Hymes by face (Clip 3 0115-0142), (Clip 4 00142-0200), (Clip 6, man lying face

forward on a gurney).  That Mr. Hymes' voice can be heard is of no moment because there is no

evidence as to how this particular "reality tv" video was created.  The Court has reviewed Mr.

Hymes' deposition transcript and finds that it does not establish that Mr. Hymes identified himself

in these particular video scenes.  While the video is relevant to Mr. Neu's state of mind assuming

he would testify that he thought these video portions all portrayed Mr. Hymes (not a necessarily

reasonable assumption), given all the other evidence that is being admitted as to Mr. Neu's state of

mind, and the lack of clarity as to whether these scenes portray Mr. Hymes, the Court finds that

any probative value is outweighed by its prejudicial effect.  *See* Fed. R. Evid. 403.

1    While non-defendant witnesses may testify as to what they told a defendant about what

2    they saw on the video, the video is not admissible through these witnesses nor may it be shown

3    while these witnesses are testifying.  This ruling is an attempt to balance Mr. Neu's need to put in

4    evidence relevant to his state of mind with the prejudicial effect of that evidence.

5    Defendants have not persuaded the Court that any of the video should be admitted as

6    substantive evidence pursuant to Rule 404(b).

7    **D.    Plaintiff's Testimony**

8    **1.    Prior Fights.**  Defendants may not question Plaintiff about his history of fights

9    with corrections officers.  Such testimony is inadmissible propensity evidence.  *See* Fed. R. Evid.

10   404(b).  However, Defendants may ask generally how many fights Mr. Hymes has gotten into

11   without specifying with whom he was fighting.  Such questioning is relevant to the cause of his

12   injury.

13   **2.    Prior Lawsuits.**  Defendants are precluded from asking Plaintiff about any prior

14   lawsuits or otherwise offering evidence of prior lawsuits filed by Plaintiff.  Such evidence is of

15   limited value, and is outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403; *Seals v.*

16   *Mitchell,* No. CV 04-3764 NJV, 2011 WL 1399245, at *5–6 (N.D. Cal. Apr. 13, 2011).  However,

17   Plaintiff's statements made at the time of the cell extraction are admissible statements of a party

18   opponent.

19   **E.    Non-Defendant Testimony**

20   Non-defendants who were not involved in the cell extraction may testify as to what they

21   communicated to Defendants about Mr. Hymes; such testimony is relevant.  And any witness may

22   testify as to what Mr. Hymes said to the witness.  *See* Fed. R. Evid. 801(d).

23   **II.    Plaintiff's Motion in Limine No. 5 (Tattoo Evidence)**

24   Plaintiff may not elicit any evidence regarding Mr. Neu's tattoo.  While Plaintiff has made

25   a sufficient offer of proof that Mr. Neu in fact has an "850 mafia" tattoo, he has not identified any

26   evidence that supports a reasonable inference that because he has the tattoo he is more likely to

27   have assaulted Plaintiff; his argument is pure attorney speculation.  And even if it did support that

28   inference, it would be inadmissible propensity evidence.  *See* Fed. R. Evid.  404(b); *United States*

3

1  *v. Thomas*, 321 F.3d 627, 631 (7th Cir. 2003) ("We fail to see how the redacted photo of the tattoo

2  was admitted for any purpose other than to establish Thomas's propensity to possess guns."). The

3  tattoo evidence is also inadmissible under Rule 403 as more prejudicial than probative.

4  Plaintiff's reliance on *United States v. Bullard*, 2009 WL 10699656, at *3 (D. Idaho July 2,

5  2009) fails to persuade this Court as to the tattoo's admissibility. There, the government had the

6  burden of proving the defendant's racial animus and the tattoos (among other evidence) carried

7  "white supremacy connotations." *Id.* Plaintiff's attempt to connect Mr. Neu's tattoo to the malice

8  required for the imposition of punitive damages is unavailing; he has not identified any competent

9  evidence that does so, other than the word "mafia." That word alone is insufficient to make the

10  probative value outweigh the risk of unfair prejudice.

11  **III.    Defendants' Motion in Limine No. 2**

12  **A.      Allegations of Excessive Force Against Jacobo and Tiller**

13  Plaintiff is precluded from offering evidence that Mr. Neu, Deputy Jones and/or Deputy

14  Gray used excessive force against Mr. Jacobo or Mr. Tiller as it is improper propensity evidence.

15  Fed. R. Evid. 404(b); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1028 (9th Cir.

16  2015) (noting that "permitting the introduction of evidence of prior complaints would have

17  suggested to the jury that [the officer defendant] acted in accordance with these past actions");

18  *Brown v. Gutierrez*, No. C03-1141 TEH, 2006 WL 3065574, at *2 (N.D. Cal. Oct. 27, 2006)

19  ("The liability of the individual police officer arises out of this particular incident. Evidence of

20  other similar incidents could only show a propensity for excessive use of force. This is the sort of

21  "conduct in conformity with character" evidence which § 404(b) prohibits.") (internal quotation

22  marks and citation omitted).

23  Plaintiff's insistence that the incidents are being used to show intent or modus operandi or

24  the absence of mistake rather than propensity is unpersuasive. Plaintiff need not show any

25  defendant's subjective intent to prove the use of constitutionally excessive force. The only

26  "mistake" he identifies occurred when Mr. Hymes was being taken to the ground by Mr. Neu, but

27  Plaintiff does not contend that the conduct in taking him to the ground was constitutionally

28  excessive. And modus operandi goes to show "identity," *see, e.g., United States v.* Gonzalez, 522

4

1    F.3d 1057, 1064 (9th Cir. 2008), which is not an issue here.  Instead, the incidents are being

2    offered as classic inadmissible character evidence.

3          The admission of the evidence would also involve a trial within this trial.  Jacobo's and

4    Tiller's version of events is no more true than Mr. Hymes'—none has been tested.  To determine

5    whether these defendants used excessive force against Mr. Jacobo and Mr. Tiller, the Court would

6    have to hold a mini trial as to whether what these witnesses allege Mr. Neu, Deputy Jones and

7    Deputy Gray did was true.  Such proceeding risks confusing the jury and wasting time.  Thus,

8    even assuming there was some permissible probative value, that value does not outweigh its

9    prejudicial effect.  *See Alegrett v. City and County of San Francisco*, 2014 WL 1881091, at \*2

10   (N.D. Cal. May 9, 2014).

11          **B.          Internal Affairs Documents**

12          The complaints of excessive force apparently documented in internal affairs records are

13   excluded for the same reasons as the complaints of Tiller and Jacobo.  Further, Plaintiff would be

14   admitting the records for the truth of the matter asserted—namely, that certain defendants engaged

15   in the conduct of which they were accused.  The records are thus also inadmissible hearsay.

16   Plaintiff's written offer of proof does not identify any basis by which they would be admissible,

17   other than Rule of Evidence 404(b), which does not address any hearsay problem.  (Dkt. No. 179-

18   3.)  Further, the offer of proof does not provide sufficient facts to show that any of the identified

19   incidents would be relevant to other than showing a propensity for excessive force.

20   **IV.    Plaintiff's Motion in Limine to Exclude Defendants' Expert Testimony**

21          Plaintiff seeks an order in limine that Defendants' expert on police practices, Don

22   Cameron, "cannot offer or elicit evidence of legal conclusions."  (Dkt. No. 132 at 16.)[1]

23   Defendants do not oppose Plaintiff's motion, "as long as it also applies to [P]laintiff's experts."

24   (*Id.* at 19.)  The Court grants Plaintiff's motion.  Mr. Cameron may not testify as to case law or

25   legal requirements or the reasonableness of Defendants' actions as defined by case law or

26

27   [1] Plaintiff filed a "supplement to motion in limine two" on November 28, 2018, seeking to exclude
     Mr. Cameron's testimony in its entirety.  (Dkt. No. 186.)  The Court considers Plaintiff's eve-of-
28   trial supplemental filing only to the extent that it actually supplements the original arguments
     made in Plaintiff's motion in limine two, (Dkt. No. 132).

1    regulations.

2        Accordingly, Mr. Cameron may not testify to the following as set forth in his report:

3    Paragraph 3 (beginning "Mr. Hymes was a pretrial detainee . . ."); Paragraph 4 (beginning

4    "California Code of Regulations . . ."); Paragraph 5 (beginning "A peace/correctional officer . .

5    ."); Paragraph 6 (beginning "When Sergeant Bliss . . ."); Paragraph 7 (beginning "After Inmate

6    Hymes . . ."); and Paragraph 8 (beginning "When Inmate Hymes . . .").  All of those paragraphs

7    opine on a legal conclusion—whether the defendants' conduct was reasonable.  That conclusion is

8    for the jury, not an expert.  Moreover, the Court finds that such testimony would not be helpful to

9    the jury, and instead is likely to confuse them.

10       **IT IS SO ORDERED.**

11   Dated: November 30, 2018

12

13   _____
     JACQUELINE SCOTT CORLEY
14   United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28